ORIGINAL

FILED

OCT 24 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ cf _____ DEPUTY

1  Brian C. Gonzalez (State Bar No. 140348)
   LAW OFFICES OF BRIAN C. GONZALEZ
2  2533 S. Coast Highway 101, Suite 250
   Cardiff by the Sea, California 92007
3  (760) 436-9529

4  William A. Munck (Texas State Bar No. 00786127)
   Jamil N. Alibhai (Texas State Bar No. 00793248)
5  MUNCK CARTER, P.C.
   600 Banner Place
6  12770 Coit Road
   Dallas, Texas 75251
7  (972) 628-3600

8              UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF CALIFORNIA
9                 SAN DIEGO DIVISION

FAXED

'08 CV 1992 BEN NLS

10  GABRIEL TECHNOLOGIES          CIVIL ACTION NO._____
    CORPORATION and TRACE
11  TECHNOLOGIES, LLC,
                    Plaintiffs,   PLAINTIFFS' ORIGINAL COMPLAINT
12
13       vs.

14  QUALCOMM INCORPORATED,
    SNAPTRACK, INC., and NORMAN
15  KRASNER,
                    Defendants.

16       COME NOW Plaintiffs Gabriel Technologies Corporation and Trace Technologies, LLC

17  (collectively, "Gabriel") and file their Original Complaint against Defendants Qualcomm

18  Incorporated ("Qualcomm"), SnapTrack, Inc. ("SnapTrack"), and Norman Krasner ("Krasner")

19  (collectively, "defendants"), as follows:

20                        I. **INTRODUCTION**

21       1.      Gabriel files this lawsuit to hold technology thieves responsible for their wrongful

22  conduct. The chief thief is Krasner, who on paper appears to be a prolific inventor with over 60

23  published domestic patents mostly related to global positioning satellite systems. As Gabriel

24

25

1   would find out the hard way, Krasner's prolific inventions are often based on the work of others,

2   and Krasner has made a career out of preparing, prosecuting, and procuring domestic and foreign

3   patents based on work done by others.

4       2.    Krasner and SnapTrack entered into a license agreement with Loc8.net a/k/a

5   Locate Networks, Inc. ("Locate"), a predecessor-in-interest to Gabriel, ostensibly to jointly

6   develop technology for their mutual benefit.  As it would turn out, SnapTrack and Krasner used

7   the relationship to obtain millions of dollars from Locate to keep SnapTrack afloat while

8   negotiating a billion dollar buyout.  Unaware of the sinister intentions of SnapTrack and Krasner,

9   Locate brought to the table real technological value, which SnapTrack and Krasner stole for

10  themselves and for SnapTrack's eventual purchaser, Qualcomm.   Over time, Krasner,

11  SnapTrack, and Qualcomm surreptitiously misappropriated Locate's valuable enabling

12  technology and other disruptive intellectual property rights.

13      3.    Although it paid more than a billion dollars for SnapTrack's technology,

14  Qualcomm did not pay the true owner of much of that technology.  Qualcomm took no steps to

15  correct ownership or inventorship of the patents with the United States Patent & Trademark

16  Office.  Instead, Qualcomm wrongfully continued to file patents and patent applications based

17  on Locate's technology and failed to pay Gabriel, the true owner, for its many inventions and

18  patents.

19      4.    Gabriel brings this suit to obtain payment for the technology unlawfully acquired

20  and used and to correct ownership and inventorship on what should be its patents.

21                           **II. PARTIES**

22      5.    Plaintiff Gabriel Technologies Corporation is a corporation organized pursuant to

23  the laws of the State of Delaware with its principal place of business in Omaha, Nebraska.

24

25

6.     Plaintiff Trace Technologies, LLC is a limited liability company organized pursuant to the laws of the State of Nevada.   Trace Technologies, LLC is a wholly-owned subsidiary of Gabriel Technologies Corporation.

7.     Defendant Qualcomm is a corporation organized pursuant to the laws of the State of Delaware.  Qualcomm's principal place of business and United States headquarters is located in San Diego, California.  Qualcomm may be served with citation by serving its registered agent, The Prentice-Hall Corporation System, Inc., 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8.     Defendant SnapTrack is a corporation organized pursuant to the laws of the State of California.   SnapTrack's principal place of business is located in California.   Since its acquisition by Qualcomm in 2000, SnapTrack is a wholly owned subsidiary of Qualcomm. SnapTrack may be served with citation by serving its registered agent, Corporation Service Company d/b/a CSC - Lawyers Incorporating Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

9.     Defendant Krasner is an individual who is a citizen of and resides in the State of California.  Upon information and belief, Krasner may be served with citation at 3 Lake Court, Redwood City, California 94062.

### III. JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action and Gabriel's claims for correction of inventorship, patent ownership, declaratory judgment, and equitable patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338 as well as 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplemental jurisdiction over the related state law claims asserted herein pursuant to 28 U.S.C. § 1367.

11.     Venue in this Court is proper under 28 U.S.C. §§ 1391 and 1400(b).

## IV. FACTS APPLICABLE TO ALL COUNTS

**Gabriel, Trace, and Locate.**

12.     Gabriel Technologies Corporation is a publicly-traded corporation focused on two rapidly growing segments of the homeland security market: asset tracking and physical security. Through its wholly-owned subsidiary, Gabriel Technologies, LLC, a Nebraska limited liability company, the company designs, develops, manufactures and sells a series of physical locking systems for the transportation and shipping industries collectively known as the War-Lok™ security system.  Gabriel Technologies Corporation's other wholly-owned subsidiary, Trace Technologies, LLC ("Trace"), was formed to develop location based services to enable customers to track assets and personnel worldwide.

13.     Locate, a Washington corporation, was formed to focus on location determining devices and location-based services.

14.     Trace was developed as a joint venture entity between Locate and Gabriel.  Trace subsequently acquired substantially all of the assets of Locate, including Locate's rights under the License Agreement with SnapTrack.  Gabriel then acquired all of Locate's rights in Trace, which today operates as a wholly-owned subsidiary of Gabriel.

**Krasner and SnapTrack.**

15.     In late 1998, the founders of Locate started discussing joint development projects with SnapTrack.

16.     Although Locate was seeking opportunities to develop its existing business, Krasner saw Locate as providing access to two resources he wanted: (1) funds to keep

1   SnapTrack running while he was attempting to sell SnapTrack and (2) valuable enabling

2   technology that he could steal and wrongfully add to SnapTrack's patent portfolio.

3        17.   While negotiating the terms of a potential venture, SnapTrack and Locate

4   discussed their intellectual property and how the parties could best work together.

5        18.   Unlike SnapTrack, Locate negotiated in good faith and shared its experience in

6   the field of narrowband telecommunication networks for the purpose of collaborating with

7   SnapTrack.

8        19.   At this time, SnapTrack was focused on broadband networks and assisted Global

9   Positioning System ("aGPS") technology and the development of related intellectual property.

10       20.   Although SnapTrack was not as interested in narrowband networks because it was

11  concentrating its investment in broadband networks, SnapTrack liked the opportunity that Locate

12  presented.   SnapTrack could continue to focus on broadband networks and sell itself to a

13  company focusing on broadband.  At the same time, Krasner and SnapTrack could obtain patents

14  based on valuable enabling technology that Locate had already conceived of and was

15  implementing in the narrowband field.

16       21.   SnapTrack hoped to find potential purchasers in the aGPS field who needed a

17  significant aGPS patent portfolio.  In the aGPS market, such a patent portfolio would provide

18  incredible licensing opportunities to the owner of the patent portfolio and would create

19  significant barriers to entry for competitors.

20  **SnapTrack and Locate Enter Into the License Agreement.**

21       22.   On August 20, 1999, SnapTrack and Locate entered into a License Agreement

22  (the "License Agreement").  Although titled a "License Agreement," the agreement was more

23

24

25

1    akin to a joint development agreement because the parties agreed to jointly develop and own

2    "Program Technology," as discussed below.

3        23.    The stated purpose of the License Agreement was to allow Locate to obtain (i) a

4    license to use SnapTrack's aGPS software to develop location pager devices and related location

5    services and (ii) technical support and engineering services from SnapTrack related to its

6    software.

7        24.    Locate agreed to pay SnapTrack millions of dollars in license and royalty fees in

8    exchange for the rights to use, make, or have made the SnapTrack Server Software and the

9    SnapTrack Client Software required for provisioning aGPS location-based services to Locate

10   customers.

11       25.    As part of the License Agreement, Locate expressly protected its existing

12   intellectual property rights. To that end, Section 8, entitled "Proprietary Rights," provided:

13           Each party shall retain ownership of its respective patents, trade secrets,
        copyrights, and other Intellectual Property Rights that are in existence as of the

14           Effective Date.

15       26.    Because SnapTrack realized the value that Locate brought to the table, SnapTrack

16   agreed that "Program Technology," or items of work carried out by the parties in connection

17   with the License Agreement, would be jointly owned by Locate and SnapTrack.

18       27.    In clear and unambiguous terms, section 8(b) of the License Agreement stated:

19           All Program Technology shall be jointly owned by and between the parties, with
        each party owning an undivided, equal ownership interest in any such Program

20           Technology, and all rights therein shall be vested in [SnapTrack] and [Locate] as
        joint and equal owners.

21
    28.    In addition to setting forth the parties' joint ownership interest, the License

22   Agreement further provided that this joint ownership interest was to be protected by the parties.

23   Section 8(b)(i) of the License Agreement stated:

24

25

The parties shall establish a process for identifying all Program Technology Intellectual Property Rights. With respect to all such Program Technology so identified, the parties shall establish a process for determining (1) which intellectual property filing to make with respect to such Program Technology (including but not limited to patent applications, reissues, and reexaminations, copyright and trademark registrations, and similar intellectual property registrations), (2) which party shall be responsible for such filings.

29. Thus, Locate endeavored from the outset to set up a process to protect intellectual property rights pertaining to the Program Technology by requiring: (i) a process for identifying all Program Technology Intellectual Property Rights; (ii) determination of the type of intellectual property filings needed, *e.g.*, patent, copyright, etc.; and (iii) determination of which party would be responsible for obtaining such intellectual property protection.

30. As it would turn out, Krasner and SnapTrack (and later Qualcomm) had no intention of recognizing Locate's joint ownership of Program Technology or protecting Locate's joint ownership interest.

**SnapTrack Finds a Buyer: Qualcomm.**

31. Although Qualcomm is no stranger to intellectual property disputes, a brief history of Qualcomm's patent portfolio and business is necessary to understand Qualcomm's acquisition of SnapTrack's—but in reality, Locate's—intellectual property.

32. Qualcomm was founded in 1985 to develop and patent a wireless technology system known as Code Division Multiple Access (CDMA).

33. Instead of manufacturing its own cell phones, Qualcomm made money by obtaining a large patent portfolio relating to CDMA and then licensing those CDMA patents to cell phone manufacturers like Samsung, Ericsson, and Motorola.

34. In 1999, the year CDMA was included as standard technology for phones, Qualcomm's licensing deals generated more than $400 million in revenue.

35.     Although still highly lucrative, many of Qualcomm's fundamental CDMA patents were approaching expiration. To diversify its revenue sources, Qualcomm sought to strengthen its patent portfolio by investing in certain disruptive technologies, including aGPS. Acquisition of the SnapTrack patent portfolio was intended to allow—and actually did—Qualcomm to dominate the aGPS market just as it had the CDMA market.

36.     Qualcomm decided to acquire SnapTrack and its intellectual property and technology and conducted due diligence with respect to that proposed acquisition.

37.     Bruce Greenhaus, a Qualcomm vice president and registered United States patent attorney, led a team of Qualcomm engineers and inventors involved in the SnapTrack due diligence. At times, Greenhaus has falsely claimed that he alone was responsible for the due diligence related to SnapTrack's intellectual property.

38.     Initially, Qualcomm offered to make a sizeable investment in SnapTrack, but Stephen Poizner, then Chief Executive Officer of SnapTrack, rejected that offer and insisted that Qualcomm acquire SnapTrack outright.     (Today, Poizner is the California Insurance Commissioner and recently launched a 2010 gubernatorial exploratory committee.)

39.     On January 26, 2000, Qualcomm announced that it was acquiring SnapTrack for $1 billion. In its press release, Qualcomm announced the acquisition as follows:

> In a move designed to enable broad new applications for mobile location-based services and wireless Internet systems, Qualcomm Incorporated (Nasdaq: QCOM) today announced that it will acquire SnapTrack, Inc. of San Jose, Calif., a leader in wireless position location technology. Combining SnapTrack's technology with Qualcomm's innovative gpsOne™ technology will accelerate the introduction of powerful location-enabled mobile phones and other devices utilizing Wireless Assisted GPS™ (Global Positioning System) technology. The acquisition provides Qualcomm with an even stronger patent portfolio covering Wireless Assisted GPS. *SnapTrack's patents are necessary for the commercial viability of any Wireless Assisted GPS system.* Under the agreement, SnapTrack will become a wholly owned subsidiary of Qualcomm, and will continue its work on position location technology and meeting its customer commitments. Qualcomm will pay

1   $1 billion in stock for the acquisition of SnapTrack. Completion of the agreement,
    which is subject to regulatory approval and other customary closing conditions, is
2   expected by mid-March of this year.

3       40.     Focusing on SnapTrack's patent portfolio, Dr. Irwin Mark Jacobs, then chairman

4   and CEO of Qualcomm, stated, "SnapTrack's impressive technology strengths and patent

5   portfolio will provide Qualcomm with increased position location capabilities."

6       41.     In describing SnapTrack's patent portfolio, Qualcomm acknowledged the

7   existence of the relationship and the License Agreement between Locate and SnapTrack, as

8   follows:

9           SnapTrack has nearly 50 patents, either issued or pending, that are critical to the
            efficient, cost-effective deployment of Wireless Assisted GPS. SnapTrack has
10          royalty-bearing licensing agreements with Denso, DSPC/Intel, Loc8.net/Glenayre,
            Motorola and Texas Instruments for patents and technology that cover the
11          deployment of assisted GPS-based wireless location systems, and an agreement
            with Microsoft to integrate SnapTrack's solution into the Microsoft Mobile
12          Explorer smart phone platform.

13      42.     At the time Qualcomm announced the acquisition, Locate had no reason to

14  believe that its technology had been misappropriated by Krasner and SnapTrack or that any of its

15  technology was involved in the acquisition.  Even after the acquisition, Locate continued to

16  perform under the License Agreement.

17      43.     During its due diligence (and after its acquisition of SnapTrack), Qualcomm and,

18  in particular, Greenhaus and his due diligence team ignored or disregarded both the intellectual

19  property provisions of the License Agreement and Locate's contributions to Program

20  Technology.

21      44.     On March 2, 2000, Qualcomm announced that it had completed the acquisition of

22  SnapTrack, which became a wholly owned subsidiary of Qualcomm.  Again, Qualcomm focused

23

24

25

1  on and touted "SnapTrack's patent portfolio of nearly 50 patents, either issued or pending, that

2  are critical to the efficient, cost-effective deployment of Wireless Assisted GPS systems."

3    45.    As part of the acquisition, Krasner's SnapTrack stock was converted into

4  Qualcomm stock.  Upon information and belief, Krasner and his wife received approximately

5  300,000 shares of Qualcomm stock then valued at $139.56 per share.  In connection with the

6  acquisition, Krasner became a "key employee" of Qualcomm.

7    46.    In its press releases and SEC filings relating to the acquisition of SnapTrack,

8  Qualcomm never mentioned any other SnapTrack assets or even SnapTrack's revenues.  Upon

9  information and belief, none of these items played a role in Qualcomm's acquisition of

10  SnapTrack.  Instead, the sole value to Qualcomm and reason for the $1 billion acquisition of

11  SnapTrack was the valuable intellectual property.

12    47.    In acquiring SnapTrack, Qualcomm willfully ignored the fact that SnapTrack did

13  not solely own all of the intellectual property it and Krasner sold to Qualcomm for $1 billion.

14    48.    After acquiring SnapTrack's patent portfolio, Qualcomm set its sights on

15  achieving market dominance in the aGPS market as it had done with CDMA.

16    49.    In 2002, Qualcomm announced that its gpsOne™ technology, which features

17  SnapTrack technology, "is the world's most widely developed personal location system for

18  mobile handsets."

19    50.    From 2002 to 2005, the number of gpsOne™-enabled devices in use in the world

20  skyrocketed from 5 million to 150 million.  Qualcomm claimed that it is "the most widely-

21  developed GPS technology in the world."

22

23

24

25

**Krasner, SnapTrack, and Qualcomm Misappropriate Gabriel's Technology.**

51.    Unbeknownst to Locate, Krasner decided to take Locate's intellectual property and inventions and patent them as if he were the actual inventor. Although SnapTrack was focused on aGPS and the broadband market, Krasner filed patent applications relating to the narrowband market upon which Locate was focused that were more valuable and applicable to the broadband market upon which SnapTrack was focused.

52.    One example of Krasner filing patents based on enabling technology developed by Locate occurred in March 1999.   During the negotiations culminating in the License Agreement, Locate discussed its past experience in narrowband and solutions to problems it had encountered and which were applicable to telecommunications more broadly.   Krasner, without telling Locate's founders that he was doing so, filed a provisional patent application incorporating Locate's technology under his own name prior to the execution of the License Agreement.

53.    Upon information and belief, Krasner filed the provisional patent application to add value to SnapTrack's patent portfolio for a potential purchaser (like Qualcomm) as well as to put additional arrows in its quiver for future battles with its competitors. Of course, Locate had no reason to believe that Krasner was improperly filing patent applications for which he was not the inventor.

54.    After entering into the License Agreement, Krasner continued his practice of "ghost writing" patents by filing patent applications relating to Program Technology and naming either Krasner as a sole inventor or Krasner and other SnapTrack engineers as joint inventors. No Locate employees were listed as inventors.

1    55.    While filing these patent applications, Krasner and SnapTrack did not (i) inform

2    Locate that Program Technology existed or (ii) follow the procedures required by the License

3    Agreement regarding Program Technology and intellectual property filings.  Because these

4    patent applications were not disclosed to Locate, it was not aware of Krasner and SnapTrack's

5    clandestine filings relating to technology solely owned or jointly owned by Locate.

6    56.    Following Krasner's lead, Qualcomm filed patent applications relating to Program

7    Technology and named San Diego-based Qualcomm engineers as inventors instead of Locate (or

8    Gabriel) employees.  Again, because these patent applications were not disclosed to Locate, it

9    was not aware of these unpublished filings relating to technology solely owned or jointly owned

10   by Locate.

11   57.    Locate's jointly-owned Program Technology was misappropriated by Krasner,

12   SnapTrack, and Qualcomm in multiple ways:

13       i)    Krasner, SnapTrack, and Qualcomm filed new patent applications that

14   incorporated Program Technology;

15       ii)   Krasner, SnapTrack, and Qualcomm included the Program Technology in

16   continuation-in-part patent applications;

17       iii)  Krasner, SnapTrack, and Qualcomm broadened patent claims in pending

18   patent application to encompass the Program Technology; and

19       iv)   Krasner, SnapTrack, and Qualcomm failed to credit Locate as an assignee

20   or Locate employees as co-inventors.

21   58.    At least ninety-two (92) U.S. and foreign patents and patent applications filed by

22   Krasner, SnapTrack, and Qualcomm are based upon—in whole or in part—Program Technology,

23

24

25

1  Locate's sole intellectual property, or both.   These patents and patent applications can be

2  grouped into at least thirteen (13) core inventions.

3         59.      Nine (9) of at least thirteen (13) core inventions are embodied in the following

4  U.S. patents (and related foreign patents or applications):

5                  Patent Nos. 6,377,209 and 6,583,757 ("the '209 and '757 Patents") and six (6)

6  related  PCT/foreign  patents,  including  WO2000057203,  EP1171779,  MXPA01009528,

7  CN1344372, CA2367032, and AU773464;

8                  Patent No. 6,661,372 ("the '372 Patent");

9                  Patent No. 6,799,050 ("the '050 Patent");

10                 Patent No. 6,861,980 ("the '980 Patent") and six (6) related PCT/foreign patents,

11  including  AU2005250882,  BRPI0511499,  CN1957264,  EP1749215,  JP2008500543,  and

12  WO2005119287;

13                 Patent No. 6,895,249 ("the '249 Patent") and ten (10) related PCT/foreign patents,

14  including  AU777646B,  AU7689401,  BR0106971,  CA2383685,  CN1201627,  EP1302081,

15  HK1050606, JP2004504614, MXPA02002692, and WO0207458;

16                 Patent No. 7,254,402 ("the '402 Patent") and ten (10) related PCT/foreign patents,

17  including  AU1534202,  AU2002215342,  CA2425547,  CN1608211,  EP1330662,  IL155206,

18  JP4018535B2, JP2007306588, MXPA03003208, and WO0231526;

19                 Patent  No.  7,289,786  ("the  '786  Patent")  and  U.S.  Application  Serial  No.

20  11/538,436  ("the  '436  Application")  and  six  (6)  related  PCT/foreign  patents,  including

21  CN1762173,    EP1588578,    JP2007521712,    KR20050090461,    MXPA05007633,    and

22  WO2004066665;

23

24

25

1    Patent No. 7,319,876 ("the '876 Patent") and ten (10) related PCT/foreign patents,

2    including AU2003270026, BR0313697, CA2496460, CN1689365, EP1532833, JP2005537709,

3    KR20050040131,MXPA05002231, RU2005108595, and WO2004019650; and

4    Patent No. 7,421,277 ("the '277 Patent") and related U.S. Application Serial No.

5    11/377,856 ("the '856 Application").

6    60.    The remaining four (4) core inventions are embodied in the following U.S. patent

7    applications (and related foreign patents or applications):

8    Application Serial No. 10/418,799 ("the '799 Application") and ten (10) related

9    PCT/foreign patents, including AU2003301350, BR0315350, CA2501268, CN1705894,

10   EP1552323, JP2006504110, KR20050051695, MXPA05003921, RU2005114912, and

11   WO2004036240;

12   Application Serial No. 10/792,062 ("the '062 Application") and nine (9) related

13   PCT/foreign patents, including BRPI0408017, CA2517800, CN1778127, EP1600020,

14   JP2006521767, KR20050104420, MXPA05009417, RU2005130765, and WO2004080096;

15   Application Serial No. 10/956,409 ("the '409 Application) and two (2) related

16   PCT/foreign patents, including BRPI0512122 and WO2006009712; and

17   Application Serial No. 10/961,986 ("the '986 Application) and seven (7) related

18   PCT/foreign patents, including CA2463543, CN1602636, EP1435184, IL161315,

19   JP2005537690, KR20050035147, and WO03032662.

20   61.    These patents and patent applications should name Locate employees as the sole

21   inventors or, at the very least, as joint inventors.

22   62.    By filing these patent applications and obtaining these patents, Krasner,

23   SnapTrack, and Qualcomm obtained valuable technology without paying for it.   The

24

25

1   procurement of these issued patents has unfairly allowed SnapTrack and Qualcomm to create

2   barriers of entry to third-party competition in the aGPS market that was not rightfully theirs to

3   use and from which to benefit.  Upon information and belief, Qualcomm licenses these patents to

4   industry leaders as part of its patent portfolio and lucrative business model.  Because Gabriel did

5   not—and still does not—have access to Qualcomm's license agreements, it was not aware of any

6   licensing of patents that should have listed Locate employees as sole or joint inventors.

7        63.    In addition to filing patents based on Locate's inventions, upon information and

8   belief, Krasner has filed patents relating to wireless network technology which was likely

9   developed by companies other than SnapTrack or Qualcomm.   Examples of such suspicious

10  patents include U.S. Patent Nos. 6,937,872 and 6,665,541.

11       64.    Qualcomm's clandestine activities in obtaining the patents have forced aGPS

12  users and providers to either obtain a license from Qualcomm or attempt to design around these

13  patents.  Thus, Qualcomm was able to represent ownership of and control barriers to entry in the

14  marketplace that were not its own.

15  **The Specific Patents and Patent Applications.**

16       65.    Krasner, SnapTrack, and Qualcomm filed the patents and patent applications

17  listed above without listing Locate or any of its employees as having any inventorship or

18  ownership rights.  As summarized below, Locate employees contributed to each of these patents

19  and patent applications and, in most cases, were the sole inventors.

20  The '209 Patent and the '757 Patent

21       66.    The '209 Patent and the '757 Patent list Krasner as the sole inventor.

22       67.    In January and February 1999, during preliminary discussions between SnapTrack

23  and Locate, Locate identified its experience with latency problems in networks like the ReFLEX

24

25

1  paging network, which latencies are significantly greater than the latencies in any other type of

2  wireless transmission network.

3      68.    These problems were not known to Krasner or SnapTrack until these discussions

4  with Locate, and Locate even provided the solution to these latency issues.

5      69.    As part of his efforts to make SnapTrack's patent portfolio as valuable as possible

6  to potential buyers, Krasner took Locate's technology and patented it under his own name.

7  The '372 Patent

8      70.    The '372 Patent only lists Richard Girerd and Krasner as inventors.

9      71.    The '372 Patent was broadened during prosecution to cover new types of

10 acquisition assistance information having reduced satellite information payloads.

11     72.    The new types of acquisition assistance information were contributed as Program

12 Technology by Locate engineers.

13     73.    Rather than amending the patent application of the '372 Patent, the new

14 acquisition assistance technique should have been included in either a new patent application or,

15 if possible, in a continuation-in-part (CIP) patent application, which should have named Locate

16 employees as inventors.

17 The '050 Patent

18     74.    The '050 Patent lists Krasner as the only inventor.

19     75.    The '050 Patent resolves conflicts between transmission to a terrestrial network

20 and reception from GPS satellites.

21     76.    The Locate location pager implements a mechanism that resolves similar conflicts

22 to those addressed in the '050 Patent.

23

24

25

77.     In addition, the user-initiated conflict resolution mechanism is illustrated and discussed in multiple Locate documents that pre-date the filing of the '050 Patent by more than a year.

The '980 Patent

78.     Claim 1 of the '980 Patent is directed to a method for messaging position-based information in an assisted wireless position determination system.   Qualcomm employees Rowitch and Patrick are listed as inventors.

79.     The elements of Claim 1 are disclosed in the Locate document entitled "Location Message Handling Protocol" (LMHP), dated November 2002, and in the Locate document entitled "Sputnik Software Functional Specifications" ("Sputnik"), dated December 2000.  Both of these documents pre-date the May 26, 2004 filing of the '980 patent.

The '249 Patent

80.     The '249 Patent lists Gaal, a Qualcomm employee, as the only inventor.  That patent uses position location data classifications to determine a broadcast schedule.

81.     The LS-GF IF Specification, dated December 15, 1999, which SnapTrack had in its possession, discloses the broadcasting of acquisition assistance information.  A June 1999 letter discusses a location dependent simulcast of unique satellite data, and a September 1999 e-mail discusses a meeting about the immediate need for a broadcast data aging analysis.

82.     Thus, Locate provided the details of the broadcast method claimed in the '249 Patent well prior to the July 10, 2001 filing of the patent.

The '402 Patent

83.    The '402 Patent lists Vayanos, a Qualcomm employee, as the first-named inventor.  Samir Soliman, another Qualcomm employee who was a member of the SnapTrack due diligence team, is also listed as an inventor.

84.    The Locate paging network delivers acquisition assistance information either in a broadcast mode to all location pagers in a GPS zone or in a targeted mode to a targeted location pager in a single base station coverage area.

85.    In addition, documents authored by Locate in 1999 disclose relevant information regarding the acquisition assistance information discussed in the '402 Patent.  Specifically, claims of the '402 Patent recite limitations regarding the GPS code phase search range shown in the Locate documents.

86.    Because Qualcomm was a member of a standard-setting subcommittee and because Vayanos represented Qualcomm on that committee, if Vayanos were truly the inventor of the '402 Patent, the patent should have been disclosed prior to the balloting and publication of the relevant standard.

87.    However, Qualcomm did not make a declaration of intellectual property rights and licensing until after publication of the standard.

88.    Locate, as the sole inventor of this patent, may not have been obligated to declare the patent to the standard setting organization or to grant licenses under favorable terms to standard members.

1  The '786 Patent and the '436 Application

2      89.    The '786 Patent and the '436 Application list Krasner as the sole inventor and

3  relate to a "method and apparatus for communicating emergency information using wireless

4  devices."

5      90.    Locate documents that pre-date the filing of the '786 Patent and the '436

6  Application illustrate the triggering of an alert on the location pager and the transmission of an

7  alert message to an emergency center.  Other Locate documents supporting inventorship include

8  an internal e-mail and memorandum.

9      91.    Claims of the '786 Patent and the '436 Application recite limitations that are

10  shown in these documents.

11  The '876 Patent

12      92.    Claim 1 of the '876 Patent, which has a priority date of August 26, 2002, is

13  directed to a location services apparatus for providing location services to a mobile station.

14  Qualcomm employees Jha and Grilli are listed as the inventors.

15      93.    The Sputnik document discloses the elements of Claim 1 and pre-dates the

16  priority date of the '876 Patent.

17  The '277 Patent and the '856 Application

18      94.    Claim 1 of the '277 Patent, which has a priority date of February 5, 2004, is

19  directed to a method of performing position determination in a network. Qualcomm employee

20  Burroughs is listed as the inventor.

21      95.    Elements of the '277 Patent and the '856 Application are disclosed in the Sputnik

22  document, the Locate document entitled "Location Message Handling Protocol" (LMHP), dated

23  November 2002, and other Locate documents.

24

25

PLAINTIFFS' ORIGINAL COMPLAINT

The '799 Application

96.     Claim 1 of the '799 Application, which has a priority date of October 17, 2002, is directed to a method of determining a position estimate for a wireless terminal. Leonid Sheynblat is listed as the inventor.

97.     Claim 1 encompasses a Locate method of improving the location estimation in the network and is disclosed in the Sputnik document.

The '062 Application

98.     Claim 1 of the '062 Application, which has a priority date of March 5, 2003, is directed to a method of providing location services. Wang, Sheynblat, Agahse, Gollens, and Hsu are listed as the inventors on the '062 Application.

99.     The Sputnik document and other Locate documents describe the functionality discussed in the '062 Application.

The '409 Application

100.    The '409 Application relates to tracking lost and stolen mobile devices using unique equipment identifiers. Anjali Jha, a Qualcomm employee, and Krasner are listed as the inventors.

101.    Claims in the '409 Application recite limitations regarding the tracking of a targeted mobile station based on status information. These limitations were taught in various documents provided to SnapTrack by Locate.

The '986 Application

102.    The '986 Application establishes permission criteria to allow others to track the location of a mobile device. Krasner and Sheynblat are listed as the inventors.

103.   Multiple Locate documents, which pre-date the filing of the '986 Application, define creating permissions for users, and the claims of the '986 Application recite limitations that are shown in those documents.

104.   The above-discussed patents and patent applications read on the following Qualcomm/SnapTrack products and services:  the SnapTrack Position Determination Module software, the Qualcomm QPoint server, the GlobalWARN system, the inGeo device, the Brew Location Signature Solution server, the Qualcomm MedioFlo network, and/or any product incorporating Qualcomm's gpsOne technology.

**Qualcomm Continues Its Wrongdoing.**

105.   Despite Qualcomm's protestations to Gabriel that Locate did not have people who contributed to the inventions or the patents at issue, Gabriel learned that Qualcomm, through an entity called Qualcomm Ventures, considered an investment in Locate and later pursued a buyout of Locate, including all of Locate's hardware, software, key personnel (both current and former), and intellectual property rights.   During the due diligence of that proposed transaction, Qualcomm had access to Locate's financial information and other valuable company information.  Qualcomm did not consummate the buyout nor did Qualcomm inform Locate of its potential ownership interest in portions of the SnapTrack patent portfolio.

106.   After Qualcomm's failed attempt to buy Locate and its intellectual property rights, in or around June 2004, SnapTrack and Qualcomm presented Trace, the successor-in-interest to Locate's assets, with an Amended and Restated License Agreement.  The proposed Amended and Restated License Agreement stated that it "supersedes and replaces in its entirety the prior License Agreement made and entered as of August 20, 1999, as amended, by and

1  between [SnapTrack] and Trace Technologies LLC, as successor-in-interest to substantially all

2  of the assets of Locate Networks, Inc."

3      107.    Neither SnapTrack nor Qualcomm informed Trace that they had filed patent

4  applications incorporating Locate's intellectual property without listing Locate personnel as

5  inventors.  To the contrary, representatives of SnapTrack and Qualcomm fraudulently concealed

6  that information from Gabriel and falsely claimed that no Program Technology existed under the

7  License Agreement.  Representatives of SnapTrack and Qualcomm further falsely claimed that

8  the sole purpose of presenting the Amended and Restated License Agreement was to standardize

9  the prior License Agreement to the form now used by Qualcomm.

10      108.    The provisions of the proposed Amended and Restated License Agreement were

11  significantly different from the License Agreement entered into by SnapTrack and Locate.  First,

12  the proposed Amended and Restated License Agreement deleted section 8(b) of the License

13  Agreement which stated that "[a]ll Program Technology was jointly owned by the parties."

14  Second, the proposed Amended and Restated License Agreement stated:

15      Trace hereby grants, on behalf of itself and its Affiliates, to [SnapTrack] an
    irrevocable, perpetual, nonexclusive, paid-up, royalty-free, worldwide license

16      under the Necessary IP of Trace and its Affiliates, without the right to sublicense
    (except to [SnapTrack]'s Affiliates, and by [SnapTrack] and/or its Affiliates to

17      their direct and indirect customers) in order to use, make, have made, sell, offer to
    sell, lease, offer to lease, and import the Software.

18

19      109.    Necessary IP was defined in the proposed Amended and Restated License

20  Agreement as "all Intellectual Property Rights which are essential or commercially necessary to

21  the development, manufacture, use, sale or distribution of licenses or other rights to Software in

22  order to comply with the specifications of the location services portion of any wireless

23  communications standard adopted for any air interface by any nation."

24

25

110.   By the deletion of the joint ownership provision of the License Agreement and the inclusion of a broadly-defined license from Trace to SnapTrack, SnapTrack and Qualcomm attempted to transfer Locate's existing intellectual property rights to themselves.

111.   As part of the proposed Amended and Restated License Agreement, SnapTrack and Qualcomm also requested that Trace pay approximately $342,000 in additional fees and costs.  Knowing quite well what they had done with Locate's intellectual property over the past few years, SnapTrack and Qualcomm kindly offered to waive these fees if Gabriel would just sign the Amended and Restated License Agreement.

112.   In April 2005, when Trace inquired as to whether any Program Technology or related intellectual property filings existed, Qualcomm's Senior Legal Counsel Phillip Fries responded that Qualcomm would only address those issues after Trace paid certain fees to SnapTrack or signed the proposed Amended and Restated License Agreement.   Although Qualcomm did agree that the change regarding joint ownership rights would only apply prospectively, Qualcomm still did not acknowledge or identify Locate's contributions.  In point of fact, Fries indicated that Locate was a "sales" team without engineering capability.

113.   In August 2005, counsel for Gabriel met with Greenhaus.  During that meeting, Greenhaus explained that he had been part of the original Qualcomm team involved in the valuation of SnapTrack and that as part of the acquisition, he knew SnapTrack's patent portfolio very well.  To begin that meeting, Greenhaus stated that Locate did not make any contribution to SnapTrack's patent portfolio.  By the end of the meeting, Greenhaus stated that he may have been wrong and that steps needed to be taken to verify several points.

114.   After the meeting, Greenhaus, knowing at that time that Gabriel lacked needed capital, continued to conceal Krasner, SnapTrack, and Qualcomm's fraud and misappropriation

by claiming that Locate did not contribute any technology and that no Program Technology existed. However, SnapTrack and Qualcomm did not provide Locate access to any inventor notebooks or other information exclusively in their possession regarding any inventions or patent filings. Greenhaus had promised to do so and then purposefully delayed in the hopes of bankrupting Gabriel.

115. In October 2005, Qualcomm Senior Director Brian Salisbury again requested that Trace sign the Amended and Restated License Agreement. He also reiterated Qualcomm's position that no SnapTrack patents were jointly owned by Locate.

116. Over a period of years, Krasner, SnapTrack, and Qualcomm failed to disclose and actively misled Locate about the existence of Program Technology and related intellectual property filings. When Gabriel attempted to discover whether and what Program Technology existed, Qualcomm refused to provide any information regarding Program Technology or related intellectual property filings and outright claimed that no Program Technology existed. To date, Qualcomm has refused to provide information regarding patent filings on the grounds that such information is confidential and/or privileged.

117. Despite SnapTrack and Qualcomm's false representations about the existence of Program Technology or any patents or patent applications based on Program Technology, Trace refused to sign the proposed Amended and Restated License Agreement.

118. After refusing to sign the proposed agreement, Trace retained intellectual property counsel to review published patents and patent applications filed worldwide by Krasner, SnapTrack, and Qualcomm to determine whether any were based on Program Technology. SnapTrack is listed as an assignee on 55 patents. Qualcomm has filed approximately 6,500 U.S.

1   patent applications and is listed as an assignee on approximately 2,345 issued domestic patents,

2   of which almost 2,000 issued during the last eight years.

3      119.    Over time, as the patents and patent applications discussed above matured and

4   were published and Gabriel obtained access to them, Gabriel began reviewing these documents.

5   Because Locate was no longer in business, Gabriel interviewed people familiar with Locate and

6   its business as well as the business relationship with SnapTrack. Gabriel also searched for

7   documents relating to Locate that may discuss Locate technology or inventions. Gabriel then

8   compared this information against the patent filings in an effort to determine whether Locate

9   contributed to these filings.

10      120.    Without access to SnapTrack's purported inventors' notebooks and others

11   materials that are in the possession of Krasner, SnapTrack, and Qualcomm, Gabriel was only

12   able to discover certain patents that incorporate Locate's pre-existing technology and jointly-

13   owned Program Technology. Upon information and belief, other patents and patent applications

14   in addition to those identified thus far likely incorporate Locate's pre-existing technology and

15   jointly-owned Program Technology. Upon information and belief, Gabriel has uncovered

16   preliminary evidence that indicates that Krasner and SnapTrack may have misappropriated other

17   parties' intellectual property rights in a manner very similar to that used against Locate.

18      121.    Gabriel presented information concerning its intellectual property claims to

19   Qualcomm and its Board of Directors in June 2007. To the best of Gabriel's knowledge,

20   Qualcomm has taken no steps to correct the inventorship issues or otherwise address the

21   misappropriation of Locate's technology and intellectual property.

22      122.    All conditions precedent to recovery have occurred.

23

24

25

123.   Gabriel's claims are timely filed because: (1) the applicable statutes of limitations have not expired; (2) the parties entered into multiple tolling agreements; and/or (3) the doctrines of fraudulent concealment, discovery rule, equitable tolling, and/or equitable estoppel preclude defendants from raising statutes of limitations as a defense.

## V. CAUSES OF ACTION

COUNT ONE: Breach of the License Agreement

124.   Gabriel repeats and realleges the allegations above.

125.   Locate and SnapTrack entered into the License Agreement.

126.   Locate performed under the License Agreement and/or was excused from not performing because of SnapTrack's prior material breaches.

127.   SnapTrack breached the License Agreement when it, among other things, (1) took ownership of Locate's patents, trade secrets, copyrights, and other Intellectual Property Rights that were in existence as of the Effective Date; (2) took and destroyed Locate's joint ownership interest in Program Technology; (3) failed to establish a process for identifying all Program Technology Intellectual Property Rights; (4) failed to establish a process for determining which intellectual property filings to make with respect to such Program Technology; and (5) filed patent applications and patents without listing Locate as an assignee or inventor.

128.   SnapTrack breached the License Agreement in secret by, among other things, not disclosing its patent filings relating to both Locate's technology and Program Technology. The harm flowing from SnapTrack's breaches was not reasonably discovered by Gabriel until a future time as discussed above.

129.   As a result of SnapTrack's breaches, Gabriel has suffered damages for which it seeks recovery.

COUNT TWO: Fraud and Fraudulent Inducement

130.   Gabriel repeats and realleges the allegations above.

131.   Krasner, acting on behalf of himself and on behalf of SnapTrack, intentionally and knowingly misrepresented that Locate would jointly own Program Technology and that Locate would retain its own intellectual property.   In addition, Krasner, SnapTrack, and Qualcomm intentionally and knowingly failed to disclose that they were misappropriating Locate's technology and filing patents and patent applications incorporating jointly-owned Program Technology as well as Locate's technology.  Even when specifically asked, Qualcomm claimed that no Program Technology existed.

132.   Krasner, SnapTrack, and Qualcomm intended to induce Gabriel to rely on the misrepresentations and/or concealment.

133.   Gabriel justifiably relied on the misrepresentations and/or the undisclosed information by, among other things, entering into and performing under the License Agreement. Furthermore, because of Krasner, SnapTrack, and Qualcomm's false representations and concealment, Gabriel did not immediately become aware of their wrongful acts with respect to Locate's intellectual property.

134.   As a result of Krasner, SnapTrack, and Qualcomm's fraud, Gabriel has suffered damages for which it seeks recovery.

135.   Because Krasner, SnapTrack, and Qualcomm are guilty of fraud, oppression, and/or malice, Gabriel also seeks exemplary damages.

COUNT THREE: Tortious Interference with Contract

136.   Gabriel repeats and realleges the allegations above.

137.    Locate and SnapTrack entered into the License Agreement, a valid and enforceable agreement.

138.    Krasner and Qualcomm were aware of the existence of the License Agreement.

139.    As discussed above, Krasner and Qualcomm intentionally caused SnapTrack to breach the License Agreement, and as a result, SnapTrack did breach the License Agreement.

140.    As a result of Krasner and Qualcomm's tortious interference, Gabriel has suffered damages for which it seeks recovery.

141.    Because Krasner and Qualcomm are guilty of fraud, oppression, and/or malice, Gabriel also seeks exemplary damages.

COUNT FOUR: Correction of Inventorship (Pursuant to 35 U.S.C. § 256)

142.    Gabriel repeats and realleges the allegations above.

143.    As discussed above, Krasner and representatives of SnapTrack and Qualcomm applied for and were issued U.S. Patents based on the representation that they were the inventors.

144.    This representation was false, because Krasner, SnapTrack, and Qualcomm failed to disclose that representatives of Locate conceived of claims in the patents and were the true inventors.

145.    At all relevant times, Locate was without deceptive intent and was unaware of and played no role in any deception by Krasner, SnapTrack, and Qualcomm.

146.    Pursuant to 35 U.S.C. § 256, the patents should be corrected to reflect that representatives of Locate/Gabriel are the sole inventors or at the very least, co-inventors.

COUNT FIVE: Declaratory Judgment Of Ownership Interest In The Patents (Pursuant to 28 U.S.C § 2201)

147.    Gabriel repeats and realleges the allegations above.

1       148.   Gabriel seeks a declaratory judgment that Gabriel has an ownership interest in and

2 to the above-listed patents.

3       149.   There is a substantial and continuing justiciable controversy between Gabriel and

4 Krasner, SnapTrack, and Qualcomm as to Gabriel's ownership interest in and to the patents.

5       150.   A valid case and controversy exists sufficient for this Court to declare the rights

6 and remedies of the parties, because there is a dispute between the parties as to the ownership of

7 valuable technology and related patents.

8       151.   This controversy is ripe for determination at this time because the parties dispute

9 ownership of valuable technology and related patents and because those patents have been issued

10 by the USPTO.

11       152.   Gabriel has the requisite standing to request this declaration in that Gabriel

12 conceived of and owns such technology, but Krasner, SnapTrack, and Qualcomm utilized these

13 contributions made by Gabriel without payment and/or acknowledgment of inventorship and

14 ownership rights.

15       153.   To resolve this controversy, Gabriel requests that the Court declare the respective

16 rights and duties of the parties in this matter and, in particular, that Gabriel is the owner of

17 certain technology and patents.

18 COUNT SIX: Equitable Patent Infringement

19       154.   Gabriel repeats and realleges the allegations above.

20       155.   As alleged above, Gabriel is the true owner of certain patents currently assigned

21 to SnapTrack and/or Qualcomm.

22

23

24

25

156.   SnapTrack and Qualcomm have infringed those patents by making, selling, using, offering to sell, and/or importing patented products and will continue to do so unless enjoined by this Court.

157.   As a result of SnapTrack and Qualcomm's infringement, Gabriel is entitled to permanent injunctive relief restraining and enjoining SnapTrack and Qualcomm and all those in privity with or acting in concert with them from manufacturing, selling, or offering for sale any products that infringe, contributorily infringe, or induce the infringement of the patents owned by Gabriel.  To the extent legally and equitably available, Gabriel also seeks an accounting for damages and/or damages related to SnapTrack and Qualcomm's past infringement.

COUNT SEVEN: Misappropriation (Pursuant to California Uniform Trade Secrets Act)

158.   Gabriel repeats and realleges the allegations above.

159.   Locate's confidential and proprietary information as well as Program Technology derived independent economic value from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use.

160.   Locate took reasonable efforts under the circumstances to maintain the secrecy of its confidential and proprietary information.

161.   Krasner, SnapTrack, and Qualcomm misappropriated Locate's confidential and proprietary information as well as Program Technology by (i) acquiring the information by improper means and (ii) disclosing or using the information without Locate's consent.

162.   As the direct and proximate result of Krasner, SnapTrack, and Qualcomm's misappropriation, Gabriel suffered actual loss for which it seeks recovery and seeks recovery of the unjust enrichment caused by the misappropriation.  In the alternative, Gabriel seeks a reasonable royalty.

163.   Because Krasner, SnapTrack, and Qualcomm willfully and maliciously misappropriated Locate's confidential and proprietary information, Gabriel is entitled to an award of exemplary damages and attorneys' fees and costs.

164.   Because its remedy at law is inadequate, Gabriel seeks injunctive relief to enjoin defendants' misappropriation.

COUNT EIGHT: Conversion

165.   Gabriel repeats and realleges the allegations above.

166.   Locate owned valuable enabling technology and a joint ownership interest in Program Technology.

167.   Krasner, SnapTrack, and Qualcomm—through their patent filings and other acts—converted that technology and Program Technology for themselves.

168.   Accordingly, Gabriel has suffered damages for which it seeks recovery.

169.   Because Krasner, SnapTrack, and Qualcomm are guilty of fraud, oppression, and/or malice, Gabriel also seeks exemplary damages.

COUNT NINE: Unfair Competition (Pursuant to Cal. Bus. & Prof. Code § 17200)

170.   Gabriel repeats and realleges the allegations above.

171.   Krasner, SnapTrack, and Qualcomm's actions constitute unlawful, unfair, and fraudulent business acts or practices.  Among other things, Krasner, on behalf of himself and SnapTrack, fraudulently and deceptively misrepresented that Locate would jointly own Program Technology.  In addition, Krasner, SnapTrack, and Qualcomm fraudulently and deceptively failed to disclose that they were misappropriating Locate's technology and Program Technology, and they filed patents and patent applications incorporating Locate's technology and jointly owned Program Technology.

172.   Such misrepresentations and misappropriation were fraudulent because they were likely to and have deceived Gabriel and the general public about the ownership and inventorship of Program Technology and the patents referenced above.

173.   Krasner, SnapTrack, and Qualcomm's actions are unfair in that they threaten an incipient violation of antitrust law, violate the spirit of anti-trust laws, and/or otherwise significantly threaten and/or harm competition.   Among other things, Qualcomm licensed the improperly obtained patents and used them to create barriers of entry for its competitors.

174.   Moreover, Krasner, SnapTrack, and Qualcomm's misappropriation of Locate's technology and Program Technology constitute unlawful business acts and/or practices.

175.   Because Gabriel has suffered an injury in fact and has lost money and property as a result of the unfair competition, Gabriel is entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203.

COUNT TEN: Unjust Enrichment

176.   Gabriel repeats and realleges the allegations above.

177.   Locate is and was the owner of valuable enabling technology as well as various related patents.

178.   Krasner, SnapTrack, and Qualcomm misappropriated Locate's technology by applying for and obtaining patents based on that technology and Program Technology.

179.   Upon information and belief, Qualcomm has provided third parties with licenses to patents based on Locate's technology and Program Technology, and SnapTrack and Qualcomm have utilized Locate's technology and Program Technology in products designed or sold by them.

180.   The improper use and incorporation of Locate's technology and Program Technology has caused Gabriel to suffer an impoverishment, and Krasner, SnapTrack, and Qualcomm's use of Locate's technology has caused them to be unjustly enriched.

181.   Krasner, SnapTrack, and Qualcomm have no justification for the unjust enrichment, and no reason exists to allow them to retain the benefit without payment to Gabriel.

182.   Accordingly, Gabriel has suffered damages for which it seeks recovery.

## VI. JURY REQUEST

183.   Gabriel requests a jury trial on all issues so triable.

## VII. REQUEST FOR RELIEF

184.   WHEREFORE Gabriel Technologies Corporation and Trace Technologies, LLC respectfully request that the Court:

A.   Enter judgment against Krasner, SnapTrack, and Qualcomm for actual, consequential, and compensatory damages suffered by Gabriel in an amount exceeding $1 billion;

B.   Enter judgment against Krasner, SnapTrack, and Qualcomm for exemplary damages;

C.   Enter judgment correcting ownership and inventorship of the patents and order the USPTO to so correct ownership and inventorship;

D.   Enter declaratory judgment that Gabriel is the owner of certain technology and patents discussed above;

E.   Enter judgment finding infringement by SnapTrack and/or Qualcomm of Gabriel's patents;

1    F.    Enter preliminary and permanent injunctive relief preventing Krasner,

2  SnapTrack, and Qualcomm from using Gabriel's confidential and proprietary information,

3  technology, and patents;

4    G.    Award Gabriel attorneys' fees and costs;

5    H.    Award Gabriel pre-judgment and post-judgment interest at the highest

6  rates allowed by law; and

7    I.    Grant Gabriel such other and further relief to which it may be entitled at

8  law or equity.

9    Respectfully submitted,

10

11    By: Brian Gonzalez

12  Brian C. Gonzalez
   State Bar No. 140348
   **LAW OFFICES OF BRIAN C. GONZALEZ**

13  2533 S. Coast Highway 101, Suite 250
   Cardiff by the Sea, California 92007

14  Telephone: (760) 436-9529
   Facsimile:  (760) 436-4895

15  William A. Munck

16  Texas State Bar No. 00786127
   E. Leon Carter

17  Texas State Bar No. 03914300
   Jamil N. Alibhai

18  Texas State Bar No. 00793248
   John T. Mockler

19  Texas State Bar No. 00789495
   J. Robert Arnett

20  Texas State Bar No. 01332900
   **MUNCK CARTER, P.C.**

21  600 Banner Place
   12770 Coit Road

22  Dallas, Texas 75251
   Telephone: (972) 628-3600

23  Facsimile: (972) 628-3616

24

25

**PLAINTIFFS' ORIGINAL COMPLAINT**                    **PAGE 34 of 34**

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FAXED

ORIGINAL

## I. (a) PLAINTIFFS
Gabriel Technologies Corporation and Trace Technologies, LLC

**DEFENDANTS**
Qualcomm Incorporated, SnapTrack, Inc., and Norman Krasner

**(b)** County of Residence of First Listed Plaintiff   Douglas
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Law Offices of Brian C. Gonzales, 2533 S Coast Hwy 101, #250, Cardiff by the Sea, CA 92007, T: (760) 436-9529

Attorneys (If Known)

'08 CV 1992 BEN NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §§ 2201 & 2202
Brief description of cause:
Declaratory judgment, correction of inventorship, patent ownership

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  $1 Billion +

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE                    DOCKET NUMBER

DATE   10-24-08

SIGNATURE OF ATTORNEY OF RECORD   Brian Gonzales

**FOR OFFICE USE ONLY**

RECEIPT #  162485   AMOUNT $350 — 10/27/08 BH   APPLYING IFP           JUDGE           MAG. JUDGE

# UNITED STATES
# DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA
### SAN DIEGO DIVISION

## #  156485    —  BH

## October 27, 2008
## 16:24:12

### Civ Fil Non-Pris
USAO #.: 08CV1992 CIVIL FILING
Judge..: ROGER T BENITEZ
Amount.:                    $350.00 CK
Check#.: BC#73069

## Total—>  $350.00

FROM: GABRIEL TECH ET AL V. QUALCOMM
        CIVIL FILING