COOLEY LLP
STEVEN M. STRAUSS (99153) (sms@cooley.com)
JOHN S. KYLE (199196) (jkyle@cooley.com)
4401 Eastgate Mall
San Diego, California  92121
Telephone:     (858) 550-6000
Facsimile:      (858) 550-6420

TIMOTHY S. TETER (171451) (teterts@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:     (650) 843-5000
Facsimile:      (650) 857-0663

Attorneys for Defendants
QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN KRASNER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| GABRIEL TECHNOLOGIES CORPORATION and TRACE TECHNOLOGIES, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN KRASNER,<br><br>　　　　　　　Defendants. | Case No.  08-cv-1992 MMA POR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR A BOND PURSUANT TO C.C.P. § 1030**<br><br>Date:　　　August 2, 2010<br>Time:　　　2:30 p.m.<br>Judge:　　　Hon. Michael M. Anello |

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION. .................................................................................................... 1

II. BACKGROUND. ..................................................................................................... 2

    A. Legal Standards. ............................................................................................ 4

    B. Defendants Have a Reasonable Possibility of Success on the Merits of Gabriel's Claims. ........................................................................................... 5

        1. Gabriel Will Not Present Clear and Convincing, Corroborated Evidence that Gabriel's Alleged Inventors Contributed to Qualcomm's Patents. ..................................................................... 5

        2. Gabriel's Breach of Contract and Misappropriation of Trade Secrets Claims Are Barred As a Matter of Law. ...................................................... 7

            a. Defendants Have a Reasonable Possibility of Prevailing on Gabriel's Claim for Breach of Contract. ........................................... 7

                i. Gabriel Failed to Meet Its Contractual Obligations. ........... 8

                ii. Gabriel Waived its Claim for Breach of Contract............... 9

            b. Gabriel's Misappropriation of Trade Secrets Claim is Barred by the Statute of Limitations. ......................................................... 10

    C. Discretionary Factors Justify Ordering A Bond. ..................................... 12

        1. Defendants' Probability of Success and the Purpose and Background of the Lawsuit Favor Granting the Motion. ........................... 12

        2. The Proposed Security is Reasonable. ..................................................... 12

    D. Defendants' Costs. ...................................................................................... 13

    E. Defendants' Fees. ........................................................................................ 15

III. CONCLUSION. ................................................................................................... 16

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Acromed Corp. v. Sofamor Danek Group*,
   253 F.3d 1371 (Fed. Cir. 2001) .................................................................................................. 5

*Alshafie v. Lallande*,
   171 Cal. App. 4th 421 (2009) .................................................................................................. 13

*alsoKourtis v. Cameron*,
   No. 08-55659, 2008 U.S. App. LEXIS 26242 (9th Cir. Dec. 2, 2009) ..................................... 4

*Brooks Furniture Mfg. v. Dutailier Intern., Inc.*,
   393 F.3d 1378 (Fed. Cir. 2005) ................................................................................................ 15

*Cypress Semiconductor Corp. v. Super. Ct.*,
   163 Cal. App. 4th 575 (2008) .................................................................................................. 10

*Ethicon, Inc., v. U. S. Surgical Corp.*,
   135 F.3d 1456 (Fed. Cir. 1998) ................................................................................................. 6

*Forcier v. Microsoft Corp.*,
   123 F. Supp. 2d 520 (N.D. Cal. 2000) .................................................................................... 12

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797 (2005) ...................................................................................................... 10, 11

*Glue-Fold Inc. v. Slautterback Corp.*,
   82 Cal. App. 4th 1018 (2000) .................................................................................................. 11

*Hess v. Advanced Cardiovascular Sys., Inc.*,
   106 F.3d. 976 (Fed. Cir. 1997) .................................................................................................. 6

*Hiraide v. Vast Sys. Tech. Corp.*,
   No. C-08-04714, 2009 U.S. Dist. LEXIS 71383 (N.D. Cal. Aug. 3, 2009) ........................ 5, 6

*In re Merrill Lynch Relocation Management, Inc.*,
   812 F.2d 1116 (9th Cir. 1987) ................................................................................................... 4

*Intermedics, Inc. v. Ventritex, Inc.*,
   822 F. Supp. 634 (N.D. Cal. 1993) .......................................................................................... 11

*Kane v. Sklar*,
   122 Cal. App. 2d 480 (1954) ................................................................................................ 8, 9

*Kern Sunset Oil Co. v. Good Roads Oil Co.*,
   214 Cal. 435 (1931) ................................................................................................................... 9

*Methode Electronics, Inc. v. Hewlett-Packard Co.*,
   No. C 99-04214, 55 U.S.P.Q.2d 1602 (N.D. Cal. 2000) .......................................................... 7

# TABLE OF AUTHORITIES
(CONTINUED)

**PAGE**

*Rubin v. Fuchs,*
  1 Cal. 3d 50 (1969) .................................................................................................. 8

*SeeGabriel Technologies Corp. et. al. v. Feilmeier,*
  No. 10-08027 (Bankr. D. Ne.) ................................................................................. 4

*Simulnet E. Assoc. v. Ramada Hotel Operating Co.,*
  37 F.3d 573 (9th Cir. 1994)........................................................................ 4, 5, 7, 12

*U.S. v. Fegen,*
  No. 07-cr-80 (S.D. Ia.) ............................................................................................ 4

*Waller v. Truck Ins. Exch.,*
  11 Cal. 4th 1 (1995) ............................................................................................ 9, 10

*Yao v. Super. Ct.,*
  104 Cal. App. 4th 327 (2002) ................................................................................ 13

**STATUTES**

35 U.S.C.
  § 256.......................................................................................................................... 7
  § 285........................................................................................................................ 15

Cal. Civ. Code
  § 3426.4 .................................................................................................................. 15
  § 3426.6 .................................................................................................................. 10

Cal. Code Civ. Proc.
  § 337(1) .................................................................................................................. 12
  § 1030 ............................................................................................................ 2, 5, 13
  § 1030(b) .................................................................................................................. 4

California Code of Civil Procedure 1030................................................................... 1

Civ. L. R. 65.1.2(a) ..................................................................................................... 4

## I. INTRODUCTION.

The law allows this Court to require an out-of-state plaintiff to post a bond to secure the defendants' reasonable attorneys fees and costs in cases exactly like this one. California Code of Civil Procedure Section 1030 allows for such a bond when there is a "reasonable possibility" that the defendant will secure a judgment and an award of costs or fees allowed by contract or statute. The purpose of the statute is to protect defendants from futile attempts to recover costs or fees after prevailing against dubious plaintiffs pursuing tenuous claims. That is this case exactly.

Plaintiffs Gabriel Technologies Corporation, together with its wholly owned subsidiary Trace Technologies LLC (collectively "Plaintiffs" or "Gabriel"), are shell companies with no business, no products, and no revenue and, for a period of time, no attorneys. Its original attorneys, who filed the complaint, withdrew and are now embroiled in another litigation with Gabriel. But the word "shell" does not adequately describe Gabriel. Gabriel's only ongoing "business" is litigation and it will probably cease to exist after this lawsuit. Through its public disclosures, we know that Gabriel has raised approximately six million dollars to fund this litigation, but that money is apparently gone, sparking internal disputes with board members and stakeholders concerning the whereabouts of the money and Gabriel's practices with respect to its stock. While Gabriel, its principals and its attorneys squabble over money and securities, Qualcomm is forced to spend to defend meritless claims.

Through motions to dismiss, seven claims have already fallen out of the complaint. As to the remaining claims, Gabriel's recent discovery responses confirm that Gabriel is still in search of a fact or a theory to support them. Indeed, Gabriel refuses to provide basic facts regarding alleged inventive contributions to the patents-at-issue by anyone other than the named inventors because it is "premature" for Defendants to seek such information. Moreover, Gabriel touts as trade secrets general concepts that are, and long were, well-known in the industry. Gabriel's inventorship claims lack any substance at all. As discussed below, there is certainly a "reasonable possibility" that the defendants will prevail. In the end, Qualcomm will spend millions to knock down every claim and, when it looks to recover fees and costs under patent or trade secret law Gabriel will pull out its empty pockets and disappear. This motion is to prevent that.

Accordingly, Qualcomm, SnapTrack and Krasner (collectively "Defendants") ask that the Court order Gabriel to post a bond of $2,900,000 pursuant to C.C.P. section 1030.

## II. BACKGROUND.

Gabriel filed this action on October 24, 2008, proclaiming that its claims are worth over $1 billion. (Dkt. 1.) Gabriel's complaint, long on hyperbole and invective but short on substance, accuses Qualcomm and Dr. Krasner of being "thieves." Since filing suit 20 months ago, Gabriel has amended its complaint four times and changed lead counsel once, causing a delay of several months while Gabriel searched for new lawyers willing to take the case. (Dkt. 14, 36, 40, 53.) Defendants have prevailed on two motions to dismiss multiple claims. (Dkt. 35, 48.) Most recently, Gabriel filed a *Fifth* Amended Complaint without leave of Court, restating a fraud claim the Court already dismissed with prejudice, and forcing Defendants to expend resources relitigating the issue. (*See* Dkt. 48, 65, 72.)

In the meantime, Gabriel offers nothing in discovery to justify its inventorship claims except assertions that it invented features that were already well-known to Defendants or easily discovered in the prior art. (Gabriel's Supplemental Response to Defendants' First Set of Interrogatories, Declaration of John S. Kyle ("Kyle Decl."), Ex. 4 at 2:16-6:21.) In fact, Gabriel objects to providing the facts, circumstances, or witnesses to substantiate its purported inventive contributions because it deems such discovery "premature contention interrogator[ies] better answered after substantial discovery has occurred." (Letter from Greg Williams to John Kyle dated June 22, 2010, Kyle Decl. Ex. 3, at 2.) In addition, Gabriel also refused to provide any trade secret identification until the Court ordered it to do so. (Dkt. 61.) The spartan "trade secret" identification Gabriel finally produced, and twice amended, does not come close to identifying any protectable trade secrets, listing only broad categories of information that were in the public domain or well known to Defendants.

Gabriel's claims also fail in light of applicable statutes of limitations. Gabriel asserts facts establishing it had notice of its claims at least as early as 1999—*nine years* before this lawsuit was filed. (Dkt. 72-2, ¶ 160.)

Based on these paper-thin legal and factual allegations, Gabriel has forced Defendants to litigate for nearly two years, at a huge expense to Qualcomm. Although both federal and state law provide that Defendants may recover costs and fees in exceptional cases, all indications are that Gabriel may well be judgment proof by the end of the litigation. Gabriel received approximately $5.7 million in "investment" in late 2007 and early 2008; however, this money appears to have vanished in the hands of several former officers and directors of the company,[1] and Gabriel has no current source of income.[2] (January 27, 2010 Letter from George Tingo to Shareholders ("Tingo Letter"), Kyle Decl., Ex. 8 at 2.). Gabriel's recent SEC filings confirm that it may be judgment-proof by the time Defendants obtain judgment in this case. (Form 8-K filed March 26, 2010, Kyle Decl., Ex. 9.) There is no reasonable expectation that Gabriel will be sufficiently solvent to pay any award of costs or fees. This is particularly true in view of the criminal histories of a number of the individuals affiliated with Gabriel: Michael Crowson, founder of Locate, has a previous conviction for mail and wire fraud and was disbarred in

---

[1] "Under the management of its former officers and directors, Gabriel did not file reports with the SEC, including historical financial statements, since 2006….An action against select former Gabriel officers and directors, and certain third parties, was filed in 2008 at the direction of the former directors of Gabriel. The current Gabriel directors have been assessing this lawsuit, and believe that it may be insufficient in its naming of alleged defendants and in the causes of action alleged. Gabriel's primary goal in this lawsuit is to possibly recapture for Gabriel monies, securities, and/or interests in the Qualcomm case from persons/entities who may have received them improperly. New counsel has been retained to reassess this lawsuit and to make recommendations to the directors as to the possible filing of an amended complaint." (Tingo Letter, Kyle Decl., Ex. 8 at 2.)

[2] "Although approximately $5.7 million was invested in Gabriel in late 2007 and early 2008, when the new Gabriel directors were appointed in June of 2009 Gabriel had little or no cash on hand, and was more than $800,000 past due in its payments to its attorneys, its landlord, its insurers, and other creditors. An investment group, including several of Gabriel's current directors, furnished Gabriel approximately $1 million of financing in 2009; however, this financing is insufficient to pay for future operations of Gabriel. Therefore, Gabriel recently completed a $500,000 short-term debt transaction to provide needed funds to pay continuing operations of the Company, and Gabriel is now working with its investment bankers on a possible means of securing long-term financing of Gabriel's operations. Any and all long-term operations financing transactions entered into by Gabriel will be completed only as necessary, only on the most favorable terms available to Gabriel, and only upon advice and approval of Gabriel's investment bankers and other advisors that such transactions are fair to the shareholders of Gabriel. There can be no assurance, however, whether or on what terms, Gabriel will be able to complete a long-term financing. (Tingo Letter, Kyle Decl., Ex. 8 at 2.)

California. *See* California Lawyer, Aug., 1985, at 69, Kyle Decl., Ex. 11; June 22, 2010 Letter from Gregory Williams to John Kyle regarding Gabriel's Responses to Defendants' First Set of Requests for Admission, Kyle Decl., Ex. 2 at 2.) Gabriel consultant Nicholas Fegen, who pled guilty to wire fraud and is now serving a federal prison sentence, also had a significant history of regulatory actions, including having his securities license revoked, prior to his appointment as a business consultant to Gabriel. (*See U.S. v. Fegen*, No. 07-cr-80, (S.D. Ia.) Dkt. 74, Kyle Decl. Ex. 29.) Finally, former Gabriel founder, president and chief operating officer Keith Feilmeier is presently the subject of a lawsuit by Gabriel, in Bankruptcy Court, claiming securities fraud, among other claims. (*See Gabriel Technologies Corp. et. al. v. Feilmeier*, No. 10-08027 (Bankr. D. Ne.) Dkt. 1, Kyle Decl. Ex. 30.) Gabriel, which was originally a defendant in the case, has taken an assignment of the rights and causes of action against Feilmeier. (*See* September 23, 2009 letter from George Tingo to Shareholders, Kyle Decl. Ex. 10.)

### A. Legal Standards.

District courts have "inherent power to require plaintiffs to post security for costs." *Simulnet E. Assoc. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994); *see also* Civ. L. R. 65.1.2(a) (" [a] judge may, upon demand of any party, where authorized by law and for good cause shown, require any party to furnish security for costs which may be awarded against such party in an amount and on such terms as are appropriate."). Federal courts "typically . . . follow the forum state's practice" in considering a motion for costs. *Simulnet*, 37 F.3d at 574; *see also In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1121 (9th Cir. 1987). Under California law, a bond is appropriate where, as here, the plaintiff is an out-of-state corporation, and the defendant can show that there is a "reasonable possibility that [it] will obtain judgment in the action." Cal. Code Civ. Proc. § 1030(b). Federal courts have wide discretion to grant a motion for bond, and generally balance a number of additional factors when considering such motions, including (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, viewed from the nondomiciliary plaintiff's perspective. *See Simulnet*, 37 F.3d at 576; *see also*

1  *Kourtis v. Cameron*, No. 08-55659, 2008 U.S. App. LEXIS 26242, at *5 (9th Cir. Dec. 2, 2009)
2  (affirming district court's imposition of a cost bond pursuant to C.C.P. section 1030); *Hiraide v.*
3  *Vast Sys. Tech. Corp.*, No. C-08-04714, 2009 U.S. Dist. LEXIS 71383, at *38-40 (N.D. Cal. Aug.
4  3, 2009) (awarding security for costs pursuant to C.C.P. section 1030).

5        Defendants satisfy Section 1030's requirements, and have a high probability of
6  succeeding on Plaintiffs' inventorship and ownership claims.  The law presumes that the named
7  inventors on the patents are the correct and only inventors, and Gabriel has offered no evidence to
8  the contrary.  *See Acromed Corp. v. Sofamor Danek Group*, 253 F.3d 1371, 1379 (Fed. Cir. 2001)
9  (where a party challenges the inventorship designation of a patent, it must "present clear and
10 convincing evidence that the omitted individual actually invented the claimed invention.").
11 Moreover, Gabriel's remaining claims depend primarily on its inventorship claims, which are
12 wholly unsubstantiated.  In addition, Gabriel's remaining claims are waived and barred by the
13 statute of limitations.  In sum, Defendants have a high probability of success on Gabriel's claims
14 as a matter of law.  Because Gabriel's claims are both legally and factually weak, and Gabriel
15 may be unable to pay any judgment in Defendants' favor, Gabriel should be required to post
16 security for Defendants' costs.  *See* Cal. Code Civ. Proc. § 1030; *Simulnet,* 37 F.3d at 574.

17     **B.**    **Defendants Have a Reasonable Possibility of Success on the Merits of Gabriel's Claims.**
18
19         **1.**    **Gabriel Will Not Present Clear and Convincing, Corroborated Evidence that Gabriel's Alleged Inventors Contributed to Qualcomm's Patents.**
20

21       Gabriel bears a heavy burden of proving incorrect inventorship.  Defendants' patents
22 presumptively name the correct inventor.  *See Acromed*, 253 F.3d at 1379 (noting that there is a
23 presumption that the named inventors on a patent are correct).  Indeed, in filing each patent, the
24 listed inventors declared under penalty of perjury that they were the inventors of the patented
25 technology.  (*See* Patents and Corresponding Inventor Declarations, Kyle Decl., Exs. 12-27.)
26 Each patent was validly assigned to Qualcomm or to SnapTrack.  (*See id.*)  Gabriel can only
27 succeed in "correcting" inventorship of these patents by providing by clear, convincing and
28 corroborated evidence establishing that individuals other than the named inventors invented the

technology covered by the patents. *See Hess v. Advanced Cardiovascular Sys., Inc.,* 106 F.3d. 976, 980 (Fed. Cir. 1997) (finding that alleged inventor had to establish inventorship by clear and convincing evidence and noting "where, as here, the patent has been outstanding for a considerable time and the patented device has been successful…there is [a] strong temptation for persons who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention); *Ethicon, Inc., v. U. S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998) (noting that "an inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof" and that to prevail on a claim of correction of inventorship the plaintiff must additionally provide evidence corroborating his testimony).

Gabriel cannot hope to present the clear, convincing, and corroborated evidence that the law requires. Thus, Defendants undeniably have at least a "reasonable possibility" of success on all of Gabriel's claims as a matter of law. *See*, *e.g., Hiraide*, No. C-08-04714, 2009 U.S. Dist. LEXIS 71383, at *38-41 (finding that defendant established "reasonable possibility" of succeeding on the merits based on meritorious arguments on motion to dismiss, and granting motion to require security).

Without a basis for an inventorship claim, Gabriel's entire case crumbles. Gabriel's first two claims, inventorship and declaratory judgment, depend entirely upon Gabriel's assertion that Locate engineers were joint or sole inventors of the patents at issue. (*See* Fourth Amended Complaint ("FAC"), ¶¶ 141, 147-48.) Gabriel alleges that Qualcomm and Krasner falsely represented to the U.S. Patent Office that they conceived of the claims in the patents, and that the inventorship designation on the patents is therefore incorrect. (FAC, ¶¶ 138-139.) Based on assignment agreements with the alleged "true inventors" Gabriel proclaims that it is an owner of the patents. (FAC, ¶¶ 147-148.)

Similarly, Gabriel's breach of contract and trade secret misappropriation claims depend upon Gabriel's inventorship allegations. (*See* FAC, ¶ 134, 152, 154.) Gabriel alleges that SnapTrack breached the Amended and Restated License Agreement when it (a) took ownership

of Locate's Patents; (b) "took and destroyed Locate's joint ownership interest in Program Technology"; and (c) "filed patent applications and patents without listing Locate as an assignee or Locate personnel as inventors." (FAC, ¶ 134.)  Gabriel alleges that Defendants misappropriated its technology through patenting it. (*See* FAC, ¶¶ 61, 154.)  This is no different from saying that Defendants relied on Gabriel's trade secrets as the basis for the patents and, as a result, employees of Gabriel's predecessor are the true inventors.[3]  Without any evidence of inventorship, Gabriel's claims fail.

In short, Gabriel cannot prevail on any of its claims without first establishing by clear and convincing, corroborated evidence that someone other than the named inventors contributed to the patents at issue and assigned their rights to Gabriel.  Gabriel has not presented any such evidence because it has none.  In fact, in its most recent supplemental responses to Qualcomm's discovery requests, Gabriel all-but-admits that it lacks sufficient evidence to make its case.  Gabriel refused to state facts or identify documents and witnesses regarding the circumstances of its alleged inventive contributions to the patents in suit.  *See* June 22, 2010 Letter from Gregory Williams to John Kyle regarding Gabriel's Interrogatory Responses, Kyle Decl., Ex. 3 at 2.)  Unbelievably, Gabriel objects that it is "premature" for Defendants to seek such information until substantial discovery has taken place.  *See id.*  Nothing could be further from the truth where Gabriel bears the heavy burden to substantiate its inventive contributions and Defendants have been waiting 20 months for it to do so.  It is time for Plaintiffs to "put [their] money where [their] mouths [are]," and post a bond, or dismiss the case entirely.  *Simulnet*, 37 F.3d at 576.

### 2. Gabriel's Breach of Contract and Misappropriation of Trade Secrets Claims Are Barred As a Matter of Law.

#### a. Defendants Have a Reasonable Possibility of Prevailing on Gabriel's Claim for Breach of Contract.

Gabriel's breach of contract claim contends that Defendants (1) failed to maintain the

---

[3] The Patent Act preempts such a claim. *See Methode Electronics, Inc. v. Hewlett-Packard Co.*, No. C 99-04214, 55 U.S.P.Q.2d 1602, 1604-05  (N.D. Cal. 2000) (finding patent preemption where the allegation that plaintiff should have named defendant in its patent applications dominated each of the claims at issue, and thus the focus of the claims was plaintiff's conduct before the PTO); 35 U.S.C. § 256 (providing for correction of inventorship).

confidentiality of Locate's trade secrets and other confidential and proprietary information; (2) failed to establish a process for identifying all Program Technology Intellectual Property rights; and (3) failed to establish a process for determining which intellectual property filings to make with respect to such Program Technology. (*See* FAC, ¶ 134.)

### i. Gabriel Failed to Meet Its Contractual Obligations.

First, Plaintiffs cannot claim breach of contract based on Defendants' alleged failure to establish processes for identifying rights and filings for Program Technology, because no Program Technology exists by the clear terms of the agreement and because Plaintiffs concede that they *also* failed to meet their contractual obligations in this regard, and the promises were mutually dependent and concurrent. *See Rubin v. Fuchs,* 1 Cal. 3d 50, 54 (1969) (noting that "whenever possible the courts will construe promises in a bilateral contract as mutually dependent and concurrent" and that "neither party can place the other in default unless he is fully able to perform or make a tender of the promised performance."); *see also Kane v. Sklar*, 122 Cal. App. 2d 480, 482 (1954) (to sue for breach of contract a plaintiff must "prove that he was able and offered to fulfill all obligations imposed upon him by the contract.").

The parties defined Program Technology as "those items of work carried out by the parties in connection with this Agreement that **are identified as Program Technology in the Project Plan**." (1999 License Agreement ("1999 Agreement"), Kyle Decl., Ex. 5, ¶ 1; *see also* 2006 License Agreement ("2006 Agreement"), Kyle Decl., Ex. 6, ¶ 8(a)) (incorporating by reference Program Technology provisions of 1999 Agreement). The Project Plan "means the project plan, set forth in exhibit B hereto…" (1999 Agreement, Kyle Decl., Ex. 5, ¶ 1, Exhibit B; *see also* 2006 Agreement, Kyle Decl., Ex. 6, ¶ 8(a).) The Agreement does not state that Program Technology did, in fact, exist. Rather, the Agreement expressly provided and anticipated that *if Program Technology items of work existed,* the parties would identify such areas in Exhibit B.

As it turned, out the parties agreed that *no items of work* were "Program Technology," and thus, the parties did not indentify any Program Technology in Exhibit B to either the 1999 or 2006 Agreements (Gabriel's Responses to Qualcomm's First Set of Interrogatories, Kyle Decl., Ex. 1 at 14:4-7.) The contract only requires the parties to "establish a process for identifying

*Program Technology* Intellectual Property Rights" and to "establish a process for determining which intellectual property filings to make with respect to *such Program Technology*." (1999 Agreement, Kyle Decl., Ex. 5 at ¶ 8(b); 2006 Agreement, Kyle Decl., Ex. 6 at ¶ 8(a).) (Emphasis added.) Since the parties agreed, by listing nothing on Exhibit B, that no "such Program Technology" existed, the parties did not have any need or obligation to establish a process for identifying "Program Technology Intellectual Property Rights" or for determining which IP filings to make for "such Program Technology." Gabriel cannot hope to recover based on non-existent Program Technology, and a mutually dependent contractual obligation that it never fulfilled, or even offered to fulfill. *See Kane*, 122 Cal. App. 2d at 482. Gabriel's breach of contract claim therefore fails as a matter of law.

### ii. Gabriel Waived its Claim for Breach of Contract.

Even if Gabriel had a viable breach of contract claim—and it does not—it waived its breach of contract claim by entering into the 2006 Agreement. Under California law, a party may, by its conduct, waive a claim for breach of contract. *See Kern Sunset Oil Co. v. Good Roads Oil Co.*, 214 Cal. 435, 445 (1931). California courts will generally find waiver where "a party intentionally relinquishes a right or when that party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Waller v. Truck Ins. Exch.*, 11 Cal. 4th 1, 33-34 (1995).

Gabriel's own pleadings establish the waiver here. At the time Trace entered into the 2006 Agreement, it was aware of the alleged breaches. Trace not only knew that the parties had not identified any Program Technology, but also retained counsel. (*See* FAC, ¶ 117.) In the FAC, Gabriel alleges that in April 2005, Trace asked Qualcomm "whether any Program Technology or related intellectual property filings existed." (FAC, ¶ 116.) But Exhibit B to 1999 Agreement is quite clear—the parties did not identify any Program Technology. Thus, Trace knew that the parties had not identified any Program Technology pursuant to the 1999 Agreement, and Trace knew that the parties had not established any "procedure" for determining intellectual property rights in Program Technology—and that is why Trace asked the question. Indeed, evidence from the time of the negotiations of the 2006 Agreement shows beyond doubt

that Gabriel was aware of the very breach claims it now makes nearly a year before it entered into the 2006 Agreement. (Email from William Munck to P. Fries dated April 15, 2005, Kyle Decl. Ex. 7)

Despite knowing of the alleged breaches, and even with the assistance of counsel, Plaintiffs did not raise any breach of contract claim in 2006. Instead, Trace executed the 2006 Agreement in February 2006, *reaffirming* the very provisions that Plaintiffs now claim Defendants breached. (*See* 2006 Agreement, Kyle Decl., Ex. 6, ¶ 8(a).) Trace did not accuse Defendants of being in breach of the contract then and cannot do so now.

Plaintiffs therefore waived any claim to breach of the contract, as Plaintiffs' behavior appears to be "so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *See Waller*, 11 Cal. 4th at 33-34.

### b. Gabriel's Misappropriation of Trade Secrets Claim is Barred by the Statute of Limitations.

Gabriel has not identified any colorable trade secrets, much less presented any plausible damages and causation claim. Even if Gabriel identified a colorable trade secret claim, the statute of limitations would bar it. Under the California Uniform Trade Secret Act ("CUTSA") "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6. "[A] plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005); *see also Cypress Semiconductor Corp. v. Super. Ct.*, 163 Cal. App. 4th 575, 586 (2008) (applying *Fox* to determination of whether cause of action had accrued under section 3426.6). Thus, under California's discovery rule, "suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." *Fox*, 35 Cal. 4th at 807. To trigger the statute of limitations, "the plaintiff[] [must] have reason to at least suspect that a type of wrongdoing has injured them." *Id.*

Further, "when the statute of limitations begins to run on some of a plaintiff's trade secret claims against given defendants, the statute also begins to run at the same time as to other trade

COOLEY LLP
ATTORNEYS AT LAW

10.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR

secret claims against those defendants, even if there have not yet been any acts of misappropriation of the other trade secrets, at least when the plaintiff shared all of the trade secrets with the defendant[] during the same time period and in connection with the same relationships and when the trade secrets concern related matters." *Intermedics, Inc. v. Ventritex, Inc.,* 822 F. Supp. 634, 657 (N.D. Cal. 1993). Indeed, "once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that defendant can be trusted to protect other secrets." *Glue-Fold Inc. v. Slautterback Corp.,* 82 Cal. App. 4th 1018, 1027 (2000).

Here, Gabriel's own pleadings establish that the claim is time barred. Gabriel's claim for misappropriation is barred if Gabriel knew or should have known of its claim for at least one trade secret on or before January 20, 2005.[4] In its improperly filed Fifth Amended Complaint (Dkt. 72-2)[5], Gabriel alleged that "at various times during the co-development period in 1999 to 2001, William Clise, the Chief Technology Officer of Locate, and other Locate employees inquired into the patentability of various innovations conceived, collaborated, or otherwise developed as part of the co-development agreement between Locate and SnapTrack. In response to Locate's inquiries…Locate employees were told that the innovations had already been disclosed in patents owned by SnapTrack." (Dkt. 72-2, ¶ 160.) Thus, as early as 1999 Locate allegedly believed that SnapTrack was filing patent applications for the "innovations" that Gabriel now contends belonged to Locate. Consequently, Gabriel's own pleadings allege that Locate had "reason to suspect the factual basis" for its misappropriation of trade secrets claim in 1999, *nine years* before Gabriel filed suit. *Fox*, 35 Cal. 4th at 807. Thus, the statute began running as early as January 1, 1999, and the three-year statute ran on December 31, 2004 at the

---

[4] Qualcomm and Gabriel entered into a series of agreements that tolled the statute of limitations period from November 30, 2007 to September 1, 2008. The running of all applicable statutes of limitation continued on September 2, 2008. (Kyle Decl. ¶ 33, Ex. 28.) Thus, the limitations period was tolled for a period of 9 months and 1 day before it resumed. It ran for another 52 days until the lawsuit was filed. The January 20, 2005 statute of limitations trigger date, takes into account that 2008 was a leap year (366 days) and the tolling period from November 30, 2007 to September 1, 2008.

[5] Although the Court struck the Fifth Amended Complaint, it is still a matter of record because Gabriel attached that pleading as an exhibit to its motion for reconsideration.

COOLEY LLP
ATTORNEYS AT LAW

11.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR

latest.

Similarly, to the extent that Gabriel's breach of contract claim is based on the misappropriation allegations, the claim is also time-barred. *See, e.g., Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 527 (N.D. Cal. 2000) (finding that statute of limitations begins running on all claims relying upon allegations supporting misappropriation claim at the same time). The statute of limitations for breach of a written contract is four years. Cal. Code Civ. Proc. § 337(1). The statute of limitations began running in 1999, and ran on December 31, 2005 at the latest, thus the four year statute of limitations similarly bars any contract claim predicated on Gabriel's claims for misappropriation of trade secrets. (*See* FAC, ¶ 134.)

### C. Discretionary Factors Justify Ordering A Bond.

Finally, the *Simulnet* discretionary factors favor granting Defendants' motion for a bond. *See Simulnet*, 37 F.3d at 576.

#### 1. Defendants' Probability of Success and the Purpose and Background of the Lawsuit Favor Granting the Motion.

Gabriel's conduct in connection with this lawsuit amply demonstrates why a bond is necessary. Gabriel has no operating business, and its sole source of "revenue" has been convincing "investors" to buy shares in this lawsuit. Even that source of revenue has dried up—Gabriel has already allocated 95% of the anticipated proceeds from this case to existing investors. (*See* Tingo Letter, Kyle Decl., Ex. 8 at 2.) The desperate straits into which this company has placed itself is exactly why a bond is necessary to protect the Defendants' interests. Should Defendants obtain a judgment, their prospects for recovering costs are slim indeed, as Gabriel has not only continually squandered any money it does have, but also has repeatedly "shopped" the lawsuit to raise cash and the well is drying-up. (*See* Tingo Letter, Kyle Decl., Ex. 8 at 2; Form 8-K filed March 26, 2010, Kyle Decl., Ex. 9.)

#### 2. The Proposed Security is Reasonable.

Defendants' proposed security of $2,900,000 is reasonable, particularly in light of the $1 billion Gabriel seeks, the breadth of its suit, its procedural gaffes, and its continued failure, after almost 20 months of litigation, to provide Defendants with the basis of its suit. The proposed

COOLEY LLP
ATTORNEYS AT LAW

12.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR

security is also less than typical fees and costs in such cases. The American Intellectual Property Law Association has found that the average cost through trial of a trade secret misappropriation case where more than $25 million is at stake is $5,967,000 in San Francisco[6], and approximately $3,500,000 country-wide. (*See* AIPLA, Report of the Economic Survey (2009), at 32, I-143, Kyle, Decl. ¶ 37, Ex. 31.)

The scope and complexity of this lawsuit justifies the proposed security. Gabriel has identified 24 witnesses, all of whom will be deposed, given the nature of Plaintiffs' allegations and the fact that they seek in excess of $1 billion from Defendants. In addition, Gabriel makes claims regarding sixteen patents in the technical field of assisted GPS, to say nothing of the 92 related foreign patents and applications.

While Gabriel may try to assert an inability to pay the requested security, Gabriel's prior public statements demonstrate that it has already raised large sums of money—using this lawsuit to secure the cooperation of litigation speculators. At the same time, Gabriel is thinly capitalized. Thus, while Gabriel should presently be able post the requested bond, it may not be able to pay Defendants' costs at the conclusion of this litigation.

The underlying purpose of Section 1030 supports Defendants' position. Section 1030 "acts to prevent out-of-state residents from filing frivolous lawsuits against California residents." *Alshafie v. Lallande*, 171 Cal. App. 4th 421, 428 (2009) (quoting *Yao v. Super. Ct.*, 104 Cal. App. 4th 327, 331 (2002)). Requiring a bond will force Gabriel to provide monetary assurance that, in the likely event that Defendants prevail, they will not be left without recourse or remedy in terms of the costs incurred.

### D. Defendants' Costs.

Defendants' are entitled to their costs as follows[7]:

| ITEMS TAXABLE AS COSTS: | ESTIMATED AMOUNT |
|---|---|
| 1. Clerk's filing fees | |
| 2. Fees for service of process and for service | $10,000 |

---

[6] Numbers for Los Angeles and San Diego are not available in the AIPLA survey.

[7] The present cost estimate is a conservative estimate of Defendants' costs in light of the breadth of Plaintiffs' claims.

COOLEY LLP
ATTORNEYS AT LAW

13.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR

| ITEMS TAXABLE AS COSTS: | ESTIMATED AMOUNT |
|---|---|
| of subpoenas (third party subpoenas – at least 26 third party document subpoenas; at least 18 third party deposition subpoenas) | |
| 3. Fees for reporter's transcripts (original, one copy, matters occurring before/during/after trial | $4,000 |
| 5. Costs incurred with taking oral depositions, including (Plaintiffs name 24 witnesses; we name 19 witnesses; also assume at least 1 technical expert. | |
|     a. Original deposition, one copy (including videotaped deposition) (Business Litigation: $ 3,325.00 Technical/Expert: $3,415.00) | $97,180 |
|     b. Reasonable fees of reporter/notary/transcriber of deposition (including travel and subsistence). | included above |
|     c. Witness fees, taxable at the same rate as for attendance at trial (120 hours of deposition time each party) (assumes 24 depositions) | $960 |
| 6. Witness fees | |
|     a. Attendance fees of $40/day | $1600 |
|     b. Mileage for transportation to and from the Court at the prevailing rate ($.50/mile) (witnesses inside the district) | $100 |
|     c. Transportation expenses based on most direct route for witnesses outside the district | $20,000 |
|     d. Per diem, per day at the prevailing rate ($218/day – San Diego) | $8720 |
| 7. Fees paid to interpreters/translators: salaries, fees, expenses, costs of interpreter; fees for translation of documents received in evidence (92 foreign patents, average cost of $.24/word to translate foreign documents – at least 10,000 words to translate/patent) | $220,800 |
| 8. Cost of patent file wrappers and prior art patents (taxable at rate charged by the patent office). | $6448 |
| 9. Document preparation costs including: | |

ATTORNEYS AT LAW

14.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR

| ITEMS TAXABLE AS COSTS: | ESTIMATED AMOUNT |
|---|---|
| a. Paper copies provided to either the Court or opposing counsel either by court order, rule or statute (.20/page) | $10,000 |
| b. Paper copies of documents used as court exhibits, either admitted into evidence or attached to a motion (.20/page) | $18,000 |
| c. Costs of collecting, searching, identifying, managing and producing electronic documents in response to Gabriel's discovery demands | $1,500,000 |
| 10. Costs of charts, photographs, and other exhibits, including: | $50,000 |
| a. Costs of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits (to the extent reasonable necessary to assist jury in understanding issues at trial) | |
| b. Cost of photographs 16" x 20" or less admitted into evidence. | |
| c. Cost of preparing material for electronic retrieval and demonstration (as relates to admitted evidence). | |
| **Total** | **$1,947,808** |

### E.  Defendants' Fees.

Defendants are also entitled to their attorney's fees under the California Uniform Trade Secrets Act (CUTSA) and the Patent Act because Gabriel's action is vexatious, unjustified and brought in bad faith.  *See* Cal. Civ. Code § 3426.4; 35 U.S.C. § 285; *Brooks Furniture Mfg. v. Dutailier Intern., Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (noting that a "case may be deemed exceptional [under the Patent Act] when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, *vexatious or unjustified litigation*, conduct that violates Fed. R. Civ. P. 11, or like infractions.").

Defendants conservatively estimate that their attorney's fees in the present action will exceed $5,000,000 and so request security of $1,000,000 for attorney's fees in addition to their estimated costs.

COOLEY LLP
ATTORNEYS AT LAW

15.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR

### III. CONCLUSION.

For the foregoing reasons the Court should grant Defendants' motion for a bond in the sum of $2,900,000.

Dated: July 2, 2010          COOLEY LLP

*/s/ John S. Kyle*
STEVEN M. STRAUSS (sms@cooley.com)
JOHN S. KYLE (jkyle@cooley.com)
Attorneys for Defendants

1184513/SF

COOLEY LLP
ATTORNEYS AT LAW

16.

MEMO. OF POINTS AND AUTHORITIES ISO
MOTION FOR BOND
08-CV-1992 MMA POR