COOLEY LLP
STEVEN M. STRAUSS (99153) (sms@cooley.com)
JOHN S. KYLE (199196) (jkyle@cooley.com)
4401 Eastgate Mall
San Diego, California  92121
Telephone: (858)      550-6000
Facsimile: (858)      550-6420

TIMOTHY S. TETER (171451) (teterts@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone: (650)      843-5000
Facsimile: (650)      857-0663

Attorneys for Defendants
QUALCOMM INCORPORATED, SNAPTRACK, INC. and
NORMAN KRASNER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| GABRIEL TECHNOLOGIES CORPORATION and TRACE TECHNOLOGIES, LLC,<br><br>       Plaintiffs,<br><br>       v.<br><br>QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN KRASNER,<br><br>       Defendants. | Case No.  08-cv-1992 MMA POR<br><br>**DEFENDANTS QUALCOMM, INCORPORATED, SNAPTRACK, INC., AND NORMAN KRASNER'S REDACTED OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES**<br><br>Date: February        7, 2011<br>Time: 10:00        a.m.<br>Judge:        Hon. Louisa S. Porter<br><br>`REDACTED PUBLIC VERSION` |

# Table of Contents

                                                                                                    **Page**

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 2

III.    LEGAL STANDARDS FOR SUFFICIENTLY IDENTIFYING TRADE
        SECRETS ...................................................................................................................... 4

        A.      Section 2019.210 Serves Numerous Important Purposes ...................................... 4

        B.      Guidelines for a Reasonably Particular Trade Secret Identification ...................... 5

IV.     PLAINTIFFS' TRADE SECRET IDENTIFICATION IS INADEQUATE ..................... 8

        A.      Plaintiffs' Trade Secrets are a Moving Target ....................................................... 8

        B.      Plaintiffs' Purported Trade Secrets Are Not Reasonably Particular ..................... 10

V.      SECTION 2019.210 APPLIES IN FEDERAL COURT ................................................. 21

        A.      The Court Already Ruled that Section 2019.210 Applies ...................................... 21

        B.      The Erie Doctrine Requires the Court to Apply Section 2019.210 ...................... 22

                1.      Section 2019.210 Does Not Conflict With Rule 26 ............................... 22

                2.      Section 2019.210 is a Substantive State Law ....................................... 23

                3.      Failure to Apply Section 2019.210 Would Encourage Forum
                        Shopping ............................................................................................. 24

VI.     CONCLUSION ............................................................................................................. 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

*Advanced Modular Sputtering, Inc. v. Superior Court,*
    132 Cal.App.4th 826 (Cal. Ct. App. 2005) ......................................................... 4, 5

5

6

*Burlington Northern R.R. Co. v. Woods,*
    480 U.S. 1 (1987) ........................................................................................................ 22

7

*Byrd v. Ridge Rural Electrical Cooperative, Inc.,*
    356 U.S. 525 (1958) ................................................................................................... 23

8

9

*Computer Econ., Inc. v. Gartner Group, Inc.,*
    50 F. Supp. 2d 980 (S.D. Cal. 1999) .................................................................. passim

10

*Erie R.R. v. Tompkins,*
    304 U.S. 64 (1938) .................................................................. 22, 23, 24, 25

11

12

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.,*
    No. S-06-0533, 2007 U.S. Dist. LEXIS 8870 ....................................................... 22

13

14

*Gasperini v. Center for Humanities, Inc.,*
    518 U.S. 415 (1996) ................................................................................................... 24

15

16

*Hanna v. Plummer,*
    380 U.S. 460 ..................................................................................................... 23, 24

17

*Hart v. Massanari,*
    266 F.3d 1155 (9th Cir. 2001) .............................................................................. 21

18

19

*Hilderman v. Enea Teksci, Inc.,*
    No. 05cv1049, 2010 U.S. Dist. LEXIS 1527 (S.D. Cal. Jan. 8, 2010) ............ 21, 23

20

*Imax Corp. v. Cinema Tech., Inc.,*
    152 F.3d 1161 (9th Cir. 1998) .................................................................................. 5

21

22

*Myrio v. Minerva Network Inc.,*
    No. 00-20996. 2001 U.S. Dist. LEXIS 10461 (N.D. Cal. 2001) ................. 6, 11, 20

23

24

*Perlan Therapeutics, Inc. v. Superior Court,*
    178 Cal.App.4th 1333 (Cal. Ct. App. 2009) ..................................................... passim

25

*S. A. Healy Co. v. Milwaukee Metro. Sewerage Dist.,*
    60 F.3d 305 (7th Cir. 1995) .................................................................................... 23

26

27

*Silvaco Data Systems v. Intel Corp.,*
    184 Cal.App.4th 210 (Cal. Ct. App. 2010) ........................................... 6, 7, 8, 10

28

COOLEY LLP
ATTORNEYS AT LAW

ii.

OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
08-CV-1992 MMA POR

*Woods v. Holy Cross Hospital*,
    591 F.2d 1164 (5th Cir. 1979) ............................................................................ 24

**STATUTES**

California Code of Civil Procedure
    Section 2019.210 ................................................................................ passim
    Section 3426.5 ............................................................................................... 4

**OTHER AUTHORITIES**

Rule 26 of the Federal Rules of Civil Procedure ................................................... 22, 23

Graves & Range, *Identification of Trade Secret Claims in Litigation: Solutions for a
    Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68 (2006) ........................................ passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COOLEY LLP
ATTORNEYS AT LAW

iii.

**OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
08-CV-1992 MMA POR**

## I.   INTRODUCTION

Plaintiffs filed this lawyer-manufactured case over two years ago yet remain unable to identify any trade secrets with the particularity California Code of Civil Procedure Section 2019.210 requires, as this Court ordered them to in March 2010. Plaintiffs' *fifth attempt* to identify viable trade secrets still comes up short. It describes general characteristics of Plaintiffs' purported trade secrets but fails to particularly identify the technology, software, software architecture, hardware architecture, algorithms, implementations, and methods in sufficient detail to permit the Court to properly frame discovery and to permit Defendants to prepare their defense.

Moreover, Plaintiffs had to explain the "specifics" of their alleged trade secrets with nearly 100 pages of expert declaration testimony and over 300 pages of technical documents.[1] This is *prima facie* evidence that the Trade Secret Identification does not comply with Section 2019.210. Plaintiffs admit:

> The numbered trade secrets … reflect the aspects of the Locate system that were integral to establishing the system and the interrelationship of its various aspects. … To support this showing, four experts in the fields that are relevant to the trade secrets … describe in detail the specifics of the trade secrets and their implementation in the Locate system.

(Plaintiffs' Revised Memorandum of Points & Authorities, p. 8.) To identify a trade secret Plaintiffs must disclose much more than vague "aspects" of a system—they must give specifics of how the system works, which they admit they have not done.

On January 5, just days before filing this motion, Plaintiffs' latest lawyers created an entirely-new fifth Trade Secret Identification. That Identification is a transparent attempt to re-manufacture the case. Indeed, this recently-conjured Trade Secret Identification seems to accuse patents and a Qualcomm product (inGeo) that are not part of the Fourth Amended Complaint. It is unsurprising that this fifth Trade Secret Identification is entirely different from Plaintiffs' first

---

[1] Amazingly, some of the technical documents on which Plaintiffs' rely as "evidence" of their trade secrets are proprietary documents of third parties or, most astonishingly, of Defendant Snaptrack, Inc. itself. (See Statement of Work for Bainbridge, attached as Exhibit 15 to the Declaration of Peter A. Sullivan ("Sullivan Dec."); System Overview of Network Assisted GPS Over Reflex, Sullivan Dec., Ex. 16; SnapTrack, Inc. Enhanced GPS Technology White Paper, Sullivan Dec., Ex. 17.)

Trade Secret Identification and bears little resemblance to even Plaintiffs' fourth Trade Secret Identification. The trade secrets keep changing because Plaintiffs are making this case up as they go along. They are not making allegations grounded in fact. Instead, they are changing their allegations to suit their "evidence," which is exactly what Section 2019.210 is designed to prevent. Simply put, Plaintiffs are having difficulty articulating their purported trade secrets because they have none.

Plaintiffs' alleged trade secrets have been—and will remain—a moving target until they designate them with the detail Section 2019.210 requires, as this Court ordered them to do ten months ago.[2] Indeed, Plaintiffs admit that they intend to continue changing their alleged trade secrets as discovery progresses; they attempt to reserve the unfettered right to amend their Trade Secret Identification. Such a reservation would stand Section 2019.210 on its head and would allow Plaintiffs to continue doing what they have been doing thus far—fashioning their trade secrets to fit the "evidence" rather than articulating well-founded trade secrets and seeking discovery of evidence to support the alleged misappropriation of those trade secrets. Without guidance from the Court, Plaintiffs' Trade Secret Identification will remain amorphous, malleable, vague, and shifting.

Plaintiffs' desperate argument that Section 2019.210 does not apply in this Court is also meritless. Section 2019.210 applies here as a matter of law. The Court recognized as much in the Scheduling Order. Because Plaintiffs failed to comply with that Order by identifying their trade secrets with reasonable particularity, the Court should deny Plaintiffs' motion in its entirety.

**II.   BACKGROUND**

On October 24, 2008, Plaintiffs filed their original complaint. Since then, Plaintiffs have amended their complaint four times. Plaintiffs filed their Fourth Amended Complaint on

---

[2] Plaintiffs' motion only addresses Defendants' objections based on California Code of Civil Procedure Section 2019.210 ("Section 2019.210"). Thus, Defendants' opposition is limited to addressing only Section 2019.210. Defendants do not waive all other objections to Plaintiffs' discovery requests (see Exhibit 12 to the Declaration of John S. Kyle) and reserve the right to refuse to produce discovery based on those objections. Defendants are also unclear as to the specific relief Plaintiffs seek. Plaintiffs' proposed order simply requests that Defendants "provide discovery." Even if the Court granted Plaintiffs' motion, the Court should not compel Defendants to provide any discovery as Plaintiffs' motion does not address Defendants' other objections.

January 11, 2010.  On March 30, 2010,   the Court entered a Schedulin g Order.  (Declaration of John Kyle ("Kyle Dec."), Ex. 1.)  That Scheduling Order provides:

> 4.    In acco rdance with Section 2019.  210 of the California Code of Civil Procedure, Plaintiffs shall iden   tify any alleg ed trade secrets with *reasonable particularity* on or before **May 1, 2010** .  See Com puter Econ., Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980 (S.D. Cal.    1999)(holding that Section 2019.210 applies to cases in federal court).

(Italics added.)

On April 30, 2010, Plaintiffs served their initia l Trade Secret Identif ication.  (Kyle Dec., Ex. 2.)  Plaintiffs' initial Tr ade Secret Identifica tion was inadequate.  Thus, on M  ay 24, 2010, after several meet and confer efforts, Plaintiffs served their Amended Trade Secret Identification. (Kyle Dec., Ex. 3.)  Plaintiffs' second attempt at a sufficient trade secret identification also failed. Accordingly, on June 22, 2010, Plaintiffs served a  third Trade Secret Iden tification.  (Kyle Dec., Ex. 4.)  Once again, Plaintiffs' third Trade Secret Identification did not satisfy the requirements of Section 2019.210.  Thus, on August 2, 2010,   Plaintiffs' served their "Second" [3] Amended Trade Secret Identification.  (Kyle Dec., Ex. 5.)

On August 24, 2010, Defendants sent Plaintiffs a    letter objecting to  Plaintiffs' "Second" Amended Trade Secret Identification on various grounds . (Kyle Dec., Ex. 6.)  Plaintiffs failed to further amend their trade secret  identification.  On October 12,  2010, the Court orde red a stay on all discovery.  (Dkt. 118.)  After  vacating the discovery stay, the C ourt held a status conference on December 21, 2010, during which Plaintiffs advised Defendants and the Court that they would file a m otion to com pel regarding their trade secr et identification.  (Kyle  Dec., ¶ 8.)  Before the conference, Plaintiffs advised Defen dants that  they would be m aking small modifications to the fourth Trade Secret Identification.  ( *Id.*)  The Court ordered Plaintiffs  to f ile their motion on or before January 10, 2011.  (Dkt. 122.)  On January 5, 2011—three busines s days before filing this motion—Plaintiffs served their fifth Trade Secret   Identification.  (Kyle Dec., Ex. 7.)  The fifth Trade Secret Identification is entirely different fro m the first and bears little resem blance to even the fourth Trade Secret Identification.

---

[3] In actuality, this was Plaintiffs' fourth trade secret identification.

III.   **LEGAL STANDARDS FOR SUFFICIENTLY IDENTIFYING TRADE SECRETS**

California Code of Civil Procedure Section 2019.210 provides:

In any action alleging the m isappropriation of a trade secret under the Unifor m Trade Secrets Act (Title 5 (commencing with Section 3426) of Part 1 of Division 4 of the Civil Code), before comm encing discovery relating to the trad e secret, the party alleging the m isappropriation shall id entify the trade secret with reasonable particularity subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

A.   **Section 2019.210 Serves Numerous Important Purposes**

The purpose of Section 2019.210 is to (a) dissua de the filing of mer itless trade secret complaints, (b) prevent the plaintiff from using di scovery to obtain the defendant's trade secrets, (c) assist the court in fram ing the proper scope of discovery, and (d) enable the defendant to for m "complete and well-reasoned defenses."   *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal.App.4th 1333, 1343 (Cal. Ct. App. 2009) (hereinafter, "*Perlan*") (quoting *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal.App.4th 826, 833-834 (Cal. Ct. App. 2005)); *see Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999). A leading a rticle on the issue of tra de secre t identif ication sets f orth twelve rea sons why a reasonably particular trade secret identification is necessary.  See Graves & Range, *Identification of Trade Secret Claims in Litigation: Solutions for a Ubiquitous Dispute*, 5 Nw. J. Tech. & Intell. Prop. 68, 73-75 (2006) (hereinafter,  "Graves & Range").  Among thos e reasons are: (a) ensuring that allegations of trade secret  misappropriation are m ade in good faith, (b) preventing plaintiffs from avoiding the statute of lim itations,  (c) setting the proper bounds for discovery, (d) "prevent[ing] a plaintiff from  making overbroad secrecy claims encompassing vast c ategories of information," and (e) preventing a plaintiff from  unilaterally a mending its claim s as the lawsuit progresses.  *Id.*

For these reasons, Section 2019.210 requires a pl aintiff alleging misappropriation of trade secrets to identify its trade secret s with "reasonable particularity."  "The degree of 'particularity' that is 'reas onable' will differ,  depending on the alleged  trade s ecrets at issue in  each case. Where, as here, the alleged trade  secrets consist of increm ental variations on, or ad vances in the state of the art in a  **highly specialized technical field, a  more exacting level o f particularity**

1   **may be required** to distinguish the alleged trade secret s from matters already known to persons

2   skilled in th at f ield." *Advanced Modular Sputtering, Inc.* , 132 Cal.App.4th at 836 (em phasis

3   added). T his case concerns the "highly speci alized technical filed" of Assisted Global

4   Positioning System technology (aG PS), which is the techn ology enab ling cellular handsets to

5   function as position loc ation dev ices. Accordin gly, the Co urt should r equire "a m ore exac ting

6   level of particularity" as discussed below.

7       **B.      Guidelines for a Reasonably Particular Trade Secret Identification**

8       Several c ases are ins tructive on th e level of particularity required in a highly technical

9   field like aGPS. In *Imax Corp. v. Cinema Tech., Inc.* , 152 F.3d 1161 (9th Cir. 1998), Im ax's

10  alleged trade secret was a "rolling loop" film projector. The district court held that Imax's trade

11  secret iden tification was insuffici ent because it failed to d isclose the "p recise dim ensions an d

12  tolerances" of the proj ector's com ponents. *Id*. at 1166. On appeal, the Ninth C ircuit agreed,

13  reasoning that the trier o f fact could not determ ine what "dim ensions and tolerances" were trade

14  secrets without knowing precisely wh at they are and the defendant could not prepare its defenses

15  without knowing precisely which "dim ensions and tolerances" it allege dly misappropriated. *Id*.

16  at 1167.

17      In *Perlan, supra* , the trade secrets at issue inv olved "protein-based the rapeutics for the

18  treatment of diseases…" 178 Cal.App.4th at 1337. The defendants m oved for a protective order

19  to preven t p laintiff from conducting discovery un til p laintiff provided a sufficient trade s ecret

20  identification. The trial court granted defenda nts' m otion finding plaintiff's trade secret

21  identification insufficient under Section 2019.210. *Id*. at 1341-1342. In reviewing plaintiff's

22  trade secret identification, the appellate court no ted that "[d]espite the highly technical language

23  used, it is apparent that this description does not provide **specific identifications of the peptides**

24  **or reagents used** in the process. Further, the description ref erences approximately 50 additional

25  documents relating to the [trade secrets]." *Id*. at 1339 (emphasis added). The appellate court

26  affirmed and provided instructions to trade secret plaintiffs, stating that plaintiff was "not entitled

27  to include broad, 'catch-all' language as a tactic to preserve an unrestricted, unila teral right to

28  subsequently amend its trade secret statement. … Nor is [plaintiff] entitled to hide its trade secrets

1   in 'plain sight' by including surplusage and voluminous attachments in its trade secret statement."

2   *Id.* at 1350.  Finally, the *Perlan* court quoted an order from a federal district court case regarding

3   a plaintiff's trade secret identification—*Myrio v. Minerva Network Inc.*, No. 00-20996. 2001 U.S.

4   Dist. LEXIS 10461 (N.D. Cal. 2001).  *Perlan*, 178 Cal.App.4th at 1352, fn. 14.

5          *Myrio* is a court order on a defendant's motion to compel a more particular identification

6   of trade secrets.  The order provides no details on the trade secret at issue.  *Id.* at *1-3.  However,

7   the order does provide a succinct standard for plaintiffs to follow when identifying trade secrets:

8          If Plaintiff contends that a trade secret consists of a specific combination of items,
           it shall so state and concisely describe the combination.  If Plaintiff contends that
9          its specific use of an otherwise publicly known item constitutes its secret, it shall
           so state and concisely describe the use.   All trade secrets shall be described in
10         narrative form, rather than by cross-reference to other trade secrets or documents.
           If Plaintiff references a document as setting forth one or more trade secrets, it shall
11         specify precisely which portions of the document describes the trade secret(s).

12  *Id.* at *2-3.

13         Similarly, in *Silvaco Data Systems v. Intel Corp.*, 184 Cal.App.4th 210 (Cal. Ct. App.

14  2010), plaintiff alleged that Intel misappropriated its software.  Plaintiff's 2019.210 "designation

15  identified trade secrets in six categories, as further detailed in two attached exhibits.  The first five

16  categories, and the first exhibit, referred only to source code."  *Id.* at 221.  The sixth category was

17  described as follows:

18         The sixth category of claimed trade secrets was described as "the … trade secrets
           identified in Exhibit B …  *and* the source code implementing such trade secrets."
19         … [T]he exhibit does not designate       *information* as such but rather describes
           various features, functions, and characteristics of the design and operation of
20         Silvaco's software products .  Thus the first of    the 24 listed subcategories is a
           "proprietary *method*" of carrying out a function apparently found in competing
21         programs as well. … This asserted secret is also described as "a methodology for"
           implementing that function, apparently in an unusual way, which "contributes [to]
22         performance and accuracy improvements."  This "trade secret methodology" is
           "implement[ed]" by two named "modules," also described as "functions," which
23         "represent part" of the critical "algorithm."  Three "unique features" of this
           method are listed: The "[i]ntegration" of   two other operations; a "[m]ethod" of
24         "changing and controlling" a variable, which "affects the performance of the
           simulation;" and a mode of "implementation" that produces "[e]fficiency."
25
           Silvaco's sixth category thus appears to attempt to characterize various aspects of
26         the *underlying design* as trade secrets.  This  of course contravenes the principles
           discussed above.  The design may constitute the *basis* for a trade secret, such that
27         *information concerning it*   could be actionably misappropriated; but it is the
           information – not the design itself – that   must form the basis for the cause of
28         action.  And while the finished (compiled) product might have distinctive

characteristics resulting from the design – such as improved performance – they cannot constitute trade secrets because they are not secret, but are evident to anyone running the finished program.

*Id.* at 221-222 (italics in original).

Graves & Range also provide several rules of thumb for courts to consider when evaluating a plaintiff's trade secret identification: (a) courts should not allow plaintiffs to list "only general, high-level categories or technical terms;" (b) an identification with phrases suggesting it is incomplete, such as "including," is *de facto* insufficient; (c) trade secret plaintiffs should not be allowed to point to documents as a substitute for a detailed identification; and (d) courts should require plaintiffs to identify alleged "combination trade secrets" just as they must identify other trade secrets.[4]   Graves & Range, 5 Nw. J. Tech. & Intell. Prop. at 91-93.  Finally, the authors conclude with guidelines for trade secret identifications in specific circumstances:

- **Customer Lists and Business Information:**  It should be clear that in cases involving simpler types of information such as customer lists, there are no choices other than defining exactly what the alleged secret is or merely listing generic categories.  When a plaintiff claims trade secrets in … business or marketing plans, it should be easy to tell the defendant exactly what the alleged secrets are – the plaintiff can simply name the supposedly secret customers, prices, ideas, and the like.

* * *

- **Software Code:**  … Third, algorithms or formulas existing within code should be identified with exactitude just like mathematical information.  Fourth, in the case of algorithms, the plaintiff should identify the precise combination of functions which comprise the algorithm s at issue.  Similarly, the higher-level architecture of the software should be identified by detailing the combination of the specific algorithms employed.  Fifth, where secret data structures are alleged, the nature of those structures should be defined with particularity.

- **Mechanical Devices:**  Trade secrets might be embodied in mechanical devices that include several parts unknown to the public or a secret combination of publicly known parts.  A plaintiff alleging trade secret claims about a secret part should identify that part in detail.  If the plaintiff alleges that the trade secret is a combination of publicly known parts,  the plaintiff should identify that combination, and the court should limit the plaintiff's ability to modify the alleged combination.

---

[4] "A 'combination trade secret' is a multi-element claim that, when valid, ties non-secret items of information together in a unique manner to form a trade secret.  The concept is dangerous, however, because trade secret plaintiffs often string together non-secret items that have no functional interrelationship to avoid a defendant's showing that the individual items are non-secret.  Attorneys also use the 'combination' concept to alter claims, and to create more sets of alleged intellectual property than the plaintiff actually thought about or linked together."  *Id.* at 77.

*Id.* at 94-96.

With these principles in mind, it is clear that Plaintiffs' fifth attempt to identify any actionable trade secrets falls far short.

## IV. PLAINTIFFS' TRADE SECRET IDENTIFICATION IS INADEQUATE

### A. Plaintiffs' Trade Secrets are a Moving Target

As a threshold matter, it is apparent from the face of Plaintiffs' motion that none of their trade secrets are identified with reasonable particularity. Indeed, Plaintiffs admit that their Trade Secret Identification only "reflects the [integral] aspects of the Locate system" and claim their experts' declarations describe "the specifics of the trade secrets." (Plaintiffs' Revised Memorandum of Points and Authorities, p. 8.) Moreover, the alleged "specifics" are set forth in nearly 100 pages of declaration testimony from four expert witnesses who needed to review numerous documents and interview former Locate employees in a futile attempt to explain Plaintiffs' trade secrets. (See Declaration of Dr. David B. Garlan, ¶ 21; Declaration of Dr. Nenad Medvidovic, ¶ 21; Declaration of Dr. Paul S. Min, ¶ 23; Declaration of Dr. Anant Sahai, ¶ 18; Sullivan Dec., Exs. 14-18.) Thus, Plaintiffs admit the fifth Trade Secret Identification does not comply with Section 2019.210.

Second, the ever-changing nature of Plaintiffs' trade secret identifications exemplifies how Plaintiffs intend to misuse the amorphous and malleable language in their fifth Trade Secret Identification. Plaintiffs' **fifth attempt** at identifying their trade secrets is remarkably different from all those before it. A redline comparing each of Plaintiffs' prior Trade Secret Identifications to their current Trade Secret Identification shows that their alleged "trade secrets" are a moving target. (Kyle Dec., Exs. 8-11.) Plaintiffs' shifting trade secrets confirm that Plaintiffs' claims were not well investigated in the first instance and that this case was filed in bad faith.[5] This is

---

[5] As the Court stated on page 22 of its Order Granting in Part and Denying in Part Defendants' Motion for Bond (Dkt. 110), "Defendants have presented significant, unrebutted evidence that Plaintiffs' lawsuit is likely unmeritorious, and brought in bad faith to salvage Gabriel." "[T]he Court is troubled by Plaintiffs' inability to draw any meaningful connection between Locate's technology and the allegedly misappropriated information found in more than 92 patents. The parties began working together approximately a decade ago, Plaintiffs assert they suspected wrongdoing in approximately 2007, and they have been investigating their claims for several years. By now, Plaintiffs should have more than mere allegations to support their theory."

1    one of the concerns Section    2019.210 is m eant to address.    *Computer Econ., Inc. v. Gartner*

2    *Group, Inc.*, 50 F. Supp. 2d 980, 985 (Section 2   019.210 "dissuades the filing of m eritless trade

3    secret complaints.")

4          A continuously changing trade secret designat ion also precludes the C ourt from  framing

5    the appropriate scope of discove   ry.  It is im   possible to know   whether Plaintiffs' discovery

6    requests fall within the scope of their claims when their claims constantly change and where they

7    admit they intend to cha nge them more still.  Th is is particularly troubling given the broad scope

8    of the docum ent requests Plaintiffs have served to  date.  For exam ple, Plaintiffs have requested

9    (a) all communications between D  efendants and  any other person regard ing SnapTrack; (b) all

10   documents concerning Defendants' assisted      GPS technology; (c) all docum    ents regarding

11   SnapTrack's patent portfolio; (d) all documents concerning SnapTrack's broadband networks; (e)

12   all docum ents concerning Defendants m ethod of  broadcasting acquisition  assistance data; and

13   numerous other overly broad docum ent requests.  (Sullivan Dec., Ex. 2,  pp. 10-13.)  W ithout a

14   particularized trade secret    identification, the Court cannot    analyze whether these docum    ent

15   requests are within the permissible scope of discovery as delim ited by the trad e secrets Plaintiffs

16   articulate.

17         Third, Pla intiffs' Trade  Secret Ide  ntification  attempts to  rese rve Plaintif fs' rig ht to

18   unilaterally "supplem ent these designations as di scovery progresses."  (K yle Dec., Ex. 7, p. 1.)

19   Such tac tics are im proper.  *Perlan, supra*, 178 Cal.App.4th at 1350.  P  lainly Plaintiffs want to

20   review Defendants' docum ents th en further amend their Trade Secret Identification     to m irror

21   Defendants' technology.  That    is precisely what Section 2019.210 fo   rbids.  In fa ct, this has

22   already happened with publicly available inform  ation.  Pl aintiffs do not allege in their Fourth

23   Amended Com plaint th at th eir tra de sec rets ha d been incorporated   into  Qualcomm 's inGeo

24   product.  N ow, after searching Qualcomm 's website, Plaintiffs re-for mulated their T rade Secret

25   Identification in an attempt to implicate inGeo.  Similarly, Plaintiffs now attempt to equate Trade

26   Secrets 11 and 12 to Qualcomm Patent No. 7,570,958;   Trade Secret 9 to Qualcomm Patent No.

27   7,574,195; and Trade Secret 10 to Qualcomm Pa tent 7,747,258.  Plaintif fs do not mention these

28   patents anywhere in their Four   th Am ended Com plaint as part of  the  trad e se crets c laim or

1    otherwise.  Plaintiffs are obviously prospecting in defendants' publicly-available information and

2    fabricating claims accordingly.  Unless constrained, Plaintiffs will just further amend their Trade

3    Secret Identification to more closely implicate Defendants' technology as discovery progress.[6]

4           Finally, nearly all of Plaintiffs' purported trade secrets contain discussions of background

5    facts that do not articulate any part of the trade secret itself.  For example, Trade Secret No. 2

6    provides: "████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████"  Trade Secret No. 3 states: "██████

8    ████████████████████████████████████…"  Trade Secret No. 4 states: "█████████████

9    ████████████████████████████"  Trade Secret Nos. 5, 6, 7, 8, 9 and 11 contain similar

10   background factual statements.  These statements are not trade secrets at all.  The fact Plaintiffs

11   felt the need to include them further demonstrates the lack of specificity in their Trade Secret

12   Identification.

13          **B.      Plaintiffs' Purported Trade Secrets Are Not Reasonably Particular**

14          Plaintiffs fail to identify their twelve alleged trade secrets with particularity as the Court's

15   Scheduling Order and Section 2019.210 require.

16          <u>Trade Secret No. 1</u>:  ████████████████████████████████████████████

17   ██████████████████████████████████████████

18          This alleged trade secret appears to be either a "combination trade secret" or a type of

19   software and its architecture.  Similar to the trade secret identification in *Silvaco Data Systems,*

20   *supra*, this trade secret "describes various features, functions, and characteristics of the design

21   and operation" of Plaintiffs' central-server architecture, but does not set forth what the

22   architecture is.  184 Cal.App.4th at 221  Plaintiffs should "identify the precise combination of

23   functions which comprise the algorithms at issue.  Similarly, the higher-level architecture …

24   should be identified by **detailing the combination of the specific algorithms employed** ….

25   [W]here secret data structures are alleged, the nature of those structures should be defined with

26   _____

27   [6] "[I]t is important to note that the plaintiff's identification of its own alleged intellectual property
does not depend on the defendant's documents, because the preliminary question is whether the
plaintiff has a trade secret, which must be answered before determining whether the defendant
28   used the secret in its product or services."  Graves & Range, 5 Nw. J. Tech. & Intell. Prop. at 73.

1    particularity." Graves & Range, 5 Nw. J.   Tech. & Intell. Prop. at 95 (em   phasis added); *see*

2    *Myrio, supra*, No. 00-20996. 2001 U.S. Dist. LEXIS 10461 at *2-3.

3          The one-sentence trade s ecret itself contains overly broad, malleable language that can be

4    altered to fit almost any computer or computer program.  Plaintiffs do not specify what "design,"

5    "implementation," or "architecture" they created   or how that architecture " ███████████ "

6    and what " ███████████ " it was m anaging.  Additionally, Plaintiffs fail to describ e how

7    their " ████████████████████████ " differs fr om other system s that

8    ██████████████████████ Such de tail is critical since there are possibly an

9    infinite number of ways to design and im      plement an "architecture" to  ████████████

10   ████████ (Declaration of Dr. William R. Michalson ("Michalson Dec."), ¶ 3.)

11         Moreover, the one-paragraph "elaboration" of Trade Secret No. 1 describes: (a) "a central-

12   server architecture" but fails to describe what that architecture is—i.e. the specific combination of

13   hardware and software—or how it " ████████████████████ " leaving the

14   architecture open to infinite pos sibilities; (b) a  ██████████ without describing the source code

15   in the  ██████ or how the  ██████ was novel or ev en different from  the  "architecture;" (c) the

16   architecture being " ████████████████████████████ ," but fails

17   to actually set forth the design;    (d) the "system " being  ████████████████████

18   ████████████████████████ " but doe s not detail the

19   system design or what  ████████████████ " even m  eans; and (e) a

20   "paradigm" with no explanation of what the paradigm is. (Michalson Dec., ¶¶ 3-4.)  Such "high-

21   level categories or technical term      s" are a    textbook exam ple of a deficient trade secret

22   identification.  Graves & Range, 5  Nw. J. Tech. & Intell. P rop. at 91.  Plaintiffs simply puff-up

23   technical jargon to make the Court think  a trade secret exists.  None does.

24         Also, the last sentence of Trade Secret No. 1 says the architecture was " ████████████

25   ████████ "  However, Pl aintiffs fail to say by whom   it  was depicted or where it was

26   depicted.  Based on the docum ents attached to Plai ntiffs' motion, it appears that the architecture

27   may have been depicted by others, such as      SnapTrack, Glenayre or Cadence, which would

28   demonstrate that it is not a Locat  e trade secret at all. (Sulli  van Dec., Exs. 15-17.)  Moreover ,

1   Plaintiffs' experts refer to othe r volum inous docum ents to explai n the trade secret without any

2   reference to precise pages or item s in those docu ments that Plaintiffs claim are trade secrets (see

3   Declaration of Dr. Paul S. Min,  ¶¶ 43-49, 59-63; Declaration of  Dr. David B. Garlan, ¶¶ 46-47).

4   Incorporating docum ents by refere nce fails to  particularly identify trade secrets.     Graves &

5   Range, 5 Nw. J. Tech. & Intell. Prop. at 92.

6   <u>Trade Secret No. 2</u> : ████████████████████████████████████

7   ████████████████████████████████

8       This trade secret does not describe with any detail how Locate "████████████████"

9   what makes up the "████████" or what "████" are within the "████." This appears to be

10   some type of algorithm or softwa     re ar chitecture, but P laintiffs f ail to identif y the prec ise

11   algorithms or com binations of algorithms that go into "████████████" or ████████████

12   the ████████████" There are numerous ways to ████████████ In fact, collecting bits

13   of data and packaging them together before tran smission was well-known in the industry prior to

14   1999. (Michalson Dec., ¶ 6.) A dditionally, ████████████████████████████

15   ████████████, was well known in the prior art. (*Id.*) Indeed, it is referred to in the SnapTrack

16   Enhanced GPS Technology W  hite Paper, dated   January 1999. (Sulliv  an Dec., Ex. 17, p. 3

17   (referring to "████████████████████")). Thus, Plaintiffs' failure to provide

18   specifics makes it impossible to distinguish Tr ade Secret No. 2 from technology that was known

19   in the industry, including SnapTrack's.

20       The elaboration of Trade Secret No. 2 al    so describes how ████████████████

21   ████████████" but does not disclose  what ████ those w ere or how  they were

22   determined. The elaboration also says that    the ████████████████████

23   ████████" but does not detail those ████ It also describes ████████████████"

24   and "████████████████" without sp ecifying the precise types  of ████ and

25   which ████████████ were sent. Again, such details are necessary to distinguish

26   Trade Secret No. 2 from prior art. Even worse, Trade Secret No. 2 states that "The Locate system

27   included a different and **possibly** even more ████████████…" Such open-ended language is

28

1   *prima facie* evidence of an insufficient trade secret identification.  *See Perlan*, 178 Cal.App.4th at

2   1350; Graves & Range, 5 Nw. J. Tech. & Intell. Prop. at 92.  (See also, Michalson Dec., ¶ 5.)

3        Plaintiffs' Trade Secret No. 2 also says that " ███████████████████████████

4   ████████████████████ "  Tellingly, Plaintiffs do not say Locate provided this information to

5   SnapTrack and do not identify any particular Locate employee who allegedly conceived of this

6   purported trade secret.  Furthermore, Dr. Sahai admits that one of SnapTrack's patent applications

7   at the time disclosed the idea of ████████████████ just not as an exclusive way to deal with

8   █████.  (Declaration of Dr. Anant Sahai, ¶ 74.)  From that admission alone, it is clear that

9   Plaintiffs identification of Trade Secret No. 2 does not separate it from what was known in the

10  industry.

11       <u>Trade Secret No. 3</u> : ████████████████████████████████████████████

12  ██████████████████████████████████████████████████████████████████████

13  ██████████

14       The vague, open-ended nature of Plaintiffs' Trade Secret No. 3 is apparent on its face.

15  The purported trade secret is " ████████████████████████ "  But Plaintiffs fail to say just

16  what that "████████" is or how it ████████████████.  (Michalson Dec., ¶ 7.)  Because SnapTrack

17  provided aGPS technology to Locate, it is critical for Plaintiffs to precisely describe the ████████

18  ████████████████████████████ in order to demonstrate that such ████████████

19  ████████████ had any novelty over SnapTrack's pre-existing technology.  (Michalson Dec., ¶

20  8.)  Besides, numerous companies used SnapTrack technology.  So a ████████████████ it is

21  not a trade secret.

22       The elaboration of Trade Secret No. 3 also lacks specificity.  The elaboration states that

23  Locate's unspecified-██████████████████████████████████████████████████ "

24  It does not however, identify the ████████████████████████████  It also says that

25  "Locate implemented an efficient solution" without disclosing the solution.  Trade Secret No. 3

26  also states that it was " ████████████████████████████████████████████████

27  ████████ … "  Locate's "████" is not a trade secret; the trade secret (if any) is what Locate actually

28  did.  But Plaintiffs refuse to say what Locate's method/solution was.  Trade Secret No. 3 further

Cooley LLP
Attorneys At Law

13.

Opposition to Plaintiffs'
Motion to Compel
08-cv-1992 MMA POR

1   provides: "████████████████████████████████████████████

2   ████████████████████████████████" Providing "examples" of application of the trade

3   secret shows that the trade secret itself is    not fully disclosed—Plaintiffs must state all of   the

4   implementations of their design.  Additionally  , ██████████████████████████████

5   ███████████ was well-known in the art as of 1999.  (Id., ¶¶ 7-8.)  This is not a trade secret.

6           Finally, the last sentenc e of Trade Secret No. 3 provides: "████████████████

7   ████████████████████████████████████████" The fact that this

8   idea "was explored" do es not explain when Locate  purportedly formulated a definite and certain

9   conception of this ██████ and reduced it to practice.  Addition ally, this statement provides no

10  details as to who explored the id    ea.  It c  ould have been SnapTrack, GlenAyre, or Cadence

11  exploring the idea, in which case it would not be a Locate trade secret at all.

12          Plaintiffs plainly fail to id    entify any precise algorithm  s or precise com  binations of

13  functions, combinations of specifi c algorithms or parts, or the pr  ecise nature of  any structures

14  employed i n this alleged ██████████  Plaintiffs' e xpert Dr. David B. Garl   an emphasized these

15  ambiguities saying, "As discussed with respect to Trade Secret 1 , Locate's Sputn ik specification

16  gives a good architectural  overview of this approach."  (Decl aration of Dr. David B. Garlan, ¶

17  55.)  When Plaintiffs' own expert  cannot describe their trade secr  et without reference to a 44-

18  page document (Sullivan Dec., Ex. 14), the trade secret is not reasonably particular.

19          Trade Secret No. 4  :  █████████████████████████████████████

20  ██████████████████████████.

21          The lack of particularity in Trade Secret No    . 4 is appalling.  It    is described as an

22  "algorithm," but nowhere do Plaintif fs state what the algorithm is.  It is impossible to distinguish

23  Plaintiffs' "algorithm" from others known in th e field without knowing wh at the algorithm is .

24  (Michalson Dec., ¶¶ 9-10.)  W  hen claim ing a n al gorithm as a trade secret, Plaintiffs should

25  "identify the precise combination of functions whic h comprise the algorithms at issue.  Similarly,

26  the higher-level architecture … sho uld be iden tified by de tailing the combination of the spec ific

27  algorithms employed."  Graves & Range, 5 Nw. J. Tech. & Intell. Prop. at 95.  Plaintiffs fail to do

28

COOLEY LLP
ATTORNEYS AT LAW

14.

OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
08-CV-1992 MMA POR

1   so.  Instead, they describe the alleged algorith   m using only high-level cat egories and techn ical

2   terms.

3          For example, Plaintiffs state  that the algorithm ███████████,” but  do not specify

4   what information it  █████ or how.  They also describe "████████████████████

5   █████,” but fail to id entify the  ███, its  ██████████████████,” or  how it is  ████

6   Trade Secret No. 4 goe  s on to state that its "m    ethod" (again without disclosing the m    ethod)

7   "████████████████,” without  identifying those  ███████ and that its

8   ██████████████████████████████████████

9   ███ "  Term s like "included" are   broad catch-all phrases that are  *prima facie*  evi dence t hat a

10  trade secret identification is in sufficient.  Graves & Range, 5 Nw.   J. Tech. & Intell. Prop. at 91-

11  92.  It leaves open the question of  what else was included in the  ██████ thus allowing Plaintiffs

12  to adjust their interpretation of this trade secret to cover after-acquired evidence.  Lastly, the final

13  sentence of Trade Secret No. 4  says: "███████████████████████

14  █████████████”  Such a broad sente   nce is open  to m ultiple interp retations.  W as it

15  SnapTrack that provided this  ██████████ to Locate?  If so, that would show that Trade Secret

16  No. 4 is not a Locate trade secret at all.

17         Trade Secret No. 5  : ██████████████████████████

18  ██████████████████████████

19         Trade Secret No. 5 describ     es a software/s oftware architec ture trade secret.   (Se   e

20  Declaration of Dr. Paul S. Min, ¶ 85.)  However, its descripti on fails to provide  any particularity

21  into how the software operates.  The trade             secret is described as  █████████████

22  ████████████████████████,” but does not provide any

23  details on how the  ████████████████████  Instead, Plaintiffs

24  state that "Locate d eveloped a so lution to this  problem," but do not descri be what that so lution

25  actually was.  ████████████████████████ was a well-

26  known concept in the field at the  time.  (Michalson Dec., ¶ 11-12.)  Thus, in order for Plaintiffs'

27  "solution" to be a trade secret, they    must be ab le to articu late exactly what the solution was t  o

28  distinguish it from what was  already known.  Addition ally, Defendants need to know the precise

1   algorithm and software architecture that was employed to be able to analyze their own technology

2   to determine whether it used the same "solution."

3         <u>Trade Secret No. 6</u>: ██████████████████████████████

4   ████████████████████████████████████

5         Trade Secret No. 6 is best desc ribed as a "business inform ation" trade secret. Plai ntiffs

6   claim they had determined a ████████████████████ yet fail to ██████

7   ████████████████████████████████████

8   ████████████ "When a plaintiff claims trade secrets in … business or marketing plans,

9   it should be easy to tell the defendant exactly wh    at the alleged secrets are – the plaintiff can

10  simply name the supposedly secret custom ers, prices, ideas, and the like."  Graves & Range, 5

11  Nw. J. Tech. & Intell. P rop. at 94.  By refusing to ████████████████ Plaintiffs

12  have not complied with this simple task.  (Michalson Dec., ¶¶ 13-14.)  Moreover, trade secret 6 is

13  entirely new and is not encompassed in the allegations of the Fourth Amended Complaint.

14        <u>Trade Secret No. 7</u> : ██████████████████████████████

15  ██████████████████████████████.

16        Trade Secret No. 7 is another software arch itecture trade secret.  (S ee Declaration of Dr.

17  Nenad Medvidovic, ¶¶ 56-60.)  As    with their other trade secret    s, Plaintiffs use only broad

18  descriptions of characteristics rather than speci fying the precise algorithm s and combinations of

19  algorithms that com prise the trade secret.  Th    e one-sentence trad e secret is emblem atic of

20  Plaintiffs' failure to particularly identify their trade secrets.  It does not identify what "████

21  ████████████" is includ ed in the ██████ or the "██████" on which it is sent.  Also,

22  Trade Secret No. 7 states that the ████████████████████████"

23  which begs the question: what else did the m essage include?  Again, such open-ended language

24  renders Plaintiffs' Trad e Secret Identification in adequate o n its face b ecause it sh ows that th e

25  trade secret has not been fully articulated.  The one-paragraph "elaboration" provides that "Locate

26  developed a solution to this problem" but does not describe the solution.  Plaintiffs do not specify

27  how the ████████████████████████ Without such details, one

28

Cooley LLP
Attorneys At Law

16.

Opposition to Plaintiffs'
Motion to Compel
08-cv-1992 MMA POR

1    cannot distinguish Plaintiffs' "solution" from what was known in the field. (Michalson Dec., ¶¶

2    15-16.)

3        Moreover, Plaintiffs' purported Trade Secret No. 7 says that " ███████████

4    ████████████████████████████████████████████████████████

5    ███████████████ " The trade secret does no t, howev er, say what th e " █████

6    █████████████████████ " is, what specific " ██████ " was performed, or what " ██████ "

7    was ██████ .  Trade Secret No. 7 goes on to state, ██████████████████████████

8    ██████████████████████████████████████████████████████████

9    ██████ " Again, th ere is no ex planation of what the "system " is or how it w orks and no

10   description of what " ████████████ " is or what spec ific ████ is included. ( *Id.* ) There is also

11   not a com plete list of all ██████████████████████████████████

12   ███████ " Lastly, Trade Secret No. 7 s tates: " █████████████████████

13   ███████████████ " Again, Plaintiffs do not say ex plicitly that Locate conceived of th e

14   alleged trade secret and reduced it to practice ra ther than h earing it f rom SnapTrack or others.

15   Discussing an idea is not the same thing as conceiving a trade secret.

16       <u>Trade Secret No. 8</u>  : ████████████████████████████████

17   ████████████████████████████████

18       Trade Secret No. 8 appears to be a combinati on of a software trade secret (see Declaration

19   of Dr. Nenad Medvidovic, ¶¶ 61-64) and a business  information trade secret (see Declaration of

20   Dr. Anant Sahai, ¶¶ 64-66).  As for the business  information aspect, P laintiffs' expert Dr. Sahai

21   describes the num erous am ounts and types of ████████████████████████

22   and states that Locate chose a portion of such ████████████ ( *Id.* )  However, Plaintiffs' Trade

23   Secret No. 8 does not set forth exactly what ██████ Locate chose to ██████

24       Trade Secret No. 8 also states, " ██████████████████████

25   ██████████████████████████████████ " but does not se t forth the ████████

26   ████████████████████ or how they were de termined.  As with Trade Secret No. 7, this

27   trade secret repeats the statem ent th at ██████████████████████████

28   ████████████████████████████████ " Trade Secret No. 8

COOLEY LLP
ATTORNEYS AT LAW
17.

OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
08-CV-1992 MMA POR



also fails to state what the ██████████████████████████████" is, what specific

██████" was performed, or what "██████████████████. Trade Secret No. 8 also provides:

"██████████████████████████████████████████████████████

██████████████████████" but fails to articulate exactly what it added those pieces of information

to or whether Locate "chose to add" any other bits of information. (See Michalson Dec., ¶¶ 17-

18.) This purported trade secret also calls out a "██████████████████████" but again, there is

no description or particularized statement of what that "architecture" is.[7]

Trade Secret No. 9: ████████████████████████████████████

██████████████████████████.

This trade secret consists of software and its higher-level architecture. (See Plaintiffs'

Revised Memorandum of Points & Authorities, p. 12.) It begins with the phrase ██████████████

██████████," but fails to disclose how the ██████████████████████" what ██████"

even means, or what the "██████" were. Trade Secret No. 9's one-paragraph "elaboration" states

that the ████████████████████████████████████████" Conspicuously absent

is any description of how the ██████████████████████ Further, Plaintiffs say that the ██████

██████████████████████████████," but don't specify what the "system" is or how it

██████████████████ Moreover, Trade Secret No. 9 goes on to describe several applications for

this purported trade secret, but does not state whether these were all of the applications. Open-

ended descriptions of examples show that Plaintiffs have not fully-articulated the trade secret.

Also, Plaintiffs say that one application "████████████████████████████████████████

██████████████████████████████" but do not list or specify what those ██████ are. All of

these details are necessary to distinguish Trade Secret No. 9 from the prior art. (See Michalson

Dec., ¶¶ 19-20.) Plaintiffs' expert Dr. David B. Garlan highlights the startling lack of specificity

when he says that the system required ████████████████████████████████████████

██████████████████████" without any description of what those ██████████████████ were.

(See Declaration of Dr. David B. Garlan, ¶¶ 61-62.)

_____

[7] Presumably, Plaintiffs will argue that this refers back to Trade Secret No. 1, which also does not
detail the central-server architecture with any particularity.

COOLEY LLP
ATTORNEYS AT LAW

18.

OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
08-CV-1992 MMA POR

1   <u>Trade Secret No. 10</u>: ███████████████████████████

2   ████████████████████████████.

3          Trade Secret No. 10 is also a software/software architecture trade secret.  (See Declaration

4   of Dr. David B. Garlan, ¶¶ 66-68;   Declaration of Dr.  Nenad Me dvidovic, ¶¶ 71-75.)  As wit  h

5   Plaintiffs' other trade secrets,  Trade Secret No. 1 0 is not reas onably particular b ecause it fails to

6   describe the m ethod by which Locate ████████████████████████████"

7   The trade secret s tates: "████████████████████████████

8   ████████████████████████."  However,

9   Plaintiffs do not specify how the ███████████ was obtained or  what the "██████

10  ██████████" is, which is necessa ry to  distinguish it from  prior system s that perform ed

11  the same function.  (Michalson Dec., ¶¶ 21-22.)

12         Trade Secret No. 10 goes on to   state that the "███████████" was ██████ at

13  Locate's request.  This begs th  e q uestion: Ho w are ███████████ m ade to its  own

14  ██████ a Locate trade s ecret?  Even m ore egregious is th at Plaintiffs say an ████████

15  █████ was part of its requirem ents for ███████████████

16  ███  This demonstrates that at the time Locate had not developed th e trade secret but wanted to

17  develop it as part of its ██████ creation.   Moreover, the SnapTrack, Inc. Enhanced GPS

18  Technology W hite Paper dated Ja  nuary 1999 specifies that Snap   Track's system  provides an

19  ███████████████████ (Sullivan Dec., Ex. 17, p. 3.)  It is

20  apparent that Plaintiffs are    attempting to claim   Defendants'  pre-existing technology as their

21  "trade secret."

22         <u>Trade Secret No. 11</u> : ███████████████████████

23  ███████████████████.

24         According to Plaintiffs, Trade Secret No.     11 describes a "███████████ " which is

25  essentially a computer program.  (Declaration of Dr. Nenad Medvidovic, ¶ 78.)  The trade secret's

26  description states that an "███████████████████████

27  ███████████ "  However, the trade secret identification fails to describe all of the ████████ "

28  (described as "████ " ████████ " and ██████ " by Dr. Medvidovic) th  at com prise the ████

1    ████████. (*Id.*)  In fact, Trade Secret No. 11 states that the ████████████████████

2    This is just another instance    of open-ended language showing th   at Plaintiffs have not fully

3    articulated their trade secrets.  Moreover, Trade  Secret No. 11 fails to provide the algorithm (s) or

4    combinations of algorithm s by wh ich an ████████████████.  S ince allowing

5    ████████████ was well-known in the ar t as of June 1999 (see Michalson Dec.,  ¶¶ 23-24),

6    such information is necessary to distinguish Trade Secret No. 11 from the prior art.  Lastly, Trade

7    Secret No. 11 states that " ████████████████████████ "

8    Discussed b y whom — SnapTrack?  "Discussin g" a  system is not the sam   e thing as actually

9    creating and implementing the system.

10       <u>Trade Secret No. 12 :</u> ████████████████████████

11   ████████████████████████████████████████

12   ████████████████████████████████████████

13   ████████

14       Trade Secret No. 12 appears to be a catch         -all or com   bination trade secr    et tha t

15   encompasses Trade Secret Nos. 1-11 and attempts to classify the combination of all of those trade

16   secrets as a separate trade secr et.  "[Combination trade secrets are] dangerous, how ever, because

17   trade secret plaintiffs often string togeth         er non-secret item   s that have no functional

18   interrelationship to avoid a defendant's showi        ng that the individual item   s are non-secret.

19   Attorneys a lso use the ' combination' concept to  alter c laims, and to cre ate m ore sets of  alleged

20   intellectual property than the pl   aintiff actually thought   about or linked together."  Graves &

21   Range, 5 Nw. J. Tech. & Intell. Prop. at 77.  As         with all of Plaintiffs ' other purported trade

22   secrets, Trade Secret No. 12 lacks any detail.  It describes a " ████████████ ," but does

23   not describe what that architect ure is (hardware, software, algor ithms, source code, etc.).  Trade

24   Secret No. 12 states that the   system ████████████████ " but does not

25   detail how they were ████   or even what ████████████████ . "If

26   Plaintiff contends that a trade secret consists of  a specif ic combination of items, it shall so sta te

27   and concisely describe the com bination."  *Myrio, supra* , No. 00-20996. 2001 U.S. Dist. LEXIS

28   10461 at *2-3.

COOLEY LLP
ATTORNEYS AT LAW

20.

OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL
08-CV-1992 MMA POR

1    Trade Secret No. 12 also fails to specifically list the business inform ation—e.g. ████

2    ████████████████████████████—that are used by the system . Without precise

3    identification of all of the com ponents of the system , Plaintif fs have f ailed to id entify Trade

4    Secret No. 12 with reasonable particularity.      (Michalson Dec., ¶¶ 25-26.) Finally, the last

5    sentence of Trade Secret No. 12 typifies the    lack of particularity found throughout Plaintiffs'

6    Trade Secret Iden tification: "███████████████████████████████ "

7    The fact that Locate was incorpo rated to develo p the system shows that the system had not yet

8    been created and, therefore, was not a trade secret  at the tim e. Defendants and the Court have a

9    right to know what the "system" was in detail and when it was actually created, if ever.

10   **V.     SECTION 2019.210 APPLIES IN FEDERAL COURT**

11          **A.     The Court Already Ruled that Section 2019.210 Applies**

12          Plaintiffs make the speci ous argument that Section 2019.2 10 does not apply in federal

13   court. Plaintiffs are wrong for se veral reasons. First of all,    this Court already decided that

14   Section 2019.210 applies in this case. (Scheduling Order dated March 30, 2010 citing the holding

15   in *Computer Economics* and ordering that Section 2019.210 applies to this case.) (See Kyle Dec.,

16   Ex. 1.) Second, Plaintif fs' reliance on *Hilderman v. Enea Teksci, Inc.*, No. 05cv1049, 2010 U.S.

17   Dist. LEXIS 1527, at *9 (S.D. Cal. Jan. 8, 2010) is misplaced. *Hilderman* was decided more than

18   two m onths before this Court's Scheduling Or der. This Court decided that Section 2019.210

19   applies regardless. Als o, Plaintiffs failed to object to the Court's Sche duling Order at any tim e

20   until now, even thoug h *Hilderman* issued over a year ago. Moreover,    *Hilderman* is a non-

21   published order and has no preceden tial value. See 9th Cir. R. 36-3(a); *Hart v. Massanari*, 266

22   F.3d 1155, 1159-1180 (9th Cir. 2001).      Additionally, the ruling in    *Hilderman* is dicta. In

23   *Hilderman*, the issue was whether the cross-complainant could introduce evidence of trade secrets

24   beyond those identified in its    trade secret identification.    *Id.* at *3. Section 2019.210 was

25   inapposite to that issu e because the cross-co mplainant h ad already m ade its trade secret

26   identification and the adequacy of that identifica tion was not at issu e. Besides, the Souther n

27   District of California has alr eady ruled in a published decisi on that Section 2019.210 does apply

28   in federal court. *Computer Econ., Inc., supra*, 50 F. Supp. 2d 980 (S.D. Cal. 1999).

**B.     The *Erie* Doctrine Requires the Court to Apply Section 2019.210**

Even if *Computer Econ.* did not decide the issue and this Court had not ruled that Section 2019.210 applies in this case, it would apply nevertheless. When issues of state law are being tried in federal court, a federal court must apply state substantive law and federal procedural law. *Id.* at 986; *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Determining whether the state or federal law applies requires a two-step analysis. "First, the court must determine whether the state rule conflicts with an applicable Federal Rule of Civil Procedure. If so, principles of federal supremacy require the court to apply the Federal Rule rather than the state law. … Otherwise, the court must analyze whether failure to apply the state law would either significantly affect the outcome of the litigation or encourage litigants to file their actions in federal court." *Computer Econ., Inc.*, 50 F. Supp. 2d at 986.

**1.     Section 2019.210 Does Not Conflict With Rule 26**

"The initial step is to determine whether, when fairly construed, the scope of a Federal Rule is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of state law." *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 5 (1987). A "direct collision" occurs only when it is not possible to comply with both the Federal Rule and the state law. *Id.* at 7. There is no direct collision between Rule 26 of the Federal Rules of Civil Procedure and Section 2019.210.

Rule 26(b)(1) provides that the scope of discovery may be "limited by court order." Here, the Court did so by applying Section 2019.210. There is no collision such that it is not possible to comply with both Rule 26 and Section 2019.210; rather, Rule 26 expressly contemplates a situation where a court may limit discovery for any number of reasons, including Plaintiffs failure to identify trade secrets with requisite particularity.

Plaintiffs' reliance on the reasoning of *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. S-06-0533, 2007 U.S. Dist. LEXIS 8870 at *1, is also misplaced. In *Funcat Leisure Craft*, the court used outcome-determination reasoning to decide the issue of whether Section 2019.210 applies in federal court. It reasoned that "[i]f Rule 26 applies, plaintiffs may go forward

1   with the instant discovery.      If § 2019.210 applies, plaintiffs are prevented from         pursuing

2   discovery if the insufficiency of their §  2019.210 statement is adversely determ ined."  *Id.* at *7.

3   However, "'[ o]utcome-determination' analy sis was never   intend ed to serve as    a ta  lisman."

4   *Hanna v. Plummer* , 380 U.S. 460, 466 – 467 (1965).  Theref  ore, outcome-determination should

5   not override "the twin aims of the *Erie* rule:  discouragement of forum-shopping and avoidance of

6   inequitable administration of the laws."  *Id.* at 468.  "[C]hoi ces between state and federal law are

7   to be made not by application of any automatic, 'litmus paper' criterion, but rather by reference to

8   the policies underlying the *Erie* rule."  *Id.* at 467.  "The *Erie* rule is rooted in part in a realiza tion

9   that it would be unfair for the character or result of a litigation materially to differ because the suit

10  had been brought in a federal court."  *Id*.  Thus, the mere possibility of different outcomes is not a

11  permissible basis under *Erie* for a court to reject  Section 2019.210.  Indeed, that rationale would

12  lead to forum -shopping of trade se  cret cases to federal courts ju   st to avoid the strictures of

13  Section 2019.210, an evil the *Computer Econ.* court envisioned and prohibited.  *See* 50 Supp. 2d

14  at 992.

15      Moreover, contrary to the reasoning in *Hilderman*, Section 2019.210 does not frustrate the

16  purposes of Rule 26.  Rather than forbidding disc  overy to which a plaintiff would otherwise be

17  entitled, Section 2019.210 helps     **define** the scope of discovery      by placing boundaries on a

18  plaintiff's alleged  trade secrets.  *Computer Econ., Inc.*  , 50 F. Supp. 2d at 989 ("requiring a

19  plaintiff to identif y its trad e s ecrets before d iscovery *assists* the  cour t in as certaining whether

20  plaintiff's requests for discovery fall within the permissible discovery under Rule 26(b)(1).")

21              **2.      Section 2019.210 is a Substantive State Law**

22      Once a court determ ines that Section 2019.210 do es not conflict with  a Federal Rule, the

23  court should apply the principles of the    *Erie* doc trine to dete rmine whether it m ust enforce th e

24  state rule.  *Id*. at 990.  If the state law is clearly substantive, the court must enforce it.  *See Byrd v.*

25  *Ridge Rural Electrical Cooperative, Inc.* , 356 U.S. 525, 536 (1958).  A st ate rule of procedure is

26  substantive in nature "though undeni ably 'procedural' in the ordinary sense of the term, [when it]

27  is lim ited to a particular substantiv e area" of the law."  *S. A. Healy Co. v. Milwaukee Metro.*

28  *Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995) (labeling su  ch situations "a class of pretty easy

1  cases"). Because Section 2019.210 only   impacts trade secret claim s and was created as part of

2  California's adoption of the Uniform Trade Se   crets Act, it is substantive and the Court should

3  enforce it. *See Computer Economics* 50 F. Supp. 2d at 985, n6.

4          **3.      Failure to Apply Section 2019.210 Would Encourage Forum Shopping**

5          Even if the state ru le "'is not 'cle arly substantive,' *Erie* requires the co urt to ana lyze the

6  probable effect failure to apply the rule would have on the behavior of the litigants or the outcome

7  of the case.  Specifically, the state rule should appl y when the failure to do so would significantly

8  affect the outcom e of the litigation, encour      age forum s hopping, or re  sult in 'inequitable

9  administration of the laws.'" *Id.* at 991 (quoting *Gasperini v. Center for Humanities, Inc.* , 518

10  U.S. 415, 428 (1996)).  Where "application of the rule would have so important an effect upon the

11  fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff

12  to choose the federal court," the federa l court should enforce the state rule.    *Hanna*, 380 U.S. at

13  468, n9.

14          A federal court should apply "ost ensibly procedural" state rules  when the failure to do s o

15  would encourage plaintiffs to file actions in federal court. *Computer Econ. Inc.*, 50 F. Supp. 2d at

16  991 (citing *Woods v. Holy Cross Hospital* , 591 F.2d 1164, 1168 (5th Cir. 1979).  The court in

17  *Computer Econ.* catalogued the obvious forum   -shopping co ncerns that would arise if Section

18  2019.210 were not available to defendants in the federal courts:

19          A plaintiff with a weak trade secret cl    aim would have ample reason to choose
        federal court if it offered a chance to circumvent the requirements of CCP Section
20      2019(d).  N on-application of CCP Section    2019(d) would entitle a plaintiff to
        virtually unlimited discovery, enhancing its settlement leverage and allowing it to
21      conform m isappropriation claim s to the  evidence produced by the defendant in
        discovery.  This would ine quitably deprive defendants of  the protections of CCP
22      Section 2019(d) and attract to federal c  ourt the unsupported trade secret lawsuits
        the statute was enacted to deter.
23

24  *Id.* at 992.

25          Refusing to apply Section 2019.210 in federal     courts would certainly encourage f orum

26  shopping.  Any plaintiff seeking to  avoid its provisions  would attempt to find a federal claim  to

27  add onto its trade secrets claim and thereby have its case heard in federal court.  Moreover, failure

28  to apply Section 2019.2 10 would affect the outcom e of the litig ation by requiring defendants to

COOLEY LLP
ATTORNEYS AT LAW        24.

1    produce documents before plaintiffs have defined  their trade secrets, thereby enlarging the scope

2    of discovery and subjecting defendants to the possi    bility that p laintiffs would craft their trade

3    secret claims around the discove    ry produced by defendants, just    as Plaintiffs are obviously

4    attempting to do here.  Furtherm    ore, it would en  courage p laintiffs to file unm  eritorious trade

5    secret claims as a tool to obtain inf  ormation about defendants' technology.  Accordingly, under

6    the *Erie* doctrine, Section 2019.210 applies in federal courts and the Court should apply it here.

7    **VI.    CONCLUSION**

8         For over two years, Plaintiffs have been m aking this case up as they  go along.  After five

9    attempts, they still cannot identify any of their alleged trade secrets with the particularity required

10   by this Cou rt.  Pla intiffs f ifth Trade Secre t Ide ntification is reple te with gener al c oncepts an d

11   open-ended language, leaving it open to endless interpretations.  Indeed, even Plaintiffs admit that

12   their la test Trade Sec  ret Iden tification ref lects  only certain "aspects" of     their trade secrets.

13   Moreover, Plaintiffs attempt to reserve the righ t to amend their Trade Secret Identification at any

14   time they wish.  Section 2019.210 was enacted to          prevent precisely this   type of abuse.

15   Recognizing their inability to identify their trade secrets with  any specificity, P laintiffs make the

16   specious argument that Section 2019.210 does not appl y in federal court.  This Court has already

17   ruled that Section 2019.210 does apply and should maintain its order.

18         In sum, Pl aintiffs have refused t o comply with the Court's  order to id entify the ir trade

19   secrets with reasonable particularity.  Therefor    e, the Court should deny Plaintiffs' m    otion to

20   compel.

21

22   Dated: January    24, 2011                    COOLEY LLP

23

24                                                      */s/ John S. Kyle*

25                                                STEVEN M. STRAUSS (sms@cooley.com)
                                                 JOHN S. KYLE (jkyle@cooley.com)
26                                               Attorneys for Defendants

27
     698976 v7/SD
28

COOLEY LLP
ATTORNEYS AT LAW        25.