1
2
3
4
5
6
7
8            **UNITED STATES DISTRICT COURT**
9           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11  GABRIEL TECHNOLOGIES                    CASE NO. 08cv1992 AJB (MDD)
    CORPORATION, et al.,
12                                          ORDER DENYING MOTION TO
                            Plaintiffs,     COMPEL
13        v.
                                            [DOC. NO. 170]
14  QUALCOMM, INCORPORATED, et al.,

15                          Defendants.

16

17                          Introduction

18      This particular discovery dispute has a long history.  Plaintiffs have sued Defendants

19  alleging, *inter alia*, that Defendants misappropriated Plaintiffs' trade secrets and that the stolen

20  trade secrets form the basis of several of Defendants' patents.  Over the course of this litigation

21  two Magistrate Judges of this Court have ruled that Plaintiffs have failed to designate their trade

22  secrets with sufficient particularity to justify compelling discovery from Defendants.  (Doc. Nos.

23  146 and 160).   The District Court has also commented on Plaintiffs seeming inability to describe

24  its own technology adequately.  (Doc. No. 121).  This Court has provided Plaintiffs with multiple

25  opportunities to designate any of their asserted trade secrets with sufficient particularity.

26      Currently before the Court is Plaintiffs' motion to compel discovery filed on September 6,

27  2011. (Doc. No. 170).  On September 29, 2011, the Court held a hearing on the motion.  At the

28  conclusion of the hearing, the Court directed the parties to file supplemental briefs with particular

emphasis upon the sufficiency of Trade Secret Designation #1.  Briefs were submitted timely on

October 17, 2011.  For the reasons set forth below, Plaintiffs' motion is DENIED.

Background

In August, 1999, SnapTrack,, and Locate Networks (Plaintiffs' predecessor-in-interest)

entered into a license agreement, whereby Locate obtained a license to use SnapTrack's GPS

software in exchange for licensing and royalty fees.

The agreement contemplated that  the parties would jointly own work product developed in

connection with the agreement.  Plaintiffs allege that SnapTrack and Defendant Krasner used the

relationship to steal and misappropriate Locate's intellectual property.

In March 2000, Qualcomm acquired SnapTrack for $1 billion.  Plaintiffs allege that

Defendant Krasner and SnapTrack passed along the improperly acquired intellectual property to

Qualcomm during the buyout.  Plaintiffs further allege that Defendants used this technology to

obtain patents covering Locate's technology without properly attributing Locate as the inventors or

co-inventors.

In 2004, Locate transferred its assets to Plaintiff Trace Technologies, LLC, a pre-existing

entity created by Locate and Plaintiff Gabriel Technologies, Inc.  Locate then sold its interest in

Trace to Gabriel and went out of business.  In 2006, Qualcomm entered into a new licensing

agreement with Trace regarding Locate's technologies.  Plaintiffs contend that the 2006 agreement

was tainted by Defendants' continuing unlawful use of Locate's intellectual property and by

Qualcomm's failure to disclose the terms of the original 1999 licensing agreement to Trace.

Plaintiffs contend that they learned of Defendants' wrongdoing when Defendants' patents were

published, and filed suit shortly after.

The initial Complaint was filed on October 24, 2008, alleging, among other claims, breach

of the 1999 and 2006 license agreements, interference with contract, patent claims,

misappropriation of trade secrets, and fraud.  (Doc. No. 1).  It was followed by a First Amended

Complaint on April 29, 2009.  (Doc. No. 14).  Defendants moved to dismiss the First Amended

Complaint and an Order granting in part and denying in part the motion was filed on September 3,

2009.  (Doc. No. 35).  A Second Amended Complaint was filed on September 14, 2009.  (Doc. No. 36).  A Third Amended Complaint was filed on October 9, 2009, and was followed by a motion to dismiss.  (Doc. Nos. 40, 41).  This prompted a Fourth Amended Complaint to be filed on January 11, 2010.  (Doc. No. 53).  The Fourth Amended Complaint was answered by the Defendants on January 21, 2010.  (Doc. No. 54).

On March 30, 2010, in a Scheduling Order issued by U. S. Magistrate Judge Louisa S. Porter, Plaintiffs were ordered to identify the trade secrets at issue with reasonable particularity by May 1, 2010.  (Doc. No. 61).  On April 23, 2010, Plaintiffs' motion to file a Fifth Amended Complaint was denied.  (Doc. No. 71).  On July 2, 2010, Defendants moved for a bond under California Code of Civil Procedure § 1030 to secure costs and fees.  (Doc. No. 81).  On September 20, 2010, U. S. District Judge Michael M. Anello granted the motion and ordered Plaintiffs to post a bond of $800,000 to secure fees and costs that may be due Defendants upon resolution of this case.  (Doc. No. 110).  Notably, Judge Anello stated:

> "Plaintiffs generalized descriptions of Locate technologies . . . is not
> sufficient."

(Doc. No. 110 at 10).  The cost bond was posted by Plaintiffs on December 16, 2010.  (Doc. No. 121).

In early January, 2011, Plaintiffs served Defendant Qualcomm with requests for discovery related to Plaintiffs' trade secret claims.  Defendants refused to respond to these requests asserting that discovery was barred because Plaintiffs had not sufficiently designated their trade secrets as required under Judge Porter's March 30, 2010, Scheduling Order and California Code of Civil Procedure § 2019.210.  In response, Plaintiffs provided Defendants with brief descriptions of their purported trade secrets, and submitted four expert declarations concluding that Plaintiffs' trade secret designations were adequate.  Defendants maintained that the designations remained deficient.

On January 10, 2011, the Plaintiffs filed their first Motion to Compel Discovery.  (Doc. No. 128).  A hearing on the motion was held before Magistrate Judge Porter on February 14, 2011.   Of

particular interest, during the hearing, the Court inquired of Plaintiffs whether the trade secrets they were claiming were conceptual.  Specifically the Court asked:

> "The question is, is it a conceptual or is it a process?  Is it a product?
> An algorithm?  Is it some software that has gotten to that stage?  Is it
> work in progress?  Or is it at the concept stage?  That's what I'm
> trying to determine here."

(Doc. No. 146 at 5).  Counsel for Plaintiffs responded:

> "Well, it has the solutions that are in the trade secret, were
> implemented.  They were actually processes.  They were actually
> built and tested so to the extent they weren't simply ideas that were
> not reduced to practice, if that's where you're going with that, no."

(Id.).

During the balance of the hearing, Judge Porter questioned Plaintiffs in order to assist them in identifying the processes that are their alleged trade secrets.  Plaintiffs' equivocations caused Judge Porter to deny the motion to compel.  (Id. at 39-40; Doc. No. 145).  In her Order, Judge Porter noted that it was Plaintiffs' fifth iteration of its trade secret designations that were before the Court.  (Doc. No. 145 at 1).  Judge Porter gave Plaintiffs until March 14, 2011, to designate their trade secrets with sufficient particularity.  In addition, Judge Porter allowed Plaintiffs to proceed with discovery that was not reliant upon sufficient trade secret designations with respect to Plaintiffs' licensing agreement claims.  (Id. at 2).

Plaintiffs' sixth set of trade secret designations resulted in the filing of a joint motion to resolve a discovery dispute on May 6, 2011.  (Doc. No. 157).  Following a conference with the parties, the Court affirmed Judge Porter's previous Order but in an agreement reached with the parties, allowed for limited trade secret-related discovery.  Specifically, the parties agreed to designate up to two of Defendants' patents named in Plaintiffs' complaint and provide fact discovery regarding the genesis of those patents.  Prior to engaging in the discovery, Plaintiffs were required to identify the specific trade secrets from their most recent designation that they believed

1   were incorporated into these patents.  This Court issued an Order memorializing the agreement on

2   May 10, 2011.  (Doc. No. 160).  Ultimately, one patent was selected and the discovery experiment

3   commenced.

4        On July 1, 2011, the parties filed a new joint motion for determination of discovery dispute

5   related to the trade secret documentary discovery.  (Doc. No. 163).  A hearing was held on that

6   motion on July 6, 2011.  The crux of the dispute at that time was Defendants' assertion that

7   Plaintiffs were seeking discovery well beyond the genesis of the one patent at issue – in essence,

8   that Plaintiffs were seeking case-wide discovery in the guise of specific discovery for the source

9   material of the one patent.  Following a lengthy hearing, the Court agreed Plaintiffs were seeking

10  far broader discovery than contemplated by the brokered agreement having not yet identified their

11  trade secrets with sufficient particularity.  The Court terminated documentary discovery regarding

12  the single patent but permitted depositions to be taken of identified inventors and others reasonably

13  believed to be knowledgeable regarding the creation of the invention underlying the single patent.

14  In addition, the Court allowed Plaintiff to discover documents of Loc8.net a/k/a Locate Networks,

15  Inc., in the possession of the deponents.  (Doc. No. 165).

16       Finally, the instant motion to compel was brought by Plaintiffs on September 6, 2011.

17  (Doc. No. 170).   Plaintiffs produced a seventh version of its trade secret designations in

18  connection with this motion.  A hearing was held on September 29, 2011.  During the hearing, the

19  Court advised the parties that Trade Secret Designation #1 may be sufficiently specific if the

20  designation was intended to describe a unique approach to addressing location-based services

21  using asynchronous messaging in the context of a Global Position System and mobile devices as

22  described and limited in Trade Secret Designation #1 contained on page 2 and into page 3 of

23  Plaintiffs' Exhibit A.  (Doc. No. 193 at 12-14).  At the Court's invitation, the parties provided

24  additional briefing regarding the sufficiency of Trade Secret Designation #1.  The briefs were

25  received on October 17, 2011.

26                              Analysis

27       Plaintiffs contend that their current formulation of Trade Secret Designation #1 is sufficient

28

1  and continue to assert that their designations of Trade Secrets #2 through #10 also are sufficient.

2  Regarding Trade Secret Designation #1, Plaintiffs now clearly state that the description appearing

3  on page 2 and including the diagram on the top of page 3 of its September 6, 2011 trade secret

4  designation was a new approach to the problem of handling the messaging for a location-based

5  asynchronous Global Positioning Satellite system and constitutes their trade secret.   *See* Plaintiffs'

6  Brief following Discovery Conference September 29, 2011, at 3 ("As described in greater detail

7  below, the approach is particularly described on pages 2 and 3 of Plaintiff's September 6, 2011

8  Trade Secret Identification.").  Defendants claim that the approach identified in the designation

9  remains deficient for failing to provide key aspects of the described approach.

10       Under California law, a "trade secret" means information, including a formula, pattern,

11  compilation, program, device, method, technique, or process, that:

12       1.     Derives independent economic value, actual or potential, from not being generally

13              known to the public or to other persons who can obtain economic value from its

14              disclosure or use; and,

15       2.     Is the subject of efforts that are reasonable under the circumstances to maintain its

16              secrecy.

17  Cal.Civ.Code § 3426.1(d).  *See also* 18 U.S.C. § 1839(3).  The California Code of Civil Procedure

18  § 2019.210 requires that a party alleging misappropriation of a trade secret must, before

19  commencing discovery relating to the trade secret, identify the trade secret with "reasonable

20  particularity."

21       Similarly, under federal law, in *Imax Corporation v. Cinema Technologies, Inc.,* 152 F.3d

22  1161, 1164-65, (9th Cir. 1998), the Ninth Circuit explained:

23              A plaintiff seeking relief for misappropriation of trade secrets "must

24              identify the trade secrets and carry the burden of showing that they

25              exist." . . .  The plaintiff "should describe the subject matter of the

26              trade secret with sufficient particularity to separate it from matters of

27              general knowledge in the trade or of special knowledge of those

28

1    persons . . . skilled in the trade."

2  (Citations omitted).

3         Therefore, regarding Trade Secret Designation #1, the issues are:

4    1.    Can an approach or framework to solving a problem and not the solution itself

5          constitute an actionable trade secret;  and, if so,

6    2.    Have Plaintiffs identified their approach with sufficient particularity to provide

7          reasonable notice of issues for trial and provide reasonable guidance in ascertaining

8          the scope of appropriate discovery?  *See Mattel, Inc., v. MGA Entertainment, Inc.,*

9          782 F. Supp.2d 911, 968 (C.D.Cal. 2011), *citing Diodes, Inc., v. Franzen,* 260

10         Cal.App.2d 244, 252-253 (1968).

11        The law is less than clear regarding the circumstances under which an "approach" "idea" or

12  "design concept" can constitute a trade secret.  In *Mattel*, in dealing with concepts for future lines

13  of dolls, the court noted that "concepts can have value independent from the product they

14  eventually inspire."  782 F.Supp.2d at 962.  And in *Intermedics, Inc., v. Ventritex, Inc.,* 804

15  F.Supp. 35 (N.D.Cal. 1992), the court appeared to accept as adequate trade secret designations of

16  concepts and design ideas for an implantable defibrillator.  The designations did not include

17  mechanical details of how the design ideas are reduced to a working, functional part of the device.

18  *Id.* at 38.

19        On the other hand, in *Silvaco Data Systems, v. Intel Corporation,* 184 Cal.App.4th 210,

20  220-221, (2010), the court had a different notion regarding design concepts.  The court expressed

21  the view that ideas are protected by patents; it is information that is protected by trade secret law.

22  In addressing the disputed designation before it, the court said that it "does not designate

23  *information* as such but rather describes various features, functions, and characteristics of the

24  design and operation of [the] products." *Id.* (emphasis original).  The description of the designation

25  provided by the court in *Silvaco* of the disputed trade secret bears some striking similarities to

26  Plaintiffs' designation.  The court rejected the attempt to characterize aspects of the underlying

27  design of a product as trade secrets saying:

28

1       The design may constitute the *basis* for a trade secret, such that

2       *information concerning it* could be actionably misappropriated; but it

3       is the information - not the design itself - that must form the basis for

4       the cause of action.

5   *Id.*

6       Adopting the Court's tentative analysis expressed during the September 29, 2011 hearing,

7   Plaintiffs currently assert that their trade secret is an *approach* to solving the location issue,

8   although Plaintiffs have also claimed it is not the idea that is a trade secret but rather the process

9   that is the trade secret. (Doc. No. 146 at 5). The Court agrees that a unique approach to a problem

10  can constitute a process that is a protectable trade secret provided that the approach process is

11  sufficiently described. Accordingly, the Court finds that a sufficiently described procedural

12  approach or framework can constitute a trade secret.

13      However, the Court does not find Plaintiffs have described their procedural approach with

14  adequate specificity. Despite seven attempts, Plaintiffs have failed to put forth a designation that

15  provides reasonable notice of the issues for trial and assists the Court in defining the scope of

16  discovery.  Stated most favorably to the Plaintiffs, Trade Secret Designation #1 brings a method to

17  solving the location problem by naming essential components and  generally describing the

18  sequence of communications between the components.

19      Regarding the component pieces, Plaintiffs contend that the components and sub-

20  components are resident on one or more physical machines. This suggests that the components

21  may be hardware, firmware or software.  Entirely lacking is any description of the configuration or

22  essential programming of these components and sub-components. This alone condemns the

23  designation to intolerable vagueness. It cannot be a trade secret that a system must contain

24  components and sub-components; the nature of these components, and not just a name and

25  function, must be described clearly to be actionable.

26      In addition, Plaintiffs also have failed to sufficiently describe the nature of the

27  communications between the components. Plaintiff states that most of the components must

28

1   communicate asynchronously and that the system "arbitrate" these asynchronous messages.  The

2   designation,  however, does not define its terms.  Plaintiffs have not claimed a means of

3   asynchronous communication as a trade secret.  Further, a system may "arbitrate" messages in a

4   variety of ways.  The need for the system to arbitrate or manage messages cannot be a trade secret.

5   Without more detail regarding how these components need to communicate and how the system

6   must manage the flow, Plaintiffs' designation is fatally flawed.  This is not to say that Plaintiffs had

7   to provide minute detail - by its nature a procedural framework is incomplete - but enough detail

8   must be present to demonstrate the uniqueness of the framework.  A sufficient designation would

9   have been like that in *Intermedics, supra*, where all that was left was for engineers to create the

10  mechanical parts.  Here, the Court agrees with Defendants that the description could not have been

11  handed to a group of engineers and programmers who would have known what to build.

12          In the end, the Court is left with the same view as the court in *Silvaco* that Plaintiffs have

13  not provided sufficient information regarding the uniqueness of its procedural approach to provide

14  any meaningful way to limit discovery.

15          The Court also reaffirms its finding that designations #2 through #10 are insufficient, as

16  they contain even less information and more ambiguous terms.

17                                                     Conclusion

18          For the foregoing reasons, Plaintiffs' motion to compel is DENIED.

19  IT IS SO ORDERED:

20  DATED:   December 12, 2011

21

22

23                                          Hon. Mitchell D. Dembin
                                            U.S. Magistrate Judge
24

25

26

27

28