COOLEY LLP
STEVEN M. STRAUSS (99153) (sms@cooley.com)
JOHN S. KYLE (199196) (jkyle@cooley.com)
4401 Eastgate Mall
San Diego, California  92121
Telephone:    (858) 550-6000
Facsimile:     (858) 550-6420

TIMOTHY S. TETER (171451) (teterts@cooley.com)
JEFFREY S. KARR (186372) (jkarr@cooley.com)
Five Palo Alto Square
3000 El Camino Real
Palo Alto, CA  94306-2155
Telephone:    (650) 843-5000
Facsimile:     (650) 857-0663

Attorneys for Defendants
QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN KRASNER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| GABRIEL TECHNOLOGIES CORPORATION and TRACE TECHNOLOGIES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN KRASNER,<br><br>Defendants. | Case No.  08-cv-1992 AJB MDD<br><br>**DEFENDANTS QUALCOMM, INCORPORATED, SNAPTRACK INC., AND NORMAN KRASNER'S SUPPLEMENTAL BRIEF REGARDING BREACH OF CONTRACT REMEDIES** |

## I. INTRODUCTION.

In its Order dated June 15, 2012, the Court noted the "peculiar procedural posture of this case." (6/15/2012 Order, Doc. No. 269, p. 2.) The "peculiar procedural posture" results from the fact that the Court dismissed with prejudice or granted summary judgment on claims that share the exact same factual predicate as the one claim for which Gabriel seeks damages, its breach of contract claim. (6/15/2012 Order, Doc. No. 269, p. 2.) Thus, the Court requested supplemental briefing on "whether, considering the posture of this case, Plaintiffs may avail themselves of a theory of unjust enrichment as a remedy to their remaining breach of contract claims." (6/15/2012 Order, Doc. No. 269, p. 2.) The Court's question raises two issues: (1) what, following the Court's prior Orders, remains of the alleged breach of contract claim; and (2) if anything remains, is Gabriel entitled to an unjust enrichment remedy. Gabriel's supplemental brief devotes virtually no attention to the first issue—which is the crux of Defendants' opposition to damages discovery—and for good reason.

The Court's prior Orders leave no basis for Gabriel's breach of contract or unjust enrichment claims and have eliminated any grounds for damages based on breach of contract, as evidenced by the pleadings and Gabriel's own discovery responses. *First*, the Court dismissed Plaintiffs' unjust enrichment claim *with prejudice*. That claim incorporated by reference all prior allegations in the First Amended Complaint, including the breach of contract and inventorship claims. Gabriel has not set forth any reason to reconsider and reverse Judge Anello's decision. As Gabriel acknowledges, if it wants to pursue an unjust enrichment theory, it cannot do so as a separate cause of action, but must do so merely as a remedy for the alleged breach of contract. *Second*, the Court granted Qualcomm's motion for summary judgment as to the breach of contract claim in part. The Court granted judgment to the extent the breach of contract claim is based on the alleged taking or patenting of Gabriel's purported trade secrets or disclosure of confidential information. The Court denied the motion as to the breach of contract claim only to the extent that it is based on something other than the taking or patenting of Locate's alleged trade secrets or confidential information. As Gabriel has confirmed in sworn interrogatory responses,

as Gabriel's paid experts have testified under oath, and as Judge Anello found in his Order granting the motion to dismiss with prejudice, all of Gabriel's claims are based on the alleged taking and patenting of trade secrets. If Gabriel cannot base its breach of contract claim on the alleged taking and patenting of trade secrets, it has no claim left. Accordingly, the question of what remedies might be available is entirely irrelevant.

Apparently recognizing that it needed something—anything—to support its breach of contract claim, Gabriel, as it has done throughout this case, contrived a new theory. Without any discussion, evidence, or legal authority, Gabriel now claims that Defendants took the "inventorship rights" of certain former Locate employees. As a result, according to Gabriel, Gabriel is entitled to a substantial portion of Qualcomm's licensing revenue. Even if Defendants had misappropriated "inventorship rights," which they have not, Gabriel would not be entitled to unjust enrichment damages because Qualcomm never licensed or derived any revenue from bare "inventorship rights." Rather, Qualcomm has licensed patents and the claimed inventions in those patents. As the Court's prior Orders hold that Gabriel cannot base its breach of contract claim on those patent claims, which Gabriel admits contain its purported trade secrets, Gabriel is not entitled to any remedy on its breach of contract claim.[1] Thus, if Gabriel could somehow show by clear and convincing evidence that Locate employees solely invented the remaining patents-in-suit—which it has no hope of doing—Gabriel's only remedies in this case are correction of inventorship and a declaration of ownership. That remedy would be far more than Locate or Gabriel ever hoped to receive when they decided not to pursue or decided to abandon their own patent applications.

## II. RELEVANT PROCEDURAL HISTORY.

Gabriel filed its original complaint on October 24, 2008. On April 29, 2009, in an attempt

---

[1] To the extent that Gabriel claims its intellectual property included confidential information that does not qualify as a trade secret under California law, this will not save Gabriel's claim for damages based on breach of contract. Indeed, the Court granted the motion for summary judgment as to ground three of Gabriel's breach of contract claim, which is based on the claim that Qualcomm "failed to maintain the confidentiality of Locate's trade secrets and other confidential and proprietary information." (3/13/2012 Order, Doc. No. 252, p. 17 (finding Gabriel's third ground for breach of contract was time barred under the statute of limitations).)

to avoid a motion to dismiss, Gabriel filed a First Amended Complaint ("FAC").  In the FAC, Gabriel asserted eleven causes of action.  On June 12, 2009, Qualcomm moved to dismiss nine of the eleven causes of action.  Of those nine, Qualcomm moved to dismiss the fourth, ninth, tenth, and eleventh causes of action based on trade secret preemption.  On September 3, 2009, Judge Anello issued an order granting the motion, in part.  In that Order, Judge Anello agreed with Qualcomm and found numerous claims, including the claim for unjust enrichment, preempted.  In finding preemption, Judge Anello ruled that "[t]he FAC as a whole rests on factual allegations of trade secret misappropriation.  If the 'trade secret' facts are removed from claims four, nine, ten and eleven, the claims fail to retain sufficient independent facts to survive preemption by CUTSA."  (9/3/09 Order, Doc. No. 35, at 18.)

Following a second motion to dismiss, Gabriel's operative complaint (the Fourth Amended Complaint) contained four causes of action: a claim for breach of the 2006 License Agreement, a claim for correction of inventorship, a claim for a declaration of ownership of the patents-in-suit, and a claim for misappropriation of trade secrets.  (Fourth Amended Complaint, Doc. No. 53, ¶¶ 131-157.)  On September 27, 2011, Defendants moved for summary judgment as to the breach of contract and trade secrets claim.  The basis for the motion included the argument that the claims were barred by the applicable statute of limitations.

On March 13, 2012, the Court issued its Order on the motion for summary judgment.  The Court granted the motion, in part.  The Court found that the misappropriation claim was barred by the statute of limitation.  (3/13/2012 Order, Doc. No. 252, pp. 15, 22.)  With respect to the breach of contract claim, the Court noted that Gabriel had identified six alleged bases for the claim:  (1) that Defendants took ownership of Locate's patents, trade secrets, copyrights, and other Intellectual Property Rights; (2) took and destroyed Locate's joint ownership interest in Program Technology; (3) failed to maintain the confidentiality of Locate's trade secrets and other confidential and proprietary information; (4) failed to establish a process for identifying all Program Technology Intellectual Property Rights; (5) failed to establish a process for determining which intellectual property filings to make with respect to such Program Technology; and (6)

filed patent applications and patents without listing Locate as an assignee or Locate personnel as inventors. (3/13/2012 Order, Doc. No. 252, p. 15.) The Court granted summary judgment as to grounds 2, 3, 4, and 5 in their entirety, either because they were time barred or because Gabriel failed to perform its obligations under the License Agreement. (3/13/2012 Order, Doc. No. 252, pp. 17, 20.) With respect to grounds 1 and 6, the Court granted the motion to the extent they were based on the misappropriation of Gabriel's alleged trade secrets, but denied it to the extent the two grounds were based on the taking and patenting of any other intellectual property. (3/13/2012 Order, Doc. No. 252, pp. 15, 17, n.29.) The Court did not have before it facts showing that Gabriel has never identified any other intellectual property that it contends the Defendants took and patented. As demonstrated below, given the positions Gabriel has taken throughout this case, the Court's summary judgment Order leaves nothing to Gabriel's breach of contract claim.

### III. ARGUMENT.

#### A. Plaintiffs Have No Remaining Basis for the Breach of Contract Claim and Are, Therefore, Not Entitled to Any Remedy.

In its summary judgment Order, the Court found that the breach of contract claim cannot be based on the alleged taking and patenting of Locate's alleged trade secrets. (3/13/2012 Order, Doc. No. 252, p. 15, 17, n.29.) Instead, Gabriel must base its breach claim on the alleged taking and patenting of some other intellectual property. As Gabriel has never done so, it cannot prove a breach of the License Agreement and is not entitled to any remedy.

##### 1. Judge Anello Previously Found That Plaintiffs' Case Is Based "As A Whole" on Trade Secret Misappropriation.

Since the beginning of this case, Gabriel's sole assertion has been that Defendants took and patented Locate's alleged trade secrets. Indeed, that was Judge Anello's conclusion and the reason that he dismissed the unjust enrichment and other claims on trade secret preemption. Specifically, in the Order on the motion to dismiss, Judge Anello found that "[t]he FAC as a whole rests on factual allegations of trade secret misappropriation. If the 'trade secret' facts are

removed from claims four, nine, ten and eleven, the claims fail to retain sufficient independent facts to survive preemption by CUTSA." (9/3/09 Order, Doc. No. 35, at 18.) Despite almost three years to do so, Gabriel has not provided any facts to refute Judge Anello's conclusion.

### 2. Gabriel's Discovery Responses Confirm that The Breach of Contract Claim is Based Solely on Alleged Trade Secret Misappropriation.

Judge Anello's finding that all of Plaintiffs' claims relied on the alleged misappropriation of trade secrets was correct—as Gabriel has since confirmed in sworn interrogatory responses and sworn affidavits submitted by its purported expert witnesses. On August 18, 2010, Qualcomm served the following interrogatory on Gabriel:

> Separately for each trade secret YOU have identified in YOUR operative C.C.P. 2019.210 Trade Secret Identification, IDENTIFY each act YOU allege constitutes an act of misappropriation by any defendant in this matter.

(Qualcomm's Third Set of Interrogatories to Gabriel, Interrogatory No. 22.) Gabriel served its response to that Interrogatory on September 17, 2010. In its response, which it has not supplemented, Gabriel asserts that the "preparation" of each application that resulted in the six remaining patents was an act of misappropriation of trade secrets. Gabriel also asserted that the "filing" of each application that resulted in the six remaining patents was an act of misappropriation of trade secrets. Gabriel asserted that the "publication" of each application that resulted in the six remaining patents was an act of misappropriation of trade secrets. Finally, Gabriel asserted that the "publication" of each of the six remaining patents was an act of misappropriation of trade secrets. (Gabriel's Response to Qualcomm's Third Set of Interrogatories, Interrogatory No. 22.) This response leaves no doubt that Gabriel alleges that the Defendants took and patented Locate's purported trade secrets—facts that can no longer support the breach of contract claim.

In the same third set of interrogatories, Qualcomm also requested that "[s]eparately for each trade secret [Gabriel] has identified in YOUR operative C.C.P. 2019.210 Trade Secret Identification, IDENTIFY each patent and/or patent application you allege resulted in misappropriation of some or all of that trade secret, including without limitation each specific

portion of the IDENTIFIED patent or published patent-application corresponding to that trade secret." (Qualcomm's Third Set of Interrogatories to Gabriel, Interrogatory No. 23.)  In its response, Gabriel asserts as follows:

- That Qualcomm included Gabriel's purported trade secrets 1, 3, 10 and 11 in "All Claims" of the '277 patent.

- That Qualcomm included Gabriel's purported trade secrets 3, 10 and 11 in "All Claims" of the application that resulted in the '639 patent.

- That Qualcomm included Gabriel's purported trade secret 5 in "All Claims" of the '050 patent.

- That Qualcomm included Gabriel's purported trade secrets 2, 7 and 8 in "All Claims" of the '249 patent.

- That Qualcomm included Gabriel's purported trade secret 9 in "All Claims" of the '195 patent.

- That Qualcomm included Gabriel's purported trade secret 11 in "All Claims" of the '958 patent.

(Gabriel's Response to Qualcomm's Third Set of Interrogatories, Interrogatory No. 23.)  Once again, Gabriel has confirmed, in sworn interrogatory responses, that the basis for its breach of contract claim is an allegation that Defendants have taken and patented Gabriel's alleged trade secrets.

Even after the Court dismissed the trade secrets claim, Gabriel has continued to assert that the patents-in-suit contain Gabriel's trade secrets.  Gabriel had previously provided interrogatory responses in which it identified each alleged inventive contribution made to the patents-in-suit by an allegedly omitted inventor.  Simultaneously, Defendants served an interrogatory requiring Gabriel to identify documents that evidenced the alleged inventive contributions.  In its response identifying documents, Gabriel incorporated by reference its entire September 6, 2011 trade secret designation.  (Plaintiffs' Third Supplemental Responses and Objections to Defendants First Set of Interrogatories, Interrogatory No. 2, p. 8.)  Then, for each of the alleged contributions made to the six remaining patents, Gabriel cited to specific portions of that trade secret designation. (Plaintiffs' Third Supplemental Responses and Objections to Defendants First Set of Interrogatories, Interrogatory No. 2, pp. 9-16.)  Gabriel would not have cited the trade secret

designation as supportive of the alleged inventive contributions if those contributions did not include Gabriel's purported trade secrets.

### 3. Gabriel Has Submitted Sworn Affidavits Asserting That the Six Remaining Patents Contain Locate's Purported Trade Secrets.

Finally, when it filed its motion arguing that one of its early trade secret designations was sufficient, Gabriel submitted sworn affidavits from three purported experts. (*See* Declarations of Dr. Anant Sahai, Dr. Nenad Medvidovic, and Dr. David Garlan, filed January 10, 2012.)  Each of those purported experts testified that the remaining patents-in-suit included Gabriel's alleged trade secrets.  (Decl. of Dr. Anant Sahai, ¶¶ 53, 62, 67; Decl. of Dr. David Garlan, ¶ 76; Decl. of Dr. Nenad Medvidovic, ¶¶ 46, 54, 59, 63, 68, 74, 87.)

Gabriel's own admissions in sworn discovery responses or affidavits confirms what Judge Anello found—that Gabriel's entire case is based on Defendants' alleged taking and patenting of Locate's purported trade secrets.  Indeed, Gabriel has not and cannot now contend that the breach of contract claim is based on the taking and patenting of something else.  When specifically requested, through another interrogatory, to identify all "intellectual property YOU allege that DEFENDANTS took and patented, or attempted to patent as their own," Gabriel simply incorporated by reference its discovery responses regarding its alleged inventive contributions (discussed above) and its trade secrets designation.  (Plaintiffs' Third Supplemental Responses and Objections to Defendants First Set of Interrogatories, Interrogatory No. 10.)  Gabriel never identified any copyrights or "other Intellectual Property Rights" that Defendants allegedly took and patented.  The Court did not have before it these facts when it ruled on Defendants' summary judgment motion and thus, absent that evidence, the Court could not determine whether anything remained of the breach of contract claim.  Now, however, it is clear that Gabriel has no basis remaining for its breach of contract claim.

### B. Gabriel's Argument that Defendants Misappropriated Its "Inventorship Rights" Does Not Entitle It To An Unjust Enrichment Remedy.

In its supplemental brief, Gabriel seems to recognize the impact of the Court's prior Orders on its breach of contract claim.  Gabriel makes virtually no attempt to explain, let alone

support with evidence, what it bases its breach of contract claim on besides the alleged trade secret misappropriation. Gabriel's only statement on this point is that "Plaintiffs allege that they had certain inventorship rights by reason of having invented specified technological subject matter and improvements relating to wireless-assisted GPS location devices." (Plaintiffs' Supplemental Brief, Doc. No. 272, at p. 2.) Gabriel's assertion that Defendants took "inventorship rights"—whatever that means—does not save the breach of contract claim or entitle Gabriel to an unjust enrichment remedy.[2]

First, Gabriel did not cite a single case that recognizes "inventorship rights" as an "intellectual property right" that is afforded any protection, either contractual or otherwise. Indeed, unlike the proprietary information in *Ajaxo, Inc. v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21 (Cal. Ct. App. 2005), it is hard to imagine how an "inventorship right"—rather than the invention itself—could be a property right. A party cannot buy, sell, assign, license, or even use an "inventorship right."

Second, even if Gabriel could base its breach of contract claim on the alleged taking of "inventorship rights," Gabriel would not be entitled to an unjust enrichment remedy. Cases that recognize a potential unjust enrichment remedy for failing to identify the correct inventor hold that the unjust enrichment must be directly tied to the alleged wrongful conduct. (Joint Motion for Resolution of Discovery Dispute, No. 266, Plaintiffs' Opening Brief, p. 7 (quoting *University of Colorado Foundation, Inc. v. Am. Cyanamid Co.,* 342 F.3d 1298, 1311-12 (Fed. Cir. 2003)).) Here, Defendants have not been unjustly enriched because they allegedly took "inventorship rights." Defendants have never licensed "inventorship rights" to third parties. No third party has paid royalties for bare "inventorship rights." Instead, Defendants have licensed patents and the claimed inventions in those patents. As demonstrated above, Gabriel alleges that all of the patent claims in the remaining six patents contain its trade secrets. As the Court has precluded Gabriel

---

[2] It appears that Gabriel is attempting to circumvent the impact of the Court's summary judgment Order by asserting that Defendants were unjustly enriched by taking and licensing Plaintiffs' "inventorship rights" rather than the inventions themselves—inventions that are alleged to contain Gabriel's purported trade secrets.

from asserting a breach of contract claim based on the alleged misappropriation of trade secrets, Gabriel is not entitled to unjust enrichment.

### C. Gabriel Is Not Entitled to Any Other Contract Damages.

Although unclear, it does not appear that Gabriel is requesting compensatory damages for the alleged breach of contract, and rightfully so. Compensatory damages on a breach of contract claim are intended to place the parties in the position they would have been in had the contract been fully performed. Cal. Civ. Code § 3358. Here, Gabriel cannot prove compensatory damages.

Recent discovery has confirmed that neither Locate nor Gabriel believed that Qualcomm had an obligation to apply for, prosecute or pay for patents solely invented by Locate. If Locate wanted to patent its solely owned ideas, it had the sole obligation to do so. Recent discovery has also confirmed that neither Locate nor Gabriel sought patent protection for the inventions claimed in the six remaining patents. To the contrary, Locate let the only patent applications that it did file to go abandoned. If Qualcomm never applied for the patents in dispute—as Gabriel claims the License Agreement required—Gabriel would be in the exact same position that it is in today, with no patents and no licensing revenue. Thus, Gabriel cannot contend that it lost anything as a result of Qualcomm's alleged failure to comply with the terms of the License Agreement. In fact, granting Gabriel the relief it seeks would provide Gabriel with a windfall—patents that it never expected to obtain and licensing revenue that it never expected or sought.

### IV. CONCLUSION.

As demonstrated above, Gabriel's breach of contract claim is based entirely on Defendants' alleged taking and patenting of Gabriel's purported trade secrets. But the Court has already held that such conduct cannot form the basis for the breach claim. In a half-hearted effort to avoid the Court's prior Orders, Plaintiffs instead claim that Defendants took their "inventorship rights." Even if true, which it is not, Plaintiffs are not entitled to an unjust enrichment remedy for the alleged taking of "inventorship rights"—rights that Defendants have never licensed and from

1  which they have never benefitted.  As nothing remains of the breach of contract claim, Gabriel is
2  not entitled to any remedy for the alleged breach of contract.

4  Dated: July 2, 2012                    RESPECTFULLY SUBMITTED,
5                                          COOLEY LLP

7                                          */s/ Jeffrey S. Karr*
                                           STEVEN M. STRAUSS (sms@cooley.com)
8                                          JOHN S. KYLE (jkyle@cooley.com)
                                           TIMOTHY S. TETER (teterts@cooley.com)
9                                          JEFFREY S. KARR (jkarr@cooley.com)
                                           Attorneys for Defendants

COOLEY LLP
ATTORNEYS AT LAW

10.

DEFENDANTS' SUPPLEMENTAL BRIEF RE
CONTRACT REMEDIES
CASE NO. 08-CV-1992 AJB MDD