1  CHAPIN FITZGERALD LLP
       Kenneth M. Fitzgerald, Esq. (SBN: 142505)
2      kfitzgerald@cftriallawyers.com
       Robert G. Knaier, Esq. (SBN: 234466)
3      rknaier@cftriallawyers.com
       Keith M. Cochran, Esq. (SBN: 254346)
4      kcochran@cftriallawyers.com
5  550 West "C" Street, Suite 2000
   San Diego, California  92101
6  Tel:  (619) 241-4810
   Fax:  (619) 955-5318
7
8  Attorneys for Plaintiffs
   Gabriel Technologies Corporation
9  and Trace Technologies, LLC

10

11

12

| | |
|---|---|
| 13 | **UNITED STATES DISTRICT COURT** |

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 13 | GABRIEL TECHNOLOGIES CORPORATION and TRACE | ) Case No.:   08-CV-1992 AJB (MDD) |
| 14 | TECHNOLOGIES, LLC | ) Assigned To:  Hon. Anthony J. Battaglia |
| 15 | | ) Courtroom:    12, 2nd Floor |
| 16 | Plaintiffs, | ) **PLAINTIFFS' OPPOSITION TO** |
| 17 | v. | ) **DEFENDANTS' MOTION FOR** |
| | | ) **ATTORNEYS' FEES** |
| 18 | QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN | ) |
| 19 | KRASNER | ) Time:     2:00 p.m. |
| | | ) Date:     January 17, 2013 |
| 20 | Defendants. | ) |
| 21 | | ) Action Filed:  October 24, 2008 |

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2  I.    INTRODUCTION ................................................................................................1

3  II.   FACTS ................................................................................................................3

4        A.    Plaintiffs File this Suit Based on the Parties' Two Licensing
              Agreements ..............................................................................................3

5
6        B.    In Support of Their Bond Motion, Defendants Mischaracterize E-mails
              Written by Former Gabriel Representatives .............................................3

7        C.    Defense Counsel Repeatedly States at the Bond Hearing that Plaintiffs
              Would Post a Bond Only "*If It Is a Real Case*"......................................5
8
9        D.    Judge Dembin Tentatively Rules that Plaintiffs Articulated Their
              Trade Secrets with Sufficient Particularity Under Section 2019.210 ......6

10       E.    In Support of Their Motion for Partial Summary Judgment,
              Defendants Rely on the Incorrect Suspicions of a Former Locate
11            Employee, and Selectively Rely on the Testimony of a Former Gabriel
12            Employee ..................................................................................................7

13       F.    The Court Grants Partial Summary Judgment on Plaintiffs' Trade
              Secrets Claim Based on Defendants' Shifting Statute-of-Limitations
14            Arguments ................................................................................................8

15       G.    The Court Grants Summary Judgment on Plaintiffs' Inventorship
              Claims, Finding that Plaintiffs Changed Their Contentions Regarding
16            Inventorship and Failed to Support Those Contentions with "Clear and
17            Convincing Evidence" ..............................................................................9

18  III.  ARGUMENT ......................................................................................................9

19       A.    Attorneys' Fee Awards Under the Patent Act Are Rare, and Reserved
              for Exceptional Cases ..............................................................................9
20
21       B.    Defendants Have Not Presented Clear and Convincing Evidence
              Demonstrating that this Litigation Is "Exceptional" Under the Patent
              Act.........................................................................................................10
22
23             1.    Defendants' complaints of litigation misconduct are unfounded ........10

24                   a.    Filing affidavits that explain prior testimony is not
                           litigation misconduct................................................................11
25                   b.    Revising discovery responses does not constitute
26                         litigation misconduct................................................................13

27                   c.    Plaintiffs did not grant a contingent interest in the
                           litigation to a percipient witness in exchange for
                           testimony................................................................................14
28

- i -

d.      A "biased" amicus brief does not constitute litigation misconduct ...................................................................14

e.      Narrowing patent claims is encouraged by the Federal Circuit and does not constitute litigation misconduct...................15

f.      Plaintiffs truthfully stated to Judge Anello at the bond hearing that Gabriel relocated its corporate headquarters to San Francisco, CA .................................................................15

g.      Filing an amended complaint without leave does not constitute litigation misconduct.....................................16

2.   Defendants cannot show by clear and convincing evidence that the litigation was objectively baseless and brought in bad faith...............16

C.   Defendants Cannot Recover Fees Under CUTSA, Because Plaintiffs Asserted a Meritorious Trade Secrets Claim and Prosecuted the Action in Good Faith .............................................................................19

1.   Plaintiffs' trade secrets claim was not "objectively specious" .................19

a.      Not sufficiently articulating a trade secret for discovery purposes under Section 2019.210 does not constitute objective speciousness .................................................................20

b.      The Court did not make a merits determination on Plaintiffs' trade secrets claim............................................20

c.      The Court's ruling that certain of Plaintiffs' claims were time-barred does not show that those claims were specious.............................................................................21

d.      The authorities do not support an award of fees ...........................22

2.   Plaintiffs pursued their trade secrets claim in good-faith .........................23

D.   The Court May Deny an Award of Attorneys' Fees Even in Exceptional Cases ..........................................................................25

V.   CONCLUSION............................................................................................25

- ii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*In re Acacia Media Techs. Corp.*,
  2010 WL 2179875 (N.D. Cal. May 25, 2010) ...................................................................11

*Agency Solutions.com, LLC v. TriZetto Group, Inc.*,
  2012 WL 2358636 (E.D. Cal. June 20, 2012) .............................................................23, 24

*Alamar Biosciences, Inc. v. Difco Labs., Inc.*,
  40 U.S.P.Q. 2d 1437 (E.D. Cal. 1996)............................................................................21

*Aptix Corp. v. Quickturn Design Sys., Inc.*,
  269 F.3d 1369 (Fed. Cir. 2001).......................................................................................13

*Betta Prods. v. Transglobal Communs.*,
  2007 WL 4570368, No. C 05-02273 CRB (N.D. Cal. Dec. 26, 2007) ...................................20

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005)..................................................................................16, 17

*Chiron Corp. v. Sourcecf Inc.*,
  2006 WL 2034625 (N.D. Cal. Jun. 16, 2006) .....................................................................15

*CRST Van Expedited, Inc. v. Werner Enters., Inc.*,
  479 F. 3d 1099 (9th Cir. 2007) .......................................................................................22

*Cybor Corp. v. PAS Techs., Inc.*,
  138 F.3d 1448 (Fed. Cir. 1998).........................................................................................9

*Dominant Semiconductors Sdn. Bnd. v. Osram GmbH*,
  524 F.3d 1254 (Fed. Cir. 2008)..................................................................................17, 18

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011).......................................................................................10

*e-Smart Techs., Inc. v. Drizin*,
  2011 WL 2837400, No. C 06-05528 MHP (N.D. Cal. July 18, 2011) .............................24, 25

*FLIR Sys. Inc. v. Parrish*,
  174 Cal. App. 4th 1270 (2009) ..............................................................................19, 22, 23

*Forcier v. Microsoft Corp.*,
  123 F. Supp. 2d 520 (N.D. Cal. 2000) .............................................................................21

*Forest Labs., Inc. v. Abbott Labs.*,
  339 F.3d 1324 (Fed. Cir. 2003).........................................................................................9

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005) ...................................................................................................21

*Gemini Aluminum Corp. v. California Custom Shapes, Inc.*,
  95 Cal. App. 4th 1249 (2002) ..............................................................................19, 20, 22, 24

- iii-

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
    558 F.3d 1380 (Fed. Cir. 2009)..................................................................10

*iLOR, LLC v. Google Inc.*,
    631 F.3d 1372 (Fed. Cir. 2011)........................................................9, 10, 17

*Javelin Investments, LLC v. McGinnis*,
    2007 WL 781190 (S.D. Tex. Jan. 23, 2007) ..........................................12

*Knorr-Bremse System Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
    372 F. Supp. 2d 833 (E.D. Va. 2005) .........................................................9

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)....................................................................10

*Mentor Graphics Corp. v. Quickturn Design Sys.*,
    2003 U.S. Dist. LEXIS 16197 (N.D. Cal. July 30, 2003).......................13

*Messick v. Horizon Indus.*,
    62 F.3d 1227 (9th Cir. 1995) ......................................................................11

*Mintz v. Dietz & Watson, Inc.*,
    2010 WL 4818183 (S.D. Cal. Nov. 9, 2010) .........................................13

*National Presto Indus. v. West Bend Co.*,
    76 F.3d 1185 (Fed. Cir. 1996).....................................................................25

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    399 F. Supp. 2d 1064 (N.D. Cal. 2005) .................................................19

*Pixion, Inc. v. Placeware, Inc.*,
    2005 WL 3955890 (N.D. Cal. Apr. 22, 2005) .................................2, 20

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
    360 F.3d 1295 (Fed. Cir. 2004)..................................................................15

*Qualcomm Inc. v. Broadcom Corp.*,
    2010 WL 1336937 (S.D. Cal. Apr. 2, 2010)......................................10, 11

*Reiffin v. Microsoft Corp.*,
    2011 WL 2470132 (N.D. Cal. June 21, 2011) ...................................2, 13

*SASCO v. Rosendin Elec., Inc.*,
    207 Cal. App. 4th 837 (2012) ....................................................................19

*Trivitis, Inc. v. Ocean Spray Cranberries, Inc.*,
    2012 WL 3647976 (S.D. Cal. Aug. 23, 2012) .......................................17

*Union Pacific Resources Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001).................................................................2, 15

*Van Asdale v. Int'l Game Tech.*,
    577 F.3d 989 (9th Cir. 2009) .................................................................1, 11

- iv-

**Statutes and Rules:**

35 U.S.C. § 285 ............................................................................................... passim

Cal. Civ. Code § 3426.4 .................................................................................19, 20

California Civil Procedure Code § 1030 ..................................................................6

California Civil Procedure Code § 2019.210 .....................................................6, 20

# I.   INTRODUCTION

Attorneys' fee awards under the Patent Act and Uniform Trade Secrets Act are rarely granted, and are only to be granted in exceptional cases.  This is not one of those cases.  Nevertheless, based on repeatedly mischaracterized evidence, selectively chosen testimony, complaints about commonplace events in the evolution of any litigation, and a dearth of legal support, defendant Qualcomm Incorporated ("Qualcomm")—one of the largest and wealthiest technology firms in the world—boldly asks this Court to bankrupt plaintiff Gabriel Technologies Corporation ("Gabriel") and effectively destroy its appellate rights, through an award of over $13 million in attorneys' fees.  Neither the Patent Act nor the California Uniform Trade Secrets Act ("CUTSA") supports such a dramatic sanction under the facts of this case.

Defendants bear a heavy burden to meet the standard for this extraordinary penalty.  Under the Patent Act, Defendants must demonstrate by *clear and convincing* evidence that Plaintiffs committed litigation misconduct, or that Plaintiffs' claims were objectively baseless *and* brought in bad faith.  Similarly, under CUTSA, Defendants must show that Plaintiffs' claims were objectively specious, in that they were unsupported by *any* evidence and were brought or maintained with subjective bad faith.  Defendants fail to meet this burden.

The record simply does not supply clear and convincing evidence of litigation misconduct, as demonstrated by the following undisputed facts:

- Defendants never sought or obtained sanctions under Rule 11;

- At no time did the Court sanction Plaintiffs;

- Defendants never contended that Plaintiffs failed to participate in discovery, e.g., Defendants filed no motions to compel further discovery;

- At no time did the Court find that Plaintiffs engaged in "misconduct."

Ignoring these objective indicators of good faith, Defendants identify seven purported instances of litigation misconduct—each of which lacks a legal basis under the case law explaining what is, and what is not, litigation misconduct.  Specifically, Defendants contend as follows:

(1)   Plaintiffs filed sham affidavits.  However, parties are entitled to submit affidavits that explain or correct prior testimony.  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 999 (9th Cir. 2009).

- 1-

(2)     Plaintiffs revised their discovery responses.  But courts have rejected this argument in declining to award fees under the Patent Act.  *See Reiffin v. Microsoft Corp.*, 2011 WL 2470132, at *3-4 (N.D. Cal. June 21, 2011).

(3)     Plaintiffs granted a contingent interest in the litigation to a percipient witness in exchange for testimony.  This inflammatory statement is false.

(4)     Plaintiffs attempted to file a "biased" *amicus* brief.  This argument has no legal support, and Defendants fail to explain how filing such a brief is improper.

(5)     Plaintiffs initially asserted claims on 92 patents before narrowing their claims. But the law is clear that a patentee should be *encouraged*, not penalized, for narrowing the issues and claims during the course of litigation.  *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 694 (Fed. Cir. 2001).

(6)     Plaintiffs misled the Court at the bond hearing by arguing they relocated their headquarters.  But Gabriel's website and Securities and Exchange Commission filings have reflected the relocation for years.  Thus, this accusation is false.

(7)     Plaintiffs filed a Fifth Amended Complaint without first filing a motion for leave to amend.  But the Court found that this was a mistake under the scheduling order and that "Plaintiffs' noncompliance appear[ed] to be inadvertent."

Defendants also cannot show, under the Patent Act or CUTSA, that this case was objectively baseless.  Indeed, several of Plaintiffs' claims survived Defendants' pleading challenges, and Judge Anello noted at a September 2010 hearing that this fact "may suggest some of the claims are not frivolous[.]"  Dkt. 109 at 5:8-10.  Further, after Plaintiffs voluntarily amended their trade secret designations numerous times to respond to Qualcomm's persistent attacks on their adequacy, Judge Dembin noted that the issue was a close call, and that in his "preliminary analysis," at least one of Plaintiffs' designations seemed to "make[] sense[.]" Dkt. 193 at 14:20-23.  Judge Dembin ultimately held that, for *discovery* purposes, Plaintiffs' designations were not sufficient, but courts do not award fees on this basis.  *Pixion, Inc. v. Placeware, Inc.*, 2005 WL 3955890, at *2-3 (N.D. Cal. Apr. 22, 2005).

Finally, Defendants cannot show that Plaintiffs lacked subjective good faith.  Indeed, good faith is demonstrated by Plaintiffs' posting of *an $800,000 bond* to further pursue this case.  Defendants repeatedly insisted at the bond hearing that Plaintiffs would post a substantial bond only if they believed their case had merit: "*if it's a real case*, they can post a sizable bond, your honor."  Dkt. 109 at 49:15-16.  This was a "real case," and Plaintiffs believed as much. While unsuccessful, Plaintiffs reasonably pursued this case in good faith.  Defendants' punitive attempt to grab the brass ring of $13 million in fees should therefore be denied.

- 2-

## II.    FACTS

**A.    Plaintiffs File this Suit Based on the Parties' Two Licensing Agreements**

Gabriel is a publicly-traded company that, until May 2009, developed and marketed a series of physical locking systems for the transportation and shipping industries, collectively known as the WAR-LOK^TM Security System.  Tingo Dec. ¶ 2.  Plaintiff Trace Technologies, LLC ("Trace") was formed to develop location based services to enable customers to track assets and personnel worldwide.  *Id.* ¶ 3. Plaintiffs are not "patent trolls" and have never bought intellectual property in order to file suit.  *Id.*

This action arose out of technology licenses and joint ventures between Plaintiffs (and their predecessor) and Defendants. Based on access to Locate's technology through the license agreements, and based on the similarity between Locate's novel aGPS methods and the inventions described in Defendants' patent applications, Plaintiffs believed that Defendants misappropriated their trade secrets and used them to file and obtain numerous patents.  *Id.* ¶ 4.

Plaintiffs filed suit in October 2008, alleging eleven causes of action. Four of Plaintiffs' claims survived Defendants' pleading challenges.  Dkt. 5, 48.  At a September 2010 hearing, Defendants requested that Plaintiffs post a bond.  Judge Anello was satisfied that Defendants had shown a "reasonable possibility of success on the merits," and thus required a sizeable bond.  Dkt. 110, at 22:1-2, 12-13.  But in doing so, Judge Anello also commented that "the fact that at least four claims have survived this far, a couple of years down the road, may suggest some of the claims *are not frivolous*, right?"  Dkt. 109 at 5:8-10 (emphasis added).  At no point did the Court conclude that Plaintiffs' claims were brought in bad faith.

**B.    In Support of Their Bond Motion, Defendants Mischaracterize E-mails Written by Former Gabriel Representatives**

In support of their September 2010 bond request, Defendants submitted e-mails written by former Gabriel board member John Hall and former Gabriel employee Allan Angus. Defendants rely on these e-mails again here.  For example, Defendants repeatedly refer to a January 2010 e-mail that Mr. Hall wrote, in which he stated "we have no case[,] [j]ust a lot of talk."  Mot. at 1:24-25, 4:19-20.  Defendants also refer to a December 2009 e-mail written by

- 3-

1    Mr. Angus, in which he states that "the real value was never there anyway," and that "[t]he real

2    value was always going to be, in the fight."  *Id.* at 4:21-26. Defendants argued at the bond

3    hearing, and again here, that these emails show Gabriel lacked a belief in the merits of its case.

4    However, Defendants take these sound bites out of context, and misrepresent their meaning.

5        Mr. Hall's January 2010 e-mail did not reflect a belief that this lawsuit lacked merit.

6    Hall Dec. ¶ 3.  Rather, it reflected frustration with Munck Carter LLP, Plaintiffs' previous law

7    firm.  *Id.*  By January 2010, Munck Carter had withdrawn from representing Plaintiffs (due to a

8    conflict among Gabriel's old and new Board), and Plaintiffs had not retained new counsel.  *Id.*

9    Plaintiffs also were attempting to raise litigation funds.  *Id.*  They thus requested that Munck

10   Carter provide them with relevant documents so that they could present information about the

11   case to prospective law firms and investors.  *Id.*  As Mr. Hall's e-mail stated, however, "Munck

12   Carter never produced the materials the board requested[.]"  *Id.*; *see also* Tingo Dec. ¶ 7.

13       Munck Carter's failure to provide Plaintiffs with these materials caused Mr. Hall great

14   concern.  Hall Dec. ¶ 4.  He found it "[u]nexplainable" and outrageous.  *Id.*  Munck Carter had

15   left Plaintiffs without the means to secure representation and funding.  *Id.*  As Mr. Hall noted,

16   Plaintiffs were "looking for financing, a new law firm, but with what[?]  The cupboard [was]

17   bare."  *Id.*  Plaintiffs were without the "most important documents and the narrative that

18   supports the case."  *Id.*  They were "undertaking this huge task with no money, limited

19   resources, and no time due to Munck's [conduct]."  *Id.*  With no ability to show law firms and

20   investors the material they requested, Mr. Hall worried that nobody would be willing to "invest

21   a dime."  *Id.*  Thus, in writing "we have no case[,] [j]ust a lot of talk," he expressed his

22   frustration over the inability to show law firms and investors evidence that they *did* have a case.

23   *Id.*  Indeed, Mr. Hall believed at that time, and continues to believe, that Plaintiffs had

24   evidentiary support for its claims against Defendants, and that those claims were valid.  *Id.*[1]

25

26   _____

27   [1]   Mr. Hall's e-mail is sufficiently distorted as to be rendered misleading and prejudicial—and
      thus inadmissible. S*ee* Plaintiffs' Evidentiary Objections in Support of Opposition to
28   Defendants' Motion for Attorneys' Fees, filed herewith ("Evid. Obj.") at Nos. 3 & 4.  The
      Court should thus disregard it in ruling on the present motion.

- 4-

1     Similarly, Mr. Angus testified that his December 2009 e-mail was not meant to suggest

2   that he believed Plaintiffs' case had no merit.  Rather, it reflected his belief that without his

3   expertise—he no longer worked for Plaintiffs at the time[2]—the value of Plaintiffs' case

4   suffered.  This was what he meant in discussing the "real value" in the case.  Fitzgerald Dec.,

5   Ex. 2 at 356:22 – 360:6.  For example, Mr. Angus explained that "the folks at Gabriel," lacking

6   his expertise, "were a group of businesspeople who . . . wouldn't have been able to come to an

7   assessment about what [a given patent document] was . . . relevant to in the case."  *Id.* at 359:4-

8   9.  Further, in stating "the real value [was] always going to be in the fight," he meant that

9   obtaining value for Plaintiffs would require negotiating with Defendants.  Fitzgerald Dec., Ex.

10  1 at 158:9 – 160:20.  In other words, Mr. Angus's testimony explains that his December 2009

11  e-mail was not meant to disparage the value of Plaintiffs' case, but rather to indicate that he

12  believed his technical knowledge and negotiating skills were key to realizing that value.

13  **C.     Defense Counsel Repeatedly States at the Bond Hearing that Plaintiffs Would Post
14          a Bond Only "*If It Is a Real Case*"**

15     At the beginning of the September 2010 bond hearing, Judge Anello tentatively ruled

16  that Plaintiffs would be required to post a bond of $100,000 - $150,000.  Dkt. 110 at 23:2-3; *see*

17  *also* Dkt. 109 at 5:14-21.  Defendants strongly objected to a bond in this range, arguing that the

18  Court ultimately would deem the case "exceptional" under 35 U.S.C. § 285, and thus that they

19  would be entitled to substantial attorneys' fees.  Further, they argued that a larger bond should

20  be required so that "we end this case."  Dkt. 109 at 28:18-19.  In support of their argument,

21  Defendants relied, in part, on the mischaracterized e-mails described above (*see, e.g.*, *id.* at

22  21:7 – 25:2)—and requested an unprecedented bond amount of $2.9 million.

23     Indeed, the amount of the bond was the subject of much discussion at the hearing.

24  Defendants repeatedly argued that Plaintiffs would post a large bond only "if it is a real case":

25          And so my point . . . is to try and persuade you to issue a more significant bond because
26          again, ***if it is a real case***, they'll post it.  If it's not, it should end now because . . . what

---

27  [2]   Mr. Angus's e-mail also is inadmissible and thus should be disregarded.  In addition to
28         being used in a misleading and prejudicial way, it is *hearsay*.  *See* Evid. Obj. at No. 5.

1   1030 envisions is that if the bond can't be posted, the case gets dismissed.

2   Dkt. 109 at 10:9-14 (emphasis added); *see also id.* at 11:12 ("And again, ***if it's a real case***,

3   they'll be able to post it."); 28:20-21 ("We ask that bond be issued, knowing, again I'm being

4   forthright, knowing they can't post it so that we end this case.  Again, ***if it's a real case***, they'll

5   find a source to post it."); 49:13-16 ("To prevent a frivolous suit and to prevent it from going

6   forward and I end where I began, ***if it's a real case***, they can post a sizable bond, your honor.").

7   Judge Anello ultimately held—after Defendants' slanted presentation of the evidence—

8   that although "the Court does not decide whether this case will ultimately be deemed

9   'exceptional,'" Plaintiffs would be required to post an $800,000 bond.  *Id.* at 24:1-5.  Plaintiffs

10  then posted the $800,000 bond.  Dkt. 121.  As Defendants conceded, this was "a real case."

11  **D.   Judge Dembin Tentatively Rules that Plaintiffs Articulated Their Trade Secrets**
12       **with Sufficient Particularity Under Section 2019.210**

13  In an effort to work cooperatively with Qualcomm, Plaintiffs voluntarily amended their

14  trade secret designations four times before moving, under section 2019.210 of the California

15  Code of Civil Procedure ("Section 2019.210"), to compel discovery Qualcomm had refused.

16  Declaration of Peter A. Sullivan, filed in support of Hughes Hubbard's Opposition to

17  Defendants' Motion ("Sullivan Dec."), ¶ 30.  At the September 2011 hearing on that motion,

18  Judge Dembin noted that Plaintiffs were very close to articulating their trade secrets claim:

19  "I've read your trade secret designation number one and I think I understand what it is. . . . ***this***

20  ***one makes sense to me***."  Dkt. 193 at 13:12-14:9 (emphasis added); *see also id.* at 12:14-20 ("I

21  think you're in good shape[.]"); 14:20-23 ("Trade Secret 1 makes sense to me."); 41:19-22

22  ("[Y]ou have at least made me think that you've crossed the barrier . . . with Trade Secret 1.").

23  Judge Dembin then ordered post-hearing briefing.  Dkt. 192.  Ultimately, he ruled that

24  Plaintiffs' trade secret designation was not sufficient, and that Plaintiffs were not allowed to

25  conduct discovery related to their trade secrets claim.  But the Court *did not* rule on the merits

26  of that claim.  Nor did it make any findings of litigation misconduct.

27  / / /

28  / / /

**E.** **In Support of Their Motion for Partial Summary Judgment, Defendants Rely on the Incorrect Suspicions of a Former Locate Employee, and Selectively Rely on the Testimony of a Former Gabriel Employee**

In March 2012, the Court granted Defendants' Motion for Partial Summary Judgment, in part. Dkt. 252. The Court determined that Plaintiffs' trade secrets claim was "time barred if Plaintiffs suspected wrongdoing on or before December 17, 2004" (*id.* at 8:1-2), and found that Plaintiffs suspected such wrongdoing in either January 2003 or mid-2004 (*id.* at 8:12 – 15:7). In doing so, the Court relied on a statement made by former Locate Chief Technology Officer William Clise, and testimony of former Gabriel employee Maurice Shanley. Defendants again rely on this evidence here, contending that these witnesses made "smoking gun admissions" with regard to events triggering the statute of limitations, thus leaving Plaintiffs' claims "doomed." Mot. at 8:3-6. Defendants are wrong for two reasons.

First, Defendants argue that Mr. Clise suspected in January 2003 that SnapTrack had "ripped off" Locate technology. Mot. at 7:24-26.[3] Significantly, however, upon further review of the technology at issue, Mr. Clise concluded that he was *mistaken* in his initial belief that SnapTrack was using technology developed by Locate. Fitzgerald Dec., Ex. 3 at 294:2 – 295:7. Indeed, Defendants *concede* that Mr. Clise was "wrong" in his initial suspicion regarding SnapTrack's technology. Dkt. 188-1 at 14:9 – 15:4. Thus, Mr. Clise's January 2003 suspicion was, in fact, unfounded—and further investigation of that suspicion provided no factual basis for suspecting a misappropriation of intellectual property.

Second, Defendants' reliance on Mr. Shanley's testimony is similarly misplaced. Defendants failed to adequately account for those portions of his testimony that *supported* a conclusion that Plaintiffs' claims were *timely*. Although Mr. Shanley testified that Gabriel retained counsel in mid-2004, he explained that it did so to assist it in negotiating proposed changes to a license agreement—and that only later did that counsel begin pursuing a potential claim for theft of trade secrets. Fitzgerald Dec., Ex. 4 at 143:12-24. Further, he testified that

---

[3]   Defendants provide no evidence of this. The Court should thus disregard it. But even if Defendants' had provided evidence of this purported suspicion, that evidence would be irrelevant, misleading, and prejudicial—and thus inadmissible. *See* Evid. Obj. at No. 1.

1   Gabriel retained Allan Angus, an engineer, to review whether any technology existed that had

2   been jointly-developed by Locate and Snaptrack—which was the subject of one of the

3   proposed license-agreement changes.  As Mr. Shanley explained, in late 2004 Mr. Angus

4   reviewed the technology that Locate had developed, and then later, no earlier than February

5   2005, began comparing Locate's records to Defendants' patents.  *Id.* at 146:18 – 147:21.

6        Based on this timeline, Mr. Shanley testified that it was not until February, March, or

7   perhaps even June of 2005 that he "had factual reason to believe that perhaps misappropriation

8   had occurred."  *Id.* at 148:21 – 149:4.  Moreover, he stated that he would defer to Mr. Angus as

9   to when the "determination" was made "that any intellectual property theft had occurred[.]"  *Id.*

10  at 166:25 – 167:6.  And in fact, Mr. Angus testified that his initial role in this matter was

11  merely to review whether any jointly-developed technology existed (Fitzgerald Dec., Ex. 2 at

12  219:2-14), that he did not begin comparing Locate and Snaptrack technology until early 2005

13  (*id.* at 221:3-17), and that he did not conclude that certain "Locate technology appeared in

14  Snaptrack patents," *i.e.*, that misappropriation may have occurred, until "the spring [or]

15  summer of 2005" (*id.*; *see also id.* at 225:11-18).  Thus, Plaintiffs had ample reason to believe

16  that Mr. Shanley's testimony supported a conclusion that their claims were timely.

17  **F.    The Court Grants Partial Summary Judgment on Plaintiffs' Trade Secrets Claim
18         Based on Defendants' Shifting Statute-of-Limitations Arguments**

19       The Court granted partial summary judgment on Plaintiffs' trade secrets claim without

20  making any rulings on the merits.  Dkt. 252.  Rather, the Court ruled that this claim was time-

21  barred.  Notably, Defendants asserted inconsistent statute-of-limitations defenses to the Court.

22  In briefing their bond request, Defendants argued that the "statute began running as early as

23  January 1, 1999[.]"  Dkt. 81 at 11:21-12:1; *see also* Dkt. 105 at 8:23-24.  This Court, however,

24  found that the limitations period on Plaintiffs' trade secrets claim began to run when "Plaintiffs

25  had a suspicion of wrongdoing in January of 2003."  Dkt. 252 at 12:1-2.  In other words, based

26  on Defendants' ever-changing statute-of-limitations arguments, this Court and Judge Anello

27  found that the statute of limitations was triggered at different times, by different events.

28  / / /

**G.    The Court Grants Summary Judgment on Plaintiffs' Inventorship Claims, Finding that Plaintiffs Changed Their Contentions Regarding Inventorship and Failed to Support Those Contentions with "Clear and Convincing Evidence"**

On October 1, 2012, the Court issued its final ruling on Defendants' second Motion for Summary Judgment.  Dkt. 328.  Central to that motion was the question of whether Plaintiffs had adequately named Locate employees as having contributed to the invention of certain intellectual property.  The Court found that Plaintiffs presented "changing declarations of who the true inventors" were.  *Id.* at 7:13; *see also id.* at 7:4-13, 8:13-19, 9:10-20, 10:17-20. Further, the Court held that, given conflicting discovery responses and deposition testimony, Plaintiffs did not "demonstrate by clear and convincing evidence"—the standard under the Patent Act—that Locate employees had contributed to the invention of the intellectual property at issue.  *Id.* at 8:8-10, 9:3-4, 10:12-13, 11:17-18, 12:26-27.

### III.    ARGUMENT

**A.    Attorneys' Fee Awards Under the Patent Act Are Rare, and Are Reserved for Exceptional Cases**

The default rule in the United States is that parties are responsible for their own attorneys' fees.  Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285 ("Section 285").  A losing party, however, may be saddled with the winning parties' fees *only* to avoid "gross injustice."  *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003).  The use of the term "exceptional" in Section 285 is not to be taken lightly.  "Congress in choosing to limit district court authority to award attorney's fees to 'exceptional' cases has made clear that this should occur only in rare or extraordinary cases . . . .  [Thus], courts elucidating this statutory language have generally found that 'exceptional' cases are those rare or extraordinary cases blighted and marked by a party's bad faith or inequitable conduct."  *Knorr-Bremse System Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 851 (E.D. Va. 2005).  Further, courts require clear and convincing evidence that a case is "exceptional."  *iLOR, LLC v. Google Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011).  But attorneys' fees do not flow merely from a finding that the case is exceptional.  Courts must still exercise discretion in deciding whether,

- 9-

1   and to what extent, reasonable attorneys' fees are warranted in the particular case.  *See Cybor*

2   *Corp. v. PAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998).

3   **B.    Defendants Have Not Presented Clear and Convincing Evidence Demonstrating
        that this Litigation Is "Exceptional" Under the Patent Act**

4

5         A party can prove that a case is exceptional under Section 285 in two ways.  First, it can

6   show litigation misconduct.  *iLOR*, 631 F.3d at 1376–77.  Second, if there is no litigation

7   misconduct, a party must prove a two-part test: objective baselessness and subjective bad faith.

8   *Id.* at 1377.  Here, Defendants identify seven supposed instances of "misconduct during the

9   litigation" and two reasons why this case is purportedly "unjustified litigation."  Mot. at 14:15-

10  24.  Defendants' assertions are either untrue or exaggerated, and largely unsupported by case

11  law.  As the record demonstrates, Defendants cannot show by clear and convincing evidence

12  that Plaintiffs' claims were objectively baseless *and* brought in bad faith.

13        **1.    Defendants' complaints of litigation misconduct are unfounded**

14         "An award of attorneys' fees is permissible when there has been some material

15  inappropriate conduct related to the matter in litigation, such as . . . misconduct during

16  litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like

17  infractions."  *iLOR*, 631 F.3d at 1376-7.  Thus, Section 285 requires a clear and convincing

18  showing of extremely egregious conduct.  *See, e.g.*, *ICU Med., Inc. v. Alaris Med. Sys., Inc.*,

19  558 F.3d 1380 (Fed. Cir. 2009) (holding that an award of attorney fees required "multiple

20  misrepresentations" to the court); *Mathis v. Spears,* 857 F.2d 749, 752 (Fed. Cir. 1988)

21  (awarding attorneys' fees for "blatantly misleading the PTO" and then "attempt[ing] to employ

22  the courts as handmaidens to its iniquity"); *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314,

23  1324 (Fed. Cir. 2011) (including "frivolous filings and engaging in vexatious or unjustified

24  litigation" among the conduct supporting sanctions).

25         The case of *Qualcomm v. Broadcom* is instructive on the type of misconduct that

26  warrants an award of attorneys' fees under Section 285.  There, Qualcomm "intentionally

27  withheld tens of thousands of documents" that defendant Broadcom requested in discovery.

28  *Qualcomm Inc. v. Broadcom Corp.*, 2010 WL 1336937 at *1 (S.D. Cal. Apr. 2, 2010).  The

- 10-

1   withheld documents "directly contradicted a key argument advanced by Qualcomm in pretrial

2   motions and throughout trial" and supported a defense asserted by Broadcom.  *Id.*  Based on

3   Qualcomm's attempted fraud on the court, which unraveled during the last days of a jury trial,

4   $8.5 million in fees were imposed as a sanction against Qualcomm under Section 285.  *Id.*

5          Defendants do not accuse Plaintiffs of such egregious conduct.  Indeed, Plaintiffs fully

6   cooperated with Defendants by producing over 300,000 documents (Mot. at 20:1-2), and

7   Defendants did not file any motions to compel further discovery.  Further, the Court did not

8   find that Plaintiffs engaged in, or sanction Plaintiffs for, misconduct.  Notably, Defendants

9   never sought such sanctions, for example, by way of a Rule 11 motion.  Nevertheless,

10  Defendants lodge seven groundless complaints against Plaintiffs.  None, however, constitute

11  litigation misconduct, and courts have declined to award fees under similar circumstances.

12              **a.      Filing affidavits that explain prior testimony is not litigation**

13                      **misconduct**

14          *First*, citing no authority, Defendants argue that attorneys' fees are warranted because

15  this Court disregarded, under the sham affidavit rule, certain affidavits submitted by Messrs.

16  Shanley, Angus, and Clise in support of Plaintiffs' Opposition to Defendants' Motion for

17  Partial Summary Judgment (Dkt. 210).  Mot. at 14:15-14:17.  To begin, Defendants are

18  confused.  They cannot cite this purported litigation misconduct as a basis for fees under the

19  Patent Act because the affidavits were filed in response to Defendants' motion on Plaintiffs'

20  *state-law* trade secrets claim.  In other words, the affidavits were unrelated to Plaintiffs' patent

21  claims, and a fee request under the Patent Act may be denied solely on this basis.

22          Further, the law is clear that a party may file an affidavit that clarifies prior testimony.

23  Indeed, on summary judgment, "the nonmoving party is not precluded from elaborating upon,

24  explaining or clarifying prior testimony elicited by opposing counsel on deposition[.]"  *Van*

25  *Asdale*, 577 F.3d at 999; *see also Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir.

26  1995).  And even in instances where a party has altered its position, courts have declined to

27  award fees.  *In re Acacia Media Techs. Corp.,* 2010 WL 2179875, at *4 (N.D. Cal. May 25,

28  2010) (finding no litigation misconduct under Section 285 where plaintiff changed its position

- 11-

as to certain terms to be construed by the court); *see also Javelin Investments, LLC v.*

*McGinnis*, 2007 WL 781190, at *4 n.14 (S.D. Tex. Jan. 23, 2007) (declining to infer bad faith

from the plaintiffs' "admittedly head-swerving changes of position").

Here, the affidavits were no more than attempts to explain or clarify prior testimony

elicited by opposing counsel at deposition.  Although the Court found that these affidavits

failed to create a disputed issue of fact, the Court did not conclude that Plaintiffs' submissions

were improper or made in bad faith.  In fact, they were not because:

- Portions of Mr. Shanley's affidavit were consistent with his deposition testimony (described above), including that he charged Mr. Angus with reviewing and comparing Locate and Snaptrack technology, and that this review did not occur until 2005 (¶ 5); that during the latter part of 2004, Gabriel was "focused on a contract negotiation," and not on "attempt[ing] to map Locate technology to SnapTrack patents" (¶ 7); and that Gabriel "initially sought [counsel in 2004] for assistance with Qualcomm license issues, **not misappropriation**" (¶ 12, emphasis added).

- Although the Court disregarded Mr. Angus's affidavit on the ground he lacked personal knowledge of certain facts therein, his affidavit included statements within his personal knowledge and consistent with his deposition testimony, such as that he was the person at Gabriel responsible for reviewing Locate's and SnapTrack's technology, and that it was not until mid-2005 when he concluded that Locate technology appeared in SnapTrack patents (¶¶ 13-15).

- Although the Court found that Mr. Clise's affidavit contradicted prior testimony, his affidavit, too, contained statements importantly *consistent* with his deposition testimony, including that, upon further review of SnapTrack's technology, his "initial assumption" that it included Locate technology "was in error" (¶ 10).

In sum, these affidavits included testimony that was consistent with prior deposition

testimony, and explanatory with regard to those portions of the depositions that were

inconsistent.  Thus, Plaintiffs offered them in good faith.  In fact, when Defendants argued in

their reply papers that the Court should disregard them, Plaintiffs moved *ex parte* for

permission to file a surreply, in which they proposed to show that "Mr. Angus' affidavit is

entirely consistent with [his] deposition testimony" (Dkt. 224 at 2:8-9), and that "contested

sections" of Mr. Shanley's and Mr. Clise's affidavits were "supported by deposition testimony"

and "serve[d] to clarify internally inconsistent deposition testimony" (*id.* at 2:10-15). The Court

denied Plaintiffs' request, holding that Plaintiffs "may raise any arguments they have" in this

regard "at the scheduled hearing."  Dkt. 226.  But the Court then ruled on Defendants' motion

without a hearing.  Dkt. 247.  Thus, Plaintiffs attempted, but were not permitted, to present

- 12-

1    what they now show in opposition to Defendants' present Motion: that they had competent

2    evidence supporting their good-faith belief in the timeliness of their claims.  Plaintiffs did not

3    commit "misconduct" of any sort in offering the evidence they were permitted to offer.

4              **b.      Revising discovery responses does not constitute litigation**
                        **misconduct**
5

6              *Second*, Defendants contend that Plaintiffs committed litigation misconduct by revising

7    their interrogatory responses, and in particular by revising their contentions regarding patent

8    inventorship.  Mot. at 14:16-20.  But parties routinely update discovery responses as litigation

9    progresses, as Rule 26 requires, and Defendants do not cite any authority standing for the

10   proposition that doing so is somehow "misconduct" warranting extraordinary sanctions.

11             Defendants do not allege that Plaintiffs falsified evidence.  *Cf. Aptix Corp. v. Quickturn*

12   *Design Sys., Inc.*, 269 F.3d 1369, 1374-75 (Fed. Cir. 2001) (affirming an award of attorneys'

13   fees under Section 285 for the "extreme litigation misconduct" of falsifying evidence).  Nor do

14   Defendants allege that Plaintiffs pursued unreasonable or excessive discovery.  *Cf. Mintz v.*

15   *Dietz & Watson, Inc.,* 2010 WL 4818183, at *2 (S.D. Cal. Nov. 9, 2010) (finding plaintiffs'

16   litigation conduct was not exceptional even though "plaintiffs requested what appears to be

17   excessive discovery, failed to compromise on minor litigation activities, [and] unreasonably

18   submitted two expert reports without prior designation in contravention of the Court's

19   scheduling order").  Instead, Defendants merely complain that Plaintiffs provided evolving

20   information as the litigation progressed, and the Court ultimately was dissatisfied.

21             But the law is clear that such common litigation occurrences do not warrant sanctions

22   under Section 285.  *See Reiffin*, 2011 WL 2470132, at *3-4 (finding 13-year litigation not

23   exceptional even though plaintiff corrected initial discovery responses); *Mentor Graphics*

24   *Corp. v. Quickturn Design Sys.,* 2003 U.S. Dist. LEXIS 16197 at *31-32 (N.D. Cal. July 30,

25   2003) (denying attorneys' fees despite finding that the litigation was "protracted and

26   acrimonious" and defendant argued that "plaintiffs submitted inconsistent infringement

27   testimony and positions").  Thus, Plaintiffs' good-faith attempts to identify inventors of the

28   patents at issue do not constitute litigation misconduct warranting an extreme sanction.

- 13-

1

**c.      Plaintiffs did not grant a contingent interest in the litigation to a percipient witness in exchange for testimony**

2

3      *Third*, without citing any legal authority warranting sanctions under Section 285, and

4  instead citing only the California Rules of Professional Conduct, Defendants argue that

5  Plaintiffs committed misconduct by granting a contingent interest to a percipient witness.  Mot.

6  at 14:19-21.  Not true.  Under the Rules of Professional Conduct, a party may not pay, or

7  acquiesce in paying, compensation "to a witness" when that payment is "contingent upon the

8  content of the witness's testimony or the outcome of the case."  Cal. R. Prof. Conduct 5-

9  310(B).  In 2006, *prior to the initiation of this lawsuit*, Allen Angus was granted, in lieu of

10  salary, an interest in Trace assets to continue working for the company.  Tingo Dec. ¶ 9.  His

11  interest *now* includes proceeds from this litigation because that is now Trace's only asset.  *Id.*

12  Still, any work that Mr. Angus has done as a consultant in this litigation has been compensated

13  on an hourly basis.  *Id.*  Importantly, Plaintiffs never anticipated that Mr. Angus would be a

14  witness in this case; they did not list him as such in their Rule 26(a) disclosure, and they did not

15  identify him as an expert.  Sullivan Dec. ¶¶ 25-26.  These facts make it clear that no agreement

16  ever existed to pay Mr. Angus for his testimony, and although Plaintiffs granted him an interest

17  in Trace's assets in 2006, they did not grant him this interest as "a witness contingent upon . . .

18  the outcome of th[is] case."  Cal. R. Prof. Conduct 5-310(B).[4]

19

**d.      A "biased" *amicus* brief does not constitute litigation misconduct**

20      *Fourth*, Defendants argue that attorneys' fees are warranted because Plaintiffs

21  attempted to submit a "biased" *amicus* brief by Roger Milgrim, the author of the renowned

22  treatise on trade secrets, *Milgrim on Trade Secrets*.  Mot. at 14:20-21.  To begin, Plaintiffs did

23  not attempt to file the *amicus* brief.  Mr. Milgrim directly filed a motion for leave to file his

24  brief.  Dkt. 234.  And even if Plaintiffs had filed a "biased" *amicus* brief, Defendants fail to

25

26  ---

[4]      Defendants also wrongly contend that Mr. Shanley had a contingent interest in the
27  litigation.  Mot. at 8:7-11.  In 2006, pursuant to an executive incentive bonus plan, Mr.
Shanley received a 4.6875 percent interest in the proceeds from a sale of the Company—
28  when this litigation had not yet been filed.  Andontrary to Defendants' assertions, Gabriel
repeatedly refused to give Mr. Shanley a contingent interest in the litigation.  Hall Dec. ¶ 5.

- 14-

1    explain how this constitutes litigation misconduct.  Defendants do not contend (nor can they)

2    that Mr. Milgrim had any prior relationship with Plaintiffs or that he was paid to provide his

3    opinion.  Defendants also fail to cite any law authorizing an award of fees under the Patent Act

4    on this basis.  Of course, courts have discretion to disregard *amicus* briefs—and the Court did

5    so here.  Thus, Defendants can in no way contend that the existence of this brief prejudiced

6    them in any way.  Contending that its existence justifies an award of attorneys' fees is baseless.

7                       **e.    Narrowing patent claims is encouraged by the Federal Circuit and
                                does not constitute litigation misconduct**
8

9           *Fifth*, Defendants contend that Plaintiffs committed misconduct by asserting claims on

10   92 patents before narrowing their claims.  Mot. at 12:16-26.[5]  Defendants would thus ensure

11   that no good deed goes unpunished, but the law is clear that a patentee should be encouraged,

12   not penalized, for narrowing issues and claims as litigation progresses.  *Q-Pharma, Inc. v.*

13   *Andrew Jergens Co.*, 360 F.3d 1295, 1304 (Fed. Cir. 2004) ("We fail to see how a changed

14   legal theory that leads to the voluntary dismissal of a lawsuit can amount to bad faith

15   litigation."); *Union Pacific*, 236 F.3d at 694 (affirming denial of attorneys' fees); *see also*

16   *Chiron Corp. v. Sourcecf Inc.*, 2006 WL 2034625 at *3 (N.D. Cal. Jun. 16, 2006) ("Chiron was

17   well within reason to assert a broad range of claims and then narrow them in good faith as

18   discovery and motion practice progressed. . . .  This narrowing does not suggest that Chiron

19   lacked a reasonable belief in the possibility of the success of their claims from the outset.").

20   Thus, Defendants' argument that narrowing claims constitutes misconduct is contrary to law.

21                      **f.    Plaintiffs truthfully stated to Judge Anello at the bond hearing that
                                Gabriel relocated its corporate headquarters to San Francisco, CA**
22

23          *Sixth*, Defendants argue that Plaintiffs misled Judge Anello at the bond hearing by

24   claiming that Gabriel relocated its corporate headquarters from Nebraska to California.  Mot. at

25   5:1-6.  At the time of the bond hearing, Judge Anello observed that Gabriel's website had not

26

27   [5]   Defendants misleadingly argue that Plaintiffs originally challenged at least 92 patents.
           Only 16 patents were at issue, as the remaining patents were duplicates filed in multiple
28         jurisdictions.  Sullivan Dec. ¶ 39.

                                                  - 15-

1   yet been updated to reflect the relocation.  Dkt. 109 at 44:2-14.  But Gabriel's website and

2   filings with the Securities and Exchange Commission ("SEC") now list Gabriel's corporate

3   address as San Francisco, CA.  Tingo Dec. ¶ 10.  And Gabriel confirmed its corporate

4   relocation with the SEC in its January 25, 2011 filing on Form 8-K.  *Id*.  Further, as Plaintiffs

5   have always maintained, Gabriel's Board authorized the change of corporate headquarters prior

6   to Defendants' filing of the bond motion.  *Id*.  Thus, undisputed evidence of Gabriel's corporate

7   address demonstrates that Plaintiffs were candid at the bond hearing.

8          **g.      Filing an amended complaint without leave does not constitute**
                    **litigation misconduct**
9

10         *Seventh*, Defendants contend that Plaintiffs committed litigation misconduct by filing a

11   Fifth Amended Complaint.  Mot. at 4:1-6.  Defendants' contention flies in the face of the

12   Court's findings that Plaintiffs made a "mistake" in doing so, and that this mistake did not even

13   "rise to the level of carelessness sufficient to preclude relief" in the modification of the Court's

14   scheduling order.  Dkt. 83 at 5:20-21.  Indeed, the Court found that while Plaintiffs failed to

15   comply with the scheduling order by failing to seek leave to amend, "Plaintiffs' noncompliance

16   appear[ed] to be inadvertent."  *Id.* at 5:21-26.  This "inadvertent mistake" cannot fairly be

17   characterized as misconduct, much less the type of egregious misconduct warranting an award

18   of attorneys' fees.  As the Court's orders reflect, Plaintiffs' then new counsel attempted with

19   diligence to comply with the Court's scheduling order, and promptly worked to remedy their

20   inadvertent failure to do so.  *See* Dkt. 83 at 4:2-4 ("The Court appreciates Plaintiff's candor,

21   and their acceptance of responsibility for failing to comply with the Court's scheduling order

22   and filing an amended pleading without leave of court."); *id.* at 5:25 ("Plaintiff's

23   noncompliance appears to be inadvertent").  This is not litigation misconduct, by any stretch.

24         **2.      Defendants cannot show by clear and convincing evidence that the litigation**
                    **was objectively baseless and brought in bad faith**
25

26         "Absent misconduct in conduct of the litigation or in securing the patent, sanctions may

27   be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith,

28   and (2) the litigation is objectively baseless."  *Brooks Furniture Mfg., Inc. v. Dutailier Int'l,*

- 16-

1    *Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Under this exacting standard, "the plaintiff's case

2    must have no objective foundation, and the plaintiff must actually know this."  *iLOR*, 631 F.3d

3    at 1377.  Notably, courts recognize a "presumption that the assertion of infringement of a duly

4    granted patent is made in good faith."  *Id.*

5           Here, Plaintiffs' claims were well-founded and brought in good faith:

6    • Plaintiffs paid the $800,000 bond.  Dkt. 121.  Defendants conceded at the bond
        hearing that ***"if it's a real case,*** they can post a sizable bond."  Dkt. 109 at 49:13-16.

7

8    • Four of Plaintiffs' claims survived several rounds of pleading challenges.  As Judge
        Anello observed at the bond hearing: "[T]he fact that at least four claims have
        survived this far, a couple of years down the road, may suggest some of the claims

9      are not frivolous, right?"  Dkt. 109 at 5:8-10.

10   • A sophisticated investment fund, advised by reputable patent litigation counsel,
        invested millions of dollars into the prosecution of this case.  Tingo Dec. ¶ 11.

11

12          Overlooking these objective factors, Defendants make two spurious arguments that this

13   litigation was objectively baseless and brought in bad faith. *First*, Defendants contend that

14   Plaintiffs did not have any evidentiary support for their inventorship claims.  Mot. at 14:20-22.

15   However, Plaintiffs identified evidence in support of their claims in opposition to Defendants'

16   motion for summary judgment.  Dkt. 324.  The Court granted summary judgment *not* because

17   Plaintiffs failed to present any evidence, but rather because, given conflicting discovery

18   responses and deposition testimony, Plaintiffs did not present "clear and convincing evidence"

19   of inventorship.  Dkt. 328 at 8:8-10, 9:3-4, 10:12-13, 11:17-18, 12:26-27.  Defendants simply

20   cannot transform the Court's conclusion that Plaintiffs' could not meet this exacting burden of

21   proof into "clear and convincing evidence" that Plaintiffs' claim had "no objective foundation."

22   *iLOR*, 631 F.3d at 1377.  Further, even if Plaintiffs lacked evidentiary support on summary

23   judgment (which they did not), this still would not warrant a fee award.  *See Trivitis, Inc. v.*

24   *Ocean Spray Cranberries, Inc.,* 2012 WL 3647976 at *1 (S.D. Cal. Aug. 23, 2012) (denying

25   attorney fees under Section 285 despite concluding that "there was no admissible evidence in

26   support of [plaintiff's] motion for summary judgment").  Accordingly, the Court "must resist

27   the understandable temptation to engage in *post hoc* reasoning by concluding that an ultimately

28   unsuccessful action must have been unreasonable or without foundation."  *Dominant*

- 17-

1    *Semiconductors Sdn. Bnd. v. Osram GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

2            *Second*, Defendants contend that Plaintiffs' bad faith is reflected by their supposed

3    manufacturing of a "patent inventorship 'play' to dupe investors." Mot. at 14:21-23.[6]  Any

4    effort to raise money, however, conducted between private parties outside the litigation

5    process, is not even *litigation* conduct, much less litigation misconduct.  But even if

6    Defendants' accusations are considered, a careful examination of the evidence on which they

7    are based reveals them to be meritless.  In a January 2010 e-mail exchange Mr. Angus

8    discussed providing information to Gabriel's Board about the basis for this litigation.  Dkt. 296-

9    13.  Mr. Angus testified at length about this e-mail.  Fitzgerald Dec., Ex. 2 at 313:14 – 321:11.

10   Contrary to Defendants' insinuation that this discussion amounted to an attempt to manufacture

11   a strategy to "dupe investors," Mr. Angus consistently testified that he was discussing the best

12   way to educate Gabriel's Board about the evidence, and that to the extent that he referred to the

13   story as a "play," he was trying to "provide some descriptive context to the story" and explain

14   the "sequence of events." *Id.* at 317:13 – 318:24.  Defendants' interpretation of Mr. Angus's e-

15   mail is thus nothing more than an inflammatory distortion of the record.[7]

16           Moreover, North Water, a sophisticated litigation investment fund, reviewed the merits

17

18   ─────────────────────────

19   [6]  Defendants provide no admissible evidence supporting this contention.  *See* Evid. Obj. at
     No. 2.  The Court should thus disregard it in ruling on the present motion.

20   [7]  Unfortunately, Defendants' inflammatory effort to prejudice Plaintiffs in the eyes of the
     Court has been employed throughout the case, with some unjustified success.  See Dkt. 109
21   at 10:16-18 ("This case should not be in this court, perhaps in your criminal docket, but not
     in your civil docket."); 48:20 ("Mr. Shanley is part of the Gabriel bandits . . . Mr. Fegen is
22   in prison and he is in prison for securities fraud. Related to this case and he was their
     consultant.").  Judge Anello noted at one point that "Gabriel has suffered a long history of
23   corrupt officers and directors who are not above taking illegal and fraudulent actions to
     guarantee their personal gain." Dkt. 110 at 22:4-7.  To support this conclusion, Judge
24   Anello cited a criminal judgment and bankruptcy court complaint, even though the Court
     stated it took judicial notice only of the existence of these documents, and did not accept
25   the truth of the matters therein.  This Court should disregard these prejudicial accusations,
     as they concern conduct that took place years ago, outside of this litigation, by former
26   Gabriel agents who have nothing to do with the company's current, reputable directors.
     Tingo Dec. ¶¶ 6-7.  And even if Defendants' hyperbolic accusations were true (they are
27   not), they have nothing to do with whether Plaintiffs engaged in litigation misconduct.

28

1   of the case with experienced patent litigation counsel from a reputable national law firm, and

2   provided $3.1 million in additional litigation funding.  Tingo Dec. ¶ 11.  If this case lacked

3   merit, or were nothing but a smoke-and-mirrors fiction meant to "dupe" investors, North Water

4   would not have committed millions of its investors' money into its continued litigation.  The

5   willingness of sophisticated outside investors to fund this litigation supports the conclusion that

6   this case was prosecuted in good faith, and that Plaintiffs reasonably believed it to have merit.

7   Thus, this case is not "exceptional" under the Patent Act.

8   **C.   Defendants Cannot Recover Fees Under CUTSA, Because Plaintiffs Asserted a**
    **Meritorious Trade Secrets Claim and Prosecuted the Action in Good Faith**
9

10       Under the California Civil Code, a court *may* award reasonable attorneys' fees to a

11   prevailing party where a claim of misappropriation is made in bad faith.  Cal. Civ. Code, §

12   3426.4 ("Section 3426.4").  Bad faith includes both (1) objective speciousness, and (2)

13   subjective bad faith in bringing or maintaining the action.  *FLIR Sys. Inc. v. Parrish*, 174 Cal.

14   App. 4th 1270, 1275 (2009); *Gemini Aluminum Corp. v. California Custom Shapes, Inc.*, 95

15   Cal. App. 4th 1249, 1261 (2002).  The standard for fees under CUTSA is thus very similar to

16   the Patent Act's two-part test.  *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 844–45

17   (2012).  Further, as under the Patent Act, this sanction is discretionary, not mandatory.  *O2*

18   *Micro Int'l Ltd. v. Monolithic Power Sys., Inc.,* 399 F. Supp. 2d 1064, 1080 (N.D. Cal. 2005).

19       Here, the Court granted summary judgment on Plaintiffs' trade secrets claim.  That

20   ruling was not a merits determination that Plaintiffs lacked protectable trade secrets.  Rather, it

21   was a procedural determination that Plaintiffs' claim was time-barred.  Dkt. 252.  Nothing

22   about that ruling, or the underlying record, demonstrates objective speciousness or bad faith.

23       **1.   Plaintiffs' trade secrets claim was not "objectively specious"**

24       An "objectively specious" misappropriation claim is one without any substance in

25   reality, *i.e.*, one about which an objective review of the facts and evidence indicates that the

26   accusation was completely unfounded under the elements of CUTSA.  *See FLIR*, 174 Cal. App.

27   4th at 1276 (providing that "[o]bjective speciousness exists where the action superficially

28   appears to have merit but there is a complete lack of evidence to support the claim"); *Gemini*,

- 19-

95 Cal. App. 4th at 1261 (explaining that to warrant an award of fees under Section 3426.4, "the claim must have been without substance in reality, if not frivolous"). Defendants make three flawed arguments that Plaintiffs' trade secrets claim was objectively specious.

### a.    Not sufficiently articulating a trade secret for discovery purposes under Section 2019.210 does not constitute objective speciousness

*First*, Defendants contend that Plaintiffs' claim was objectively specious because Plaintiffs did not sufficiently articulate their trade secrets under Section 2019.210. Mot. at 15:14-16.[8] But Defendants are conflating California's *discovery* barrier with a decision on the *merits*. As Judge Dembin noted at a September 2011 discovery hearing, "in the event that I find that the trade secret has not been properly designated, what would result from me is an order precluding discovery. It won't be an order dismissing the claim." Dkt. 193 at 16:13-16. Further, courts addressing this precise issue have declined to award fees. *Pixion*, 2005 WL 3955890, at *2-3 (denying attorneys' fees under CUTSA despite finding that the plaintiff could not articulate its trade secret under Section 2019.210). Accordingly, Defendants are mistaken that insufficiently articulating a trade secret for discovery purposes warrants a fee award.

### b.    The Court did not make a merits determination on Plaintiffs' claim

*Second*, Defendants contend that Plaintiffs failed to present "any evidence" on their trade secrets claim. Mot. at 15:15-18. This argument is both misleading and demonstrably false. The Court ruled that Plaintiffs' trade secrets claim was time-barred. Dkt. 252. It did not rule on the merits of that claim, *i.e.*, it *did not decide* whether: (1) Plaintiffs' trade secrets derived independent economic value from not being generally known; (2) Plaintiffs made reasonable efforts to maintain the secrecy of their trade secrets; and (3) Defendants misappropriated Plaintiffs' trade secrets. *See Betta Prods. v. Transglobal Communs.*, 2007 WL 4570368, No. C 05-02273 CRB *3 (N.D. Cal. Dec. 26, 2007) (denying fees under CUTSA after dismissal even though "defendants may have ultimately prevailed on an argument that

---

[8]    Defendants also argue that Plaintiffs had seven attempts to do so (Mot. at 5-7), although Plaintiffs presented only three designations to Judge Porter and Judge Dembin.

1  [plaintiff] did not have any protectable trade secrets").

2      The confusion here stems from Defendants' misleading attempt to equate the Court's

3  grant of summary judgment on Plaintiffs' *inventorship* claim with a substantive finding on

4  Plaintiffs' *trade secrets* claim.  Mot. at 15 n.6.  Defendants offer no basis, other than their own

5  advocacy, for equating these claims.  *Id.*  Even if Plaintiffs' inventorship claim and trade

6  secrets claim relied on the same evidence, the Court did not find that Plaintiffs had "no

7  support" for these claims.  The Court held only that Plaintiffs did not present "clear and

8  convincing evidence" of inventorship.  Dkt. 328 at 8:8-10, 9:3-4, 10:12-13, 11:17-18, 12:26-27.

9  Again, that Plaintiffs did not meet that demanding standard does not support an inference that

10  Plaintiffs' trade secrets claim had "no support" and was thus objectively specious.

11         **c.    The Court's ruling that certain of Plaintiffs' claims were time-
                   barred does not show that those claims were specious**

12

13      *Third,* Defendants contend that Plaintiffs' trade secrets claim was objectively specious

14  because "Plaintiffs refused to concede" that it was time-barred.  Mot. at 15:17-21.  However,

15  courts will award fees only where a trade secrets claim was *clearly specious.  See Forcier v.*

16  *Microsoft Corp.*, 123 F. Supp. 2d 520, 529 (N.D. Cal. 2000) (holding that while "plaintiffs'

17  claims are barred, they are not specious"); *see also Alamar Biosciences, Inc. v. Difco Labs.,*

18  *Inc.,* 40 U.S.P.Q. 2d 1437, 1442 (E.D. Cal. 1996).  Here, a genuine dispute existed as to

19  whether Plaintiffs' trade secrets claim was time-barred.

20      Plaintiffs reasonably contended that Mr. Clise's January 2003 suspicions did not

21  conclusively bar their claims.  The California Supreme Court has held:

22         [A] cause of action accrues and the statute of limitations begins to run when the
           plaintiff has reason to suspect an injury and some wrongful cause, *unless the*
23         *plaintiff pleads and proves that a reasonable investigation at that time would not*
           *have revealed a factual basis for that particular cause of action.*  In that case,
24         the statute of limitations for that cause of action will be tolled until such time as
           a reasonable investigation would have revealed its factual basis.
25

26  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 803 (2005) (emphasis added).  Although

27  Mr. Clise suspected misappropriation in 2003, Plaintiffs presented credible evidence, including

28  Mr. Clise's own testimony, that further investigation "would not have revealed a factual basis"

- 21-

1   for that suspicion.  *Id.*  Defendants conceded that Mr. Clise was mistaken.  Plaintiffs thus

2   reasonably pursued this litigation despite his unfounded suspicion.

3         Plaintiffs also reasonably concluded that Mr. Shanley's testimony did not conclusively

4   bar their claims.  Evidence existed supporting Plaintiffs' position, including Mr. Shanley's

5   testimony that it was not until June 2005 that he "had factual reason to believe that perhaps

6   misappropriation had occurred" (Fitzgerald Dec., Ex. 4, at 148:21 – 149:4), and Mr. Angus's

7   testimony that he did not conclude until "the spring [or] summer of 2005" that misappropriation

8   may have occurred (*id.*, Ex. 2, at 221:3-17, 225:11-18).  Although the Court ruled Plaintiffs'

9   claim was time-barred, that is not evidence of speciousness.  If it were, then every party whose

10  trade secret claims were found time-barred would be subject to sanctions.  That is not the law.

11        **d.**      **The authorities do not support an award of fees**

12        Defendants cite no case law suggesting that fees are warranted here.  Instead, they cite

13  decisions in which courts awarded fees where misappropriation claims were made for an anti-

14  competitive reason, trade secrets lacked monetary value, or the plaintiff was clearly on notice

15  of defects in its claims.  *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F. 3d 1099,

16  1111-12 (9th Cir. 2007) (holding that a claim was "objectively specious" because there was no

17  proof that the alleged trade secrets were worth anything); *FLIR*, 174 Cal. App. 4th at 1274-76

18  (finding objective speciousness because the action was filed as a preemptive strike and for an

19  anticompetitive purpose, and because there was no evidence of misappropriation, threatened

20  misappropriation, imminent harm, or ongoing wrongdoing); *Gemini*, 95 Cal. App. 4th at 1255,

21  1264 (holding that a claim was objectively specious and in bad faith where the jury found that

22  the plaintiff acted in bad faith, the trade secrets at issue had no economic value, and defense

23  counsel had pointed out the trade secret shortcomings with no response from the plaintiff).

24        No such factors are present here.  This case does not involve anti-competitive conduct

25  or motives.  There has been no suggestion that the trade secrets lacked economic value.  And

26  given Defendants' shifting limitations-period arguments and the equivocal evidence regarding

27  timeliness, Plaintiffs were not clearly on notice of shortcomings in their claim. Accordingly,

28  Defendants fail to meet the first prong of CUTSA's two-pronged standard for bad faith.

- 22-

1

## 2.    Plaintiffs pursued their trade secrets claim in good-faith

2    Showing subjective bad faith requires showing an improper purpose or motive—which

3    can be inferred "by evidence that [the party] intended to cause unnecessary delay, filed the

4    action to harass respondents, or harbored an improper motive" or "where the plaintiff proceeds

5    to trial after the action's fatal shortcomings are revealed by opposing counsel." *FLIR*, 174 Cal.

6    App. 4th at 1276.  Here, Plaintiffs pursued their claims in good faith as evidenced by the

7    posting of the $800,000 bond.  Dkt. 121.  As Defendants conceded: "***if it's a real case***, they can

8    post a sizable bond, your honor."  Dkt. 109 at 49:15-16.

9    Still, Defendants make two arguments to support their contention that Plaintiffs acted in

10    bad faith.  Mot. at 16:14-17:1.  First, Defendants rely on the result of the bond hearing, their

11    successful motion for partial summary judgment, and their statute-of-limitations defense.  Mot.

12    at 16:14-25.  Of course, an adverse summary judgment ruling, alone, cannot form the basis for

13    an award of fees under CUTSA.  *See Agency Solutions.com, LLC v. TriZetto Group, Inc.*, 2012

14    WL 2358636 *3 (E.D. Cal. June 20, 2012) ("While [plaintiff] was legally incorrect as to what it

15    considered to be its trade secrets, . . . there is no obvious reasons to consider [plaintiff's]

16    reaction as unreasonable or an example of bad faith.").  If it were otherwise, any party suffering

17    summary judgment would be subject to the extraordinary sanction of a fee award.  Defendants'

18    argument thus relies, instead, on the interplay between the bond hearing and summary

19    judgment results.  Specifically, they argue that "Judge Anello's initial conclusion that Plaintiffs

20    pursued the trade secrets claim in bad faith was fully confirmed" by a later grant of summary

21    judgment.  *Id.* at 16:14-16.  According to Defendants, Plaintiffs' bad faith can be inferred from

22    the fact that Plaintiffs continued to pursue the litigation after "the action's fatal shortcomings

23    [were previously] revealed by opposing counsel."  *FLIR*, 174 Cal. App. 4th at 1276.

24    This argument, however, mischaracterizes the record in two ways.  First, Judge Anello

25    did *not* reach the "conclusion that Plaintiffs pursued the trade secrets claim in bad faith[.]"

26    Mot. at 16:15.  In fact, Judge Anello explained that in the context of deciding the bond issue,

27    "the Court [did] *not decide* whether this case will ultimately be deemed 'exceptional,'" *i.e.*,

28    whether Plaintiffs acted in bad faith.  Dkt. 110 at at 22:1-2 (emphasis added).  Second,

- 23-

1   Defendants *changed* their argument regarding the timeliness of Plaintiffs' claims.  In briefing

2   their bond request, Defendants argued that the "statute began running as early as January 1,

3   1999[.]"  Dkt. 81 at 11:21 – 12:1.  This Court, however, found that the limitations period on

4   Plaintiffs' trade secrets claims began to run in 2003.  Dkt. 252 at 12:1-2.  Thus, this Court and

5   Judge Anello found the limitations period began to run at different times, based on Defendants'

6   evolving statute of limitations arguments.  Accordingly, the issue was not clear cut.

7        Thus, it simply is not the case that Plaintiffs decided "to go forward" despite

8   Defendants having demonstrated "the specific shortcomings of the case."  *Gemini*, 95 Cal. App.

9   4th at 1264.  At no time has the Court found that Plaintiffs acted in bad faith.  Whether events

10   in 2003 and 2004 rendered Plaintiffs' claims time-barred was *not fully litigated* until

11   Defendants' brought their Motion for Partial Summary Judgment.  That Plaintiffs lost that fight

12   is not, and cannot reasonably be, grounds for an award of attorneys' fees.  *See Agency*

13   *Solutions.com, LLC*, 2012 WL 2358636 at *3.

14        Defendants also contend that Plaintiffs' purported "long litany of incidents of litigation

15   misconduct" constitutes bad faith.  Mot. at 16:25 – 17:1.  As a threshold matter, unlike the

16   Patent Act, CUTSA simply does not contemplate "litigation misconduct" as a basis for a fee

17   award.  Defendants provide no authority otherwise, and indeed no legal support permitting the

18   Court to "infer Plaintiffs bad-faith" on this basis.  Mot. at 17:1.  Further, even if Plaintiffs

19   committed litigation misconduct—which they did not—such conduct does not support an

20   inference that Plaintiffs lacked a good-faith belief in the *merits* of their claim.  The decision in

21   *e-Smart Techs., Inc. v. Drizin*, 2011 WL 2837400, No. C 06-05528 MHP (N.D. Cal. July 18,

22   2011) is instructive.  There, the plaintiffs alleged trade secret theft, and during a settlement

23   conference, potential exculpatory evidence for the defense went missing.  *Id.* at *1.  It was later

24   determined that plaintiffs purposefully took this evidence; consequently the court dismissed

25   plaintiffs' case with prejudice.  *Id.*  The defendants then moved for fees of over two million

26   dollars under CUTSA, which the court denied.  *Id.* at *2.  Despite "[t]he contumacious conduct

27   of plaintiff[s]," the Court "decline[d] to conclude" that the plaintiffs had acted in bad faith

28   absent strong evidence that the plaintiffs' claims lacked *merit*, and also declined to exercise its

- 24-

1    *discretionary* power to award sanctions on the ground that "dismissal with prejudice was the

2    appropriate sanction."  *Id.* at *2-3.  Here, as in *eSmart*, the Court did not rule on the merits of

3    Plaintiffs' claims, and thus cannot infer "bad faith."

4    **D.     The Court May Deny an Award of Attorneys' Fees Even in Exceptional Cases**

5            Even if the Court deems this case exceptional, it has discretion to deny attorneys' fees.

6    *National Presto Indus. v. West Bend Co.,* 76 F.3d 1185, 1197 (Fed. Cir. 1996).  Here, as

7    described above, Plaintiffs had a sound, if unsuccessful, basis for pursuing their claims.  The

8    evidence presented several "close calls."  And nothing about Plaintiffs' litigation behavior

9    prompted Defendants to request, or the Court to issue, sanctions.  Moreover, Plaintiffs have

10   filed a notice of appeal.  Dkt. 340.  Any award of fees will require Plaintiffs to post a bond to

11   continue the appeal.  Fed. R. Civ. P. 62.  But any such bond will effectively terminate the

12   appeal because Plaintiffs cannot afford it.  Tingo Dec. ¶ 12.  Indeed, any fee award will likely

13   bankrupt Plaintiffs (*id.*), while Qualcomm would be unaffected by the denial of this Motion,

14   with over $12 billion in cash.  The equities of this case thus weigh heavily in favor of denying

15   Defendants' punitive and unfounded request.

16                                    **IV.     CONCLUSION**

17           For the foregoing reasons, Plaintiffs respectfully request that the Court deny

18   Defendants' Motion for Attorneys' Fees in its entirety.

19   DATED:  December 14, 2012                          CHAPIN FITZGERALD LLP

20

21                                             By: s/ Kenneth M. Fitzgerald

22                                                 Kenneth M. Fitzgerald
                                                   Robert G. Knaier
23                                                 Keith M. Cochran

24                                                 Attorneys for Plaintiffs Gabriel
25                                                 Technologies Corporation
                                                   and Trace Technologies, LLC
26

27

28

                                            - 25-