UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GABRIEL TECHNOLOGIES CORPORATION and TRACE TECHNOLOGIES, LLC, | ) ) ) | Civil No. 08cv1992 AJB (MDD) |
| Plaintiff, v. | ) ) ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES AS TO PLAINTIFFS AND NON-PARTY |
| QUALCOMM INCORPORATED, SNAPTRACK, INC. and NORMAN KRASNER, | ) ) ) ) | WANG, HARTMAN, GIBBS & CAULEY, PLC |
| Defendants. | ) ) ) | (Doc. No. 332) |

Before the Court is Defendants' Motion for Attorneys' Fees as to Plaintiffs and Non-Party Wang, Hartman, Gibbs & Cauley, PLC ("WHGC"), Plaintiffs' local counsel.[1]  (Doc. No. 332.) Plaintiffs and WHGC filed separate opposition briefs to Defendants' motion.  (Doc. No. 355 and 354, respectively.)   On January 17, 2013, the Court held a motion hearing and took the matter under

---

[1] Defendants' Motion for Attorneys' Fees originally sought fees from Plaintiffs' lead counsel, Hughes, Hubbard & Reed ("Hughes Hubbard") as well.  However, Defendants and Hughes Hubbard reached a settlement on the issue of attorneys' fees prior to the hearing on this matter.  Accordingly, Defendants and Hughes Hubbard filed a joint request to withdraw Defendants' Motion for Attorneys' Fees as to Hughes Hubbard.  (Doc. No. 366.)  Pursuant to the settling parties' agreement, the terms of the settlement are confidential, and the Court declined the parties' offer to divulge the settlement amount for the limited purpose of *in camera* review.

submission for further review.  (Doc. No. 367.)  For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

### *Procedural Background*

On October 24, 2008, Plaintiffs filed this lawsuit, which initially contained eleven causes of action against Defendants, including: (1) breach of the 1999 license agreement; (2) breach of the 2006 license agreement; (3) fraud/fraudulent inducement; (4) tortious interference with contract; (5) correction of inventorship; (6) declaration of ownership; (7) equitable patent infringement; (8) misappropriation of trade secrets pursuant to California's Uniform Trade Secrets Act ("CUTSA"); (9) conversion; (10) unfair competition pursuant to Cal. Bus. & Prof. Code section 17200; and (11) unjust enrichment.  (Doc. No. 1.)  Plaintiffs sought over $1 billion in damages.  (*Id.*)

On September 3, 2009, (Doc. No. 35), the Court granted in part and denied in part the Defendants' motion to dismiss, and ordered Plaintiffs to file an amended complaint by September 14, 2009.  In the September 3, 2009 Order, Judge Anello dismissed Plaintiffs' first, fourth, seventh, ninth, tenth, and eleventh causes of action with prejudice and dismissed Plaintiffs' third cause of action with leave to amend.  On September 14, 2009, Plaintiffs filed a Second Amended Complaint, which contained an amended fraud and fraudulent inducement claim and incorrectly re-alleged claims that were previously dismissed with prejudice.  (Doc. No. 36.)  On October 8, 2009, the Court held a telephonic status conference with the parties and granted Plaintiffs leave to file a Third Amended Complaint that did not include the claims previously dismissed with prejudice.  (Doc. No. 39.)  On October 9, 2009, Plaintiffs filed their Third Amended Complaint, which included the amended fraud and fraudulent inducement claims.  (Doc. No. 40.)  Defendants again moved to dismiss Plaintiffs' fraud claim.  (Doc. No. 41.)  On December 14, 2009, the Court granted Defendants' motion and dismissed Plaintiffs' fraud and fraudulent inducement claim with prejudice.  (Doc. No. 48.)  On January 11, 2010, Plaintiffs filed their Fourth Amended Complaint ("FAC"), which did not contain any causes of action alleging fraud.  (Doc. No. 53.)  On August 13, 2010, the Court denied Plaintiffs' motion for leave to file a fifth amended complaint, which sought to add a fraudulent concealment claim.  (Doc. No. 104.)

On July 2, 2010, Defendants filed a motion for bond pursuant to California Code of Civil Procedure Section 1030. (Doc. No. 81.)  Having reviewed all of the relevant evidence and the parties'

arguments, the Court granted in part and denied in part Defendants' motion for a bond on September 20, 2010. (Doc. No. 110.) The Court reduced the amount of the requested bond from $1,291,580 ($1,000,000 in fees and $291,580 in costs) to $800,000 in light of Plaintiff's financial condition at the time. (*Id.* at 23.) Pursuant to this order, Plaintiffs posted the $800,000 bond in order to avoid dismissal of their claims. (Doc. No. 121.)

On September 27, 2011, Defendants filed a partial motion for summary judgment with regard to Plaintiffs' claims for misappropriation of trade secrets and breach of contract, arguing the claims were barred by the statute of limitations. (Doc. No. 188.) On March 13, 2012, the Court granted Defendant's motion for summary judgment as to Plaintiff's eighth claim for misappropriation of trade secrets and second claim for breach of contract on ground one as to trade secrets only and grounds two, three, four, and five. (Doc. No. 252.) The Order denied partial summary judgment as to ground one and ground six of Plaintiffs' second claim for breach of contract. (*Id.*)

On August 10, 2012, Defendants filed a motion for summary judgment as to Plaintiffs' three remaining claims, which were as follows: (1) Breach of the Amended and Restated License Agreement in Ground One and Ground Six (COUNT TWO); (2) Correction of Inventorship (pursuant to 35 U.S.C. § 256) (COUNT FIVE); and (3) Declaratory Judgment of Ownership Interest in the Patents (pursuant to 28 U.S.C. § 2201) (COUNT SIX). (Doc. No. 296.) On October 1, 2012, the Court granted Defendants' motion for summary judgment and directed the Clerk to enter judgment in favor of the Defendants. (Doc. No. 328.) Plaintiffs are appealing the judgment to the Federal Circuit. (Doc. No. 340.) Defendants filed the instant motion for attorneys' fees on October 12, 2012. (Doc. No. 351.)

*I. Defendants' Motion for Attorneys' Fees as to Plaintiffs*

As support for the requested attorneys' fees award, Defendants contend that Plaintiffs pursued objectively baseless patent and misappropriation claims in bad faith. Accordingly, Defendants seek attorneys' fees with regard to Plaintiffs' patent claims under 35 U.S.C. § 285 and with regard to Plaintiffs' misappropriation claims under Section 3426.4 of CUTSA. The Court addresses each statutory basis for awarding attorneys' fees in turn.

08cv1992

1    **A.  Attorneys' Fees Pursuant to 35 U.S.C. § 285**

2        Under 35 U.S.C. § 285, a "court in exceptional cases may award reasonable attorney fees to the

3    prevailing party" in a patent case.  Defendants argue that Plaintiffs pursued frivolous patent claims and

4    engaged in litigation misconduct such that attorneys' fees are warranted under 35 U.S.C. § 285.

5        Once it is determined that the party seeking fees is a prevailing party, determining whether to

6    award attorneys' fees under 35 U.S.C. § 285 is a two-step process.  *Highmark, Inc. v. Allcare Health*

7    *Mgmt. Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012) (citing *Forest Labs., Inc. v. Abbott Labs.*, 339

8    F.3d 1324, 1327–28 (Fed. Cir. 2003)).  First, a prevailing party must establish by clear and convincing

9    evidence that the case is "exceptional."  *Id.* (citing *Forest Labs, Inc.*, 339 F.3d at 1327).  "A case is

10   exceptional under Section 285 if there has been some inappropriate conduct relating to the matter in

11   litigation."  *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1370 (citing *Brooks*

12   *Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Cases may be

13   considered "exceptional" based upon a party's frivolous claims, inequitable conduct before the Patent

14   and Trademark Office, or misconduct during litigation.  *Id.* (citing *Beckman Instruments, Inc. v. LKB*

15   *Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989)).  Second, "if the case is deemed exceptional, a

16   court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the

17   award."  *Id.* (citing *Forest Labs.*, 339 F.3d at 1328).  "[T]he amount of the attorney fees [awarded]

18   depends on the extent to which the case is exceptional."  *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d

19   1340, 1344 (Fed. Cir. 2001).  The purpose of section 285, unlike that of Rule 11, is not to control the

20   local bar's litigation practices—which the district court is better positioned to observe—but is remedial

21   and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or

22   defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of

23   litigation or Patent Office misconduct, to require it to bear its own costs.  *See Badalamenti v. Dunham's,*

24   *Inc.*, 896 F.2d 1359, 1364 (Fed. Cir. 1990); *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d

25   1573, 1578 (Fed. Cir. 1983).

26        ***1. Exceptional Case***

27        As noted above, the Court has either dismissed or granted summary judgment in Defendants'

28   favor as to all of Plaintiffs' claims, and thus considers Defendants to be the prevailing party in this

1  action.  Therefore, the first step when considering whether to award attorneys' fees under Section 285 is

2  to determine whether the case is exceptional.  Here, Defendants argue that this case is exceptional based

3  upon Plaintiffs' frivolous claims and misconduct during litigation.  Defendants offer the following as the

4  primary evidence of the frivolousness of Plaintiffs' claims: (1) Plaintiffs originally alleged patent

5  violations of 92 patents and ultimately reduced their claims down to violations of only 16 patents; (2)

6  the majority of Plaintiffs' claims were dismissed at the pleadings stage; (3) Plaintiffs' remaining claims

7  did not survive summary judgment because the Court found that Plaintiffs did not have sufficient

8  evidence to create a triable issue of fact on the issue of inventorship; (4) emails between Plaintiffs'

9  former employees suggest that Plaintiffs knew they had no case and pursued the claims anyway; and (5)

10  Judge Anello required Plaintiffs' to post an $800,000 in order to proceed with the case after finding "a

11  strong likelihood Defendants will ultimately prove this case is exceptional, and attorneys' fees will be

12  warranted at the conclusion of the litigation."

13      First, the Court will determine whether the case is exceptional based upon the alleged frivolous-

14  ness of Plaintiffs' claims.  Under Section 285, sanctions may be imposed for frivolous claims only if two

15  separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is

16  objectively baseless.  *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1308 (Fed. Cir.

17  2012) (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)).

18  In *Highmark, Inv. v. Allcare Health Mgmt. Sys.*, the Federal Circuit detailed the analysis afforded to

19  these two factors as follows:

20      The requirement that the litigation be objectively baseless "does not depend on the state of
        mind of the [party] at the time the action was commenced, but rather requires an objective
21      assessment of the merits."  *Brooks Furniture Mfg.* 393 F.3d at 1382. "To be objectively
        baseless, the infringement allegations must be such that no reasonable litigant could
22      reasonably expect success on the merits."  *Dominant Semiconductors Sdn. Bhd. v. OSRAM
        GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (internal quotation marks omitted).
23      Furthermore, even if the claim is objectively baseless, it must be shown that lack of objective
        foundation for the claim "was either known or so obvious that it should have been known"
24      by the party asserting the claim.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir.
        2007); *see also iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011).  This is
25      known as the subjective prong of the inquiry.  This same objective/subjective standard
        applies for both patentees asserting claims of infringement and alleged infringers defending
26      against claims of infringement. *See iLOR*, 631 F.3d at 1377.

27  *Id.* at 1308-09.

28

Having reviewed the allegations of both parties and taking particular note of Judge Anello's analysis in his bond decision, the Court concludes that Plaintiffs' claims in this case were objectively baseless and brought in subjective bad faith.  Here, Plaintiffs could not have reasonably expected success on the merits of the patent claims without knowing the identify of the allegedly omitted inventors.  As this Court noted in its summary judgment order, there is a " 'presumption that the inventors named on an issued patent are correct, so misjoinder of inventors must be proven by clear and convincing evidence.' "  (Doc. No. 328 at 6 (quoting *Fina Oil and Chem. Co. v. Ewen*, 123 F.3d 1466, 1472 (Fed. Cir. 1997)).  At no point during this case has Plaintiff been able to offer the evidence necessary to overcome this presumption.  It is apparent that Plaintiffs did not know the identity of the allegedly omitted inventors when they filed this action in 2008 or at any later point in the case.

Close to two years after the case's initial filing, Judge Anello described the obvious lack of an objective foundation for Plaintiffs' claims in his bond order: "The parties began working together approximately a decade ago, Plaintiffs assert they suspected wrongdoing in approximately 2007, and they have been investigating their claims for several years.  By now, Plaintiffs should have more than mere allegations to support their theory."  (Doc. No. 110 at 22.)  Despite this warning, Plaintiffs prolonged the litigation for another two years.  In order to survive summary judgment, Plaintiffs attempted late in the litigation to finally identify the allegedly omitted inventors; however, they were never able to find individuals that would take credit for inventing any of the relevant patents or profess knowledge of specifics relating to the patents.  Thus, the Court found in its summary judgment order that Plaintiffs had failed to create a triable issue of fact regarding Plaintiffs' inventorship claims, proving Judge Anello's earlier characterization of Plaintiffs' patent claims to be correct.  Throughout this case, Plaintiffs pursued inventorship claims despite their inability to identity the allegedly omitted inventors.  Moreover, Plaintiffs continued to pursue these claims after Judge Anello pointed out the significant lack of evidentiary support.  Based on the totality of the record, Plaintiffs' claims were objectively baseless.

For similar reasons, the Court finds that Plaintiffs' brought these claims in subjective bad faith.  It was readily apparent to Judge Anello in September 2010 that Plaintiffs' had maintained this action for slightly less than two years with nothing more than "mere allegations" to support their claims.  Several emails between Gabriel employees and former employees confirm this conclusion and suggest that

1    Plaintiffs knew they lacked the requisite evidence and opted to pursue their claims nonetheless.[2]  As

2    they did at the bond hearing before Judge Anello, Plaintiffs attempt to dismiss these emails as nothing

3    more than disgruntled employees' expressions of frustration with management and the inability to

4    recover necessary documents from previous counsel, Munck Carter PC ("Munck").  (*See* Doc. No. 110

5    at 22; Pls. Opp., Doc. No. at 9-11).  However, Judge Anello disagreed with Plaintiffs interpretation and

6    determined that the emails in combination with the lack of evidence supporting Plaintiffs' claims

7    suggested that the case would ultimately be considered exceptional.  (Doc. No. 110 at 22.)  This Court

8    agrees.  While the emails certainly express frustration towards Gabriel and Munck, the repeated

9    references to the utter lack of a case suggest that, not only did Plaintiff's not have the necessary

10   evidence to bring their claims against Defendants, they were aware of the evidentiary deficiencies

11   during the early stages of litigation.  (Pls. Opp., Doc. No. 355 at 10.)  Additionally, Plaintiffs' assertion

12   that the documents retained by Munck provided the "evidentiary support for its claims" is belied by the

13   record.  (Doc. No. 355 at 10.)  At the hearing regarding the instant motion, counsel revealed that

14   Plaintiffs reacquired these documents from Munck in early 2010.  Despite Plaintiffs' recovery of these

15   purportedly crucial documents, Plaintiffs could only produce "mere allegations" to support their claims

16   at the time of the bond hearing in September 2010.  (*See* Doc. No. 110 at 22.)  This suggests that the

17   documents were not the evidentiary key to Plaintiffs' claims that Plaintiffs represents them to be.

18       On the whole, the Court concludes that the lack of evidence supporting Plaintiffs' patent claims

19   was so obvious that it should have been known by Plaintiffs.  Significantly, the emails suggest that

20   Plaintiffs knew there was no evidentiary basis for their claims in early 2010, and Plaintiffs certainly had

21   notice that their claims lacked substantiation following Judge Anello's bond order in September 2010.

22   Accordingly, the Court concludes that Plaintiffs brought objectively baseless patent claims in subjective

23   bad faith.

24       Based simply on the frivolous nature of Plaintiffs' claims, the Court is inclined to classify the

25   case as exceptional under 35 U.S.C. § 285.  The Court is further persuaded by Defendants' arguments

26   regarding Plaintiffs' litigation misconduct.  Quite apart from a finding of frivolous claims, "an

27

28   _____

     [2] Plaintiffs object to the Court's consideration of these emails; however, the emails have been
     considered by the Court previously with regard to the bond motion and the Court finds them relevant to
     its consideration of the instant motion.  Accordingly, Plaintiffs' evidentiary objections are overruled.

08cv1992

1  exceptional case finding can also be supported by litigation misconduct." *Highmark, Inc.*, 687 F.3d at

2  1315 (citing *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012)).  Litigation

3  misconduct involves unethical or unprofessional conduct by a party or his attorneys, but may also

4  include "advancing frivolous arguments during the course of the litigation or otherwise prolonging

5  litigation in bad faith."  *Id.*  The frivolous arguments must be shown to be objectively unreasonable at

6  the time they were made.  *Id.* (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,* 567 F.3d

7  1314, 1339 (Fed. Cir. 2009)).

8         As discussed above, Plaintiffs brought and maintained claims without knowing the identity of

9  the allegedly omitted inventors, the most basic prerequisite for a successful correction of inventorship

10  patent claim.  Viewing the entirety of Plaintiffs' allegations, all of Plaintiffs' causes of action relate in

11  some way to the alleged theft of Plaintiffs' patents; however, Plaintiffs cannot provide sufficient

12  evidence to establish the rightful inventors of the patents.  The Court is particularly struck by Plaintiffs'

13  decision to pursue their claims further following Judge Anello's warning that the case would likely be

14  found exceptional based on the evidence before him at the bond hearing.  Plaintiffs nevertheless

15  continued with their claims despite Judge Anello's clear indication that there was a serious lack of

16  evidence regarding Plaintiffs' patent claims.  Over time, Judge Anello's assessment proved correct and

17  Plaintiffs' claims failed for the reasons he anticipated.  The Court finds that Plaintiffs' decision to

18  pursue their patent claims without knowing the identity of the allegedly omitted inventor for such a long

19  period of time, and particularly after Judge Anello's bond order, constitutes litigation misconduct.

20  Furthermore, Defendants' make a persuasive case for finding litigation misconduct based upon

21  Plaintiffs' less-than-honest actions throughout the case.[3]  Having already classified the case as

22

23  _____

        [3] Defendants suggest that the following actions should be considered litigation misconduct: (1)
24  Plaintiffs' filed sham affidavits in order to avoid summary judgment; (2) Plaintiffs served incomplete
    and unverified interrogatory responses without basic investigation regarding the actual identity of the
25  allegedly omitted inventors; (3) Plaintiffs granted a contingent interest in the litigation to a percipient
    witness; (4) Plaintiffs invited a biased *amicus* brief that was filed on their behalf; (5) Plaintiffs pursued
26  inventorship claims that had no evidentiary support; (6) Plaintiffs pursued claims against Defendants in
    order to garner outside investments in the litigation; (7) Plaintiffs misled the Court with regard to the
27  location of their headquarters at the time of the bond hearing; (8) Plaintiffs attempted to reallege fraud
    claims that had previously been dismissed with prejudice; and (9) Plaintiffs alleged 92 patent claims
28  initially but required extensive discovery before narrowing their patent claims to 16.  While the Court
    does not necessarily find that each of these items constitutes litigation misconduct of its own accord,
    items 2, 5, 6, 7, 8, and 9  raise significant concerns when considering the nature of Plaintiffs' conduct

08cv1992

1    exceptional based upon Plaintiffs' bad faith in pursuing objectively baseless claims that had no

2    reasonable expectation of success, the Court need not address these individual allegations of litigation

3    misconduct, but notes that the nature of the referenced incidents does not weigh in Plaintiffs' favor.  In

4    sum, the Court finds that Plaintiffs brought frivolous claims and engaged in litigation misconduct such

5    that this case is exceptional within the meaning of 35 U.S.C. § 285.

6                    *2.  Appropriate Amount of Attorneys' Fees*

7            Having deemed the case exceptional, the second step of the analysis requires the Court to

8    determine whether an award of attorneys' fees is appropriate, and, if so, the amount of the award.  *See*

9    *Forest Labs.*, 339 F.3d at 1328.  The authority to award attorneys' fees found in 35 U.S.C. § 285 is

10   limited to the patent side of the case.  *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical*

11   *Corp.*, 405 F.2d 288, 297-98 (9th Cir. 1969); *see also Stickle v. Heublein, Inc.*, 716 F.2d 1550, (Fed. Cir.

12   1983).  "Where an action combines both patent and nonpatent claims, the nonpatent issues may in some

13   instances be so intertwined with the patent issues that the evidence would, in large part, be material to

14   both types of issues."  *Stickle*, 716 F.2d at 1564.

15           In this instance, the Court finds that attorneys' fees are warranted under Section 285.  Plaintiffs

16   initially alleged 92 patent violations without the requisite evidence to support their claims, never

17   acquired the requisite evidence, and thus caused Defendants to incur several years worth of attorneys'

18   fees in order to oppose Plaintiffs' unsubstantiated claims.  For this reason, the Court finds that attorneys'

19   fees under 35 U.S.C. § 285 are appropriate in this instance and will now consider how to properly limit

20   the award of fees to those relating to the patent side of the case as required by the statute.

21           Plaintiffs' First Amended Complaint ("FAC") contains eleven causes of action.  (Doc. No. 14.)

22   Plaintiffs' fifth, sixth, and seventh causes of action for correction of inventorship, declaratory judgment

23   of ownership interest in the patents, and equitable patent infringement are patent claims for which

24   attorneys' fees may be imposed under 35 U.S.C. § 285.  (Doc. No. 14 at 30-32.)  However, having

25   reviewed the allegations offered as support for the non-patent causes of action, each of Plaintiffs' claims

26   depends upon Plaintiffs' patent-related allegations.  For reasons set forth in greater detail below, the

27   Court finds that Defendants are entitled to attorneys' fees under CUTSA for Plaintiffs' misappropriation

28   _____

throughout this action.

1    claims, which means that the attorneys' fees associated with Plaintiffs' eighth cause of action need not

2    be separated from the patent fees as they are both independently recoverable.[4]  As to Plaintiffs'

3    remaining non-patent causes of action, the Court finds that these claims are so intertwined with

4    Plaintiffs' patent claims and patent-related evidence that the same evidence is material to all of the

5    issues.[5]  Therefore, the fees associated with these claims may be properly awarded under 35 U.S.C. §

6    285 as they are virtually inseparable from those fees accrued with regard to the purely patent claims.

7        Accordingly, the Court awards attorneys' fees associated with Plaintiffs' patent and patent-

8    related causes of action pursuant to 35 U.S.C. § 285.  The Court will consider the reasonable amount of

9    the award following the attorneys' fees analysis under CUTSA.

10   **B.  Attorneys' Fees Pursuant to CUTSA, Cal. Civ. Code § 3426.4**

11       Under Section 3426.4 of the California Uniform Trade Secret Act ("CUTSA"), courts may

12   award reasonable attorneys' fees to the prevailing party if a claim of misappropriation is made in bad

13   faith.  Based upon much of the same evidence argued with regard to 35 U.S.C. § 285, Defendants

14

15       [4] The Court also notes that the discovery related to Plaintiffs' misappropriation claims overlaps
16   significantly with Plaintiffs' patent claims.  Plaintiffs misappropriation claims suggest, among other
     things, that Defendants incorporated the misappropriated trade secrets into their patent applications.  As
17   a result, the discovery related to Plaintiffs' misappropriation claims required further investigation into
     Defendants' patents. (*See* Doc. No. 160 at 1-2 (directing parties to designate up to two of Defendants'
18   patents identified in the Fourth Amended Complaint that are allegedly based upon Plaintiffs' trade
     secrets and directing Plaintiffs to identify its trade secrets that are allegedly incorporated in the
19   designated patents).)

20       [5] Plaintiffs' first cause of action alleges that SnapTrack breached the 1999 License Agreement
     when it, among other things "took ownership of Locate's patents" and "filed patent applications and
21   patents without listing Locate as an assignee or Locate personnel as inventors."  (Doc. No. 14 at 27, ¶
     132.)  Similarly, Plaintiffs' second cause of action makes identical allegations in support for Plaintiffs'
22   alleged breach of the 2006 license agreement claim.  (*Id.* at 28, ¶ 138.)  Plaintiffs' third cause of action
     alleges fraud and fraudulent inducement based upon SnapTrack "misappropriating Locate's technology
23   and filing patents and patent applications incorporating jointly-owned Program Technology as well as
     Locate's technology."  (*Id.* at 29, ¶ 142.)  In Plaintiffs' fourth cause of action, Plaintiffs allege tortious
24   interference with contract which alleges that Krasner and Qualcomm "intentionally caused SnapTrack to
     breach the License Agreement" and, as discussed with the first and second cause of action, the breach of
25   the license agreement claims are based in part upon the alleged patent violations.  (*Id.* at 30.)  Plaintiffs'
     conversion claim in the ninth cause of action alleges that Defendants "--through their patent filings and
26   other acts -- converted that technology, confidential information, and Program Technology for
     themselves."  (*Id.* at 34, ¶ 180.)  Plaintiffs' tenth cause of action alleges unfair competition based upon
27   Defendants' misappropriation of Locate's technology and filing "patents and patent applications
     incorporating Locate's technology and jointly owned Program Technology."  (*Id.* at 35, ¶ 184.)  Lastly,
28   Plaintiffs' eleventh cause of action claims unjust enrichment based upon Defendants misappropriation of
     Locate's technology "by applying for and obtaining patents based on that technology."  (*Id.* at 35, ¶
     191.)

1  contend that Plaintiffs pursued frivolous misappropriation claims and engaged in litigation misconduct

2  such that attorneys' fees are warranted under Section 3426.4 of CUTSA.

3              *1.  Legal Standard*

4              Under Section 3426.4, a prevailing party may recover reasonable attorneys' fees if "a claim of

5  misappropriation is made in bad faith." Cal. Civ. Code § 3426.4.  Because CUTSA does not provide a

6  definition of "bad faith" to be used in the context of trade secret misappropriation, California courts

7  have developed a two-pronged standard for the evaluation of such claims.  *See SASCO v. Rosendin*

8  *Elec., Inc.*, 207 Cal. App. 4th 837, 834 (Cal. Ct. App. 2012); *Smith v. Selma Cmty. Hosp.*, 188 Cal. App.

9  4th 1, 34 (Cal. Ct. App. 2010); *Gemini Aluminum Corp. v. CA Custom Shapes, Inc.*, 95 Cal. App. 4th

10  1249, 1261 (Cal. Ct. App. 2002).  The party seeking an award of attorney's fees under Section 3426.4

11  must show (1) the objective speciousness of opposing party's claim, and (2) the subjective bad faith of

12  the opposing party in bringing or maintaining the action, that is, for an improper purpose.  *Gemini*

13  *Aluminum Corp.,* 95 Cal. App. 4th at 1261.

14              With regard to the first prong, objective speciousness "exists where the action superficially

15  appears to have merit but there is a complete lack of evidence to support the claim."  *FLIR Sys., Inc. v.*

16  *Parrish*, 174 Cal. App. 4th 1270, 1276 (Cal. Ct. App. 2009).  Objective speciousness may be shown by,

17  among other factors, demonstrating that there was no misappropriation or threatened misappropriation

18  or that the opposing party could not have suffered any economic harm.  *Id.*  The second prong requiring

19  subjective bad faith is satisfied when it may be inferred from the evidence that a party "intended to

20  cause unnecessary delay, filed the action to harass [the opposing party], or harbored an improper

21  motive."  *FLIR Sys., Inc.*, 174 Cal. App. 4th at 1278 (citing *Gemini*, 95 Cal. App. 4th at 1263).  "Similar

22  inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are

23  revealed by opposing counsel."  *Id.* (citing *Gemini*, 95 Cal. App. 4th at 1264).

24              *2.  Analysis*

25              Based on its review of the record, the Court concludes Plaintiffs' misappropriation claims were

26  objectively specious and Plaintiffs brought and maintained their claims in subjective bad faith.   Here,

27  Plaintiffs did not simply fail to articulate the trade secrets with particularity as an initial matter.  Rather,

28  Plaintiffs made seven failed attempts to articulate their trade secrets, requiring Defendants' to participate

1   in extensive discovery and motion practice before Magistrate Judge Porter and then Magistrate Judge

2   Dembin.  (*See* Doc. No. 229.)  In Magistrate Judge Dembin's final order describing the lengthy

3   procedural history regarding Plaintiffs' trade secret designations, he notes that "[d]espite seven attempts,

4   Plaintiffs have failed to put forth a designation that provides reasonable notice of the issues for trial and

5   assist the Court in defining the scope of discovery."  (*Id.* at 8.)  Magistrate Judge Dembin found that

6   Plaintiffs' trade secret designation number one lacked "adequate specificity," and this failure

7   "condemn[ed] the designation to intolerable vagueness."  (*Id.* at 8.)  Trade secrets number two through

8   ten fared no better as they contained "even less information and more ambiguous terms."  (*Id.* at 9.)

9   Despite both Magistrate Judges concluding that "Plaintiffs had failed to designate their trade secrets

10  with sufficient particularity to justify compelling discovery from Defendants" and Judge Anello

11  predicting the misappropriation claims were likely barred by the statute of limitations in addition to

12  lacking the requisite evidentiary connection, Plaintiffs continued to pursue their misappropriation

13  claims.

14          Plaintiffs contend that failing to sufficiently articulate a trade secret for discovery purposes does

15  not constitute objective speciousness under CUTSA and cites *Pixion, Inc. v. PlaceWare Inc.* as support.

16  2005 WL 3955890, *2-3 (N.D. Cal. Apr. 22, 2005).  In *Pixion*, the defendant argued that, among other

17  things, plaintiff's failure to clearly articulate trade secrets at the pleading stage constituted subjective

18  misconduct.  *Id.*  The court in that case concluded that plaintiff's decision to maintain its position

19  regarding the adequacy of its trade secret disclosures despite the defendants' evidence otherwise was

20  "hardly evidence of improper motive."  *Id.* at *3.   Notably, the court in *Pixion* also found that the

21  record was "entirely devoid of evidence of subjective bad faith on plaintiff's part."  *Id.*  For example,

22  several of plaintiff's trade secrets survived summary judgment, and the court noted that the trade secrets

23  claims arose out of the same set of facts as plaintiff's breach of contract claim, which was clearly not

24  specious.  *Id.*  However, there are several reasons why the misappropriation claims considered in *Pixion*

25  are distinguishable from Plaintiff's misappropriation claims here.  As discussed above, Plaintiffs did not

26  simply fail to articulate trade secret claims at the pleading stage; rather, Plaintiffs unreasonably pursued

27  trade secret claims after having been notified of their evidentiary deficiencies by two magistrate judges

28  and one district court judge.  Additionally, Defendants argued, and Judge Anello agreed, that Plaintiffs'

1    claims were likely barred by the statute of limitations.  Despite these significant warnings, Plaintiffs

2    decided to go forward with their misappropriation claims without remedying the deficiencies identified

3    by Defendants, Judge Anello, and Magistrate Judge Dembin.  As predicted by Judge Anello, the Court

4    ultimately found that the misappropriation claims were barred by the statute of limitations and granted

5    summary judgment in Defendants' favor.  Additionally, unlike the plaintiff in *Pixion* that ultimately had

6    some success on claims that were clearly brought in good faith, the Court has concluded that Plaintiffs'

7    patent claims were objectively baseless and brought in subjective bad faith, and Plaintiffs' misappropria-

8    tion claims arise out of the same set of facts as the patent claims.  For these reasons, *Pixion* does not

9    compare favorably to the facts of this case.

10          Based on the facts set forth above, the Court concludes that Plaintiffs' misappropriation claims

11   were objectively specious and maintained in subjective bad faith.  Plaintiffs received more than

12   sufficient notice regarding the flaws in their claims from Defendants, Magistrate Judge Dembin, and

13   Judge Anello.  Knowing the specific shortcomings of their misappropriation claims, Plaintiffs made the

14   decision to go forward despite their inability to sufficiently articulate the alleged trade secrets or

15   overcome Defendants' statute of limitations argument.[6]  Accordingly, the Court finds that attorneys'

16   fees are warranted under Section 3426.4 of CUTSA.

17        **C.  Reasonable Amount of Award as to Plaintiffs**

18          As discussed above, attorneys' fees are warranted with regard to Plaintiffs' patent and patent-

19   related claims under 35 U.S.C. § 285 and with regard to Plaintiffs' misappropriation claims under

20   Section 3426.4 of CUTSA.  Insomuch as each one of Plaintiffs' claims is covered under the ambit of one

21   of the statutes, the Court need not apportion Defendants' attorneys' fees to the particular cause of action

22   it addressed.  As such, the Court will determine the reasonable amount of the award using the lodestar

23   determination.

24            ***1. Legal Standard***

25

26   _____

27          [6] " ' 'Bad faith may be inferred where the specific shortcomings of the case are identified by
     opposing counsel, and the decision is made to go forward despite the inability to respond to the
     arguments raised.' "  *See Gemini Aluminum v. Cal. Custom Shapes*, 95 Cal. App. 4th 1249, 1264 (Cal.

28   Ct. App. 2002) (quoting *Alamar Biosciences, Inc. v. Difco Lab., Inc.*, 1996 U.S. Dist. Lexis 18239, *3
     (E.D. Cal. Feb. 23, 1996)

13

1    The Supreme Court has developed a two-pronged approach to the calculation of a reasonable

2  attorney's fee.  " 'The lodestar determination has emerged as the predominate element of the analysis' in

3  determining a reasonable attorney's fee award."  *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th

4  Cir. 1996) (quoting *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987)).  Under this

5  approach, a court must first calculate a "lodestar" figure by "multiplying the number of hours reasonably

6  expended on the litigation times a reasonable hourly rate."  *Blum v. Stenson*, 465 U.S. 886, 888 (1984);

7  *see also Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988), *cert. denied* 493 U.S.

8  1035 (1990).   The lodestar figure is presumptively reasonable.  *City of Burlington v. Dague*, 505 U.S.

9  557, 562 (1992).  While this lodestar amount is presumed to represent an appropriate fee, under certain

10  circumstances a court may then adjust the award upward or downward to take into account special

11  factors.  *Blum,* 465 U.S. at 897.

12          ***2. Analysis***

13          Defendants request a total award of $13,465,331.01.  This amount is reached by adding the

14  following amounts: $10,244,053 for attorneys fees attributable to lead counsel Cooley LLP ("Cooley");

15  $391,928.91 for attorneys' fees attributable to document review performed by Black Letter Discovery,

16  Inc. ("Black Letter"); and $2,829,349.10 for fees associated with a document review algorithm

17  generated by outside vendor H5.  Neither Plaintiffs nor WHGC objected to the requested amount or the

18  reasonableness of the rates charged and hours spent on the case.[7]

19          With regard to the attorneys' fees attributable to Cooley, counsel spent 22,921.5 hours on this

20  case in the four years from September 2008 through September 2012.  (Karr Decl., Doc. No. 322-2 at ¶

21  11; Ex. E, Doc. No. 336-1 at 388.)  Based upon the nature of Plaintiffs' claims, the many patents

22  involved in the case, and the length and complexity of the litigation, the Court finds the requested

23  number of hours spent on this case by Cooley to be reasonable.  As support for the reasonableness of the

24  rates charged by Cooley attorneys, counsel provided a PeerMonitor Standard Rate Analysis comparing

---

25          [7] Hughes Hubbard offered generalized objections to the requested amount of attorneys' fees in
26  their opposition to Defendants' motion.  However, Defendants withdrew their motion as to Hughes
    Hubbard, and therefore Hughes Hubbard's objections are moot.  To the extent that WHGC filed a notice
27  of joinder in Hughes Hubbard's opposition more than a month after the opposition was filed, the Court
    finds this objection to be untimely.  Regardless, Hughes Hubbard's objections did not provide specific
28  objections to the requested amount such that Court finds that the presumptively reasonable lodestar
    amount should be adjusted.

Cooley rates generally to those charged by their peers in Los Angeles, Silicon Valley, San Francisco, and San Diego.  (Doc. No. 336.)  Overall, Cooley's rates are lower than those charged by comparable firms in California.  (*Id.*)  Insomuch as neither of the remaining parties objects to the reasonableness of the rates charged by Cooley and the rates appear to be in line with that of the community as supported by the PeerMonitor analysis, the Court finds the requested rates to be reasonable.  Accordingly, the requested amount of $10,244,053 represents an appropriate lodestar amount for Cooley's fees.

As to Black Letter, Defendants request $391,928.91 in attorneys' fees.  The Black Letter attorneys billed a total of 6,949.5 hours of document review at rates of $55 to $67 per hour.  As Defendants note in their motion, Plaintiffs' claims involved 92 patents resulting in voluminous document production.  For this reason, Cooley reasonably decided to have Black Letter perform document review in this matter.  Had Cooley performed the document review themselves, the resulting attorneys' fees would have undoubtedly been exponentially higher than those charged on behalf of Black Letter.  In light of the circumstances and the amount of discovery required, the Court concludes that the rates charged and hours spent by Black Letter are reasonable and, thus, finds the resulting lodestar amount of $391,928.91 to be reasonable as well.

The third aspect of Defendants' requested fees is $2,829,349.10 attributable to computer-assisted, algorithm-driven document review.  Defendants provide the following explanation for the resulting fees: "Over the course of this litigation, Defendants collected almost 12,000,000 records -- mostly in the form of Electronically Stored Information (ESI). . . .  Rather than manually reviewing the huge volume of resultant records, Defendants paid H5 to employ its proprietary technology to sort these records into responsive and non-responsive documents."  (Defs. Mot., Doc. No. 332-1 at 26).  After the algorithm determined whether documents were responsive or unresponsive to discovery requests, Black Letter attorneys reviewed the responsive documents for confidentiality, privilege, and relevance issues.  (*Id.* at 26, n. 11.)  For this reason, the review performed by H5 and Black Letter accomplished different objectives with the H5 electronic process minimizing the overall work for Black Letter.  Again, the Court finds Cooley's decision to undertake a more efficient and less time-consuming method of document review to be reasonable under the circumstances.  In this case, the nature of Plaintiffs' claims resulted in significant discovery and document production, and Cooley seemingly reduced the overall

1    fees and attorney hours required by performing electronic document review at the outset.  Thus, the

2    Court finds the requested amount of $2,829,349.10 to be reasonable.

3        Although the Court finds that Defendants' requested lodestar amount reasonably reflects

4    Defendants' attorneys' fees incurred throughout the litigation, the Court may still exercise its discretion

5    in adjusting the overall award upward or downward to take into account special factors.  *See Blum,* 465

6    U.S. at 897.  As discussed above, the Court has determined that Plaintiffs pursued objectively baseless

7    claims against Defendants in bad faith.  In reaching this conclusion, the Court returned frequently to

8    Judge Anello's bond order issued September 20, 2010, and questioned Plaintiffs' inadvisable decision to

9    continue forward with their claims beyond that point.  Following this clear warning that their claims

10    lacked merit, the Court finds it particularly troubling that Plaintiffs maintained their claims for an

11    extended period of time without being able to remedy the evidentiary deficiencies accompanying their

12    claims.  Insomuch as the bond order weighed heavily in favor of the Court's decision to impose

13    attorneys' fees, the Court finds it appropriate to limit the imposition of fees to those incurred after the

14    entry of the bond order.  At the time of the bond hearing, Defendants' counsel had accrued $1,000,000

15    in attorneys' fees.  Accordingly, the Court reduces the requested amount of $13,465,331.01 by

16    $1,000,000.  This results in a total award of attorneys fees in the amount of $12,465,331.01 as against

17    Plaintiffs.

18    ## II. *Defendants' Motion for Attorneys' Fees as to WHGC*

19        In addition to the statutory requests for attorneys' fees as against Plaintiffs, Defendants seek to

20    hold Plaintiffs' local counsel WHGC liable for Defendants' attorneys' fees as well.  Defendants asks

21    that the Court utilize Rule 11 of the Federal Rules of Civil Procedure, or alternatively exercise its

22    inherent authority, to impose sanctions against WHGC for its participation in the case.  Under this

23    authority, Defendants ask that WHGC be held jointly and severally liable for the total amount of

24    attorneys' fees requested.

25        ### A.  Legal Standard

26        Rule 11 of the Federal rules of Civil Procedure imposes a duty on attorneys to certify that all

27    pleadings are legally tenable and well-grounded in fact.  *See* Fed. R .Civ. P. 11; *Chambers v. NASCO,*

28    *Inc.*, 501 U.S. 32, 41 (1991).  Pursuant to Rule 11(b), attorneys must perform "an inquiry reasonable

1   under the circumstances" to ensure that they have reason to believe that their legal contentions are

2   "warranted by existing law" and that their factual contentions either "have evidentiary support or, if

3   specifically so identified, will likely have evidentiary support after a reasonable opportunity for further

4   investigation." Fed. R. Civ. P. 11(b).  When considering alleged Rule 11 violations, the Court utilizes

5   an objective standard of reasonable inquiry which does not mandate a finding of bad faith.  *Chambers*,

6   501 U.S. at 47.  Significantly, Rule 11 governs only papers filed with the Court and not alleged litigation

7   misconduct outside of court filings.  *See* Fed. R .Civ. P. 11.

8           However,  the court may impose sanctions for general litigation conduct falling outside of the

9   specific prohibitions of Rule 11 through the courts' inherent power.  *See Chambers*, 501 U.S. at 51

10  (finding reliance on inherent powers appropriate where "the conduct sanctionable under the Rules was

11  intertwined within conduct that only the inherent power could address"); *Primus Automotive Financial*

12  *Services, Inc. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997).  "The inherent powers of federal courts are

13  those that 'are necessary to the exercise of all others.'"  *Roadway Express, Inc. v. Piper*, 447 U.S. 752,

14  764  (1980) (quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)).  The most common

15  utilization of inherent powers is the contempt sanction which serves to protect the due and orderly

16  administration of justice and maintain the authority and dignity of the court.  *Id.* (citing *Cooke v. U.S.*,

17  267 U.S. 517, 539 (1925).  Courts may exercise their inherent power to impose sanctions in form of

18  attorneys' fees when a losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive

19  reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (quotation

20  omitted).

21          Before awarding sanctions under its inherent powers, the court must make an explicit finding

22  that counsel's conduct "constituted or was tantamount to bad faith."  *Roadway Express*, 447 U.S. at 767;

23  *see also Primus*, 115 F.3d at 648.   "A finding of bad faith is warranted where an attorney 'knowingly or

24  recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an

25  opponent.' " *Id.* (quoting *In re Keegan*, 78 F.3d at 436 (citation omitted)).  The bad faith requirement

26  sets a high threshold.  *Id.*; *see also Mendez v. County of San Bernardino,* 540 F.3d 1109, 1131-32 (9th

27  Cir. 2008).

28      **B.  Analysis**

17

08cv1992

As a general matter, the Court recognizes that local counsel plays a unique role in the litigation process. The local rules require out-of-state attorneys to acquire local counsel, and often local counsel serves primarily in an administrative capacity for the limited purpose of filing documents with the Court. Thus, the reasonable inquiry required for local counsel under Rule 11 may not be the same as that required for lead counsel in many situations. However, Rule 11 remains applicable and sanctions may be imposed against local counsel when appropriate under the circumstances. While it may be reasonable for attorneys to rely on the work conducted by other attorneys in some instances, that determination depends upon whether its reasonable under the particular circumstances.[8]

Here, it is undisputed that WHGC served in a more limited capacity than either of the firms serving as Plaintiffs' lead counsel, Munck Carter PC ("Munck") and subsequently Hughes Hubbard & Reed LLP ("Hughes Hubbard"). WHGC offers the following description of its role in the case as support for finding sanctions unwarranted. As local counsel, WHGC "was asked to, and did, ensure that Plaintiffs' papers met the requirements of the Court's Local Rules and physically filed the papers (either electronically with the Court's ECF system or by hand when documents required under seal treatment)." (WHGC Opp., Doc. No. 354 at 10.) During the initial intake of Plaintiffs' case, WHGC performed legal research to ensure that each of Plaintiffs' claims were properly pled under applicable law and relied upon the assertions of Plaintiffs and Munck that there was a good faith basis for all of Plaintiffs' allegations. (*Id.*) Throughout the case, "WHGC never had access to Plaintiffs' percipient witnesses or to Plaintiffs' documents at the time it was retained to act as Plaintiffs' local counsel." (*Id.* at 11.) Even after Munck left the case and Hughes Hubbard took over as lead counsel, WHGC's role remained unchanged. (*Id.*) WHGC never participated in discovery or motion practice regarding Plaintiffs'

---

[8] *See Qualcomm Inc. v. Broadcom Corp.*, 2008 WL 66932, *16 n. 14 (S.D. Cal. Jan. 7, 2008), *vacated in part by* 2008 WL 636108 (S.D. Cal. Mar. 5, 2008) (noting that sanctions may be imposed on local counsel and that the reasonableness of local counsel's reliance on other attorneys is dependent on the circumstances of the case); *see also Coburn v. Optical Indus., Inc. v. Cilco, Inc.*, 610 F. Supp. 656, 660 n. 7 (D.C. N.C. 1985) (recognizing that "local counsel must be able to rely to some extent on the representations of reputable out of state attorneys, especially when local counsel has no independent knowledge concerning the representations"). *But c.f. Val-Land Farms, Inc. v. Third Nat. Bank in Knoxville*, 937 F.2d 1110, (6th Cir. 1991) (determining that the text of Rule 11 "does not provide a safe harbor for lawyers who rely on the representations of outside counsel" as counsel's obligations under the rule are nondelegable).

1    claims.  (*Id.* at 14.)  Based on these facts indicating WHGC's limited role in the proceedings, WHGC

2    contends that it performed an appropriate and reasonable inquiry under the circumstances.

3          In response, Defendants contend that WHGC unreasonably relied upon the representations of

4    lead counsel and Plaintiffs when determining whether Plaintiffs' claims had merit and were brought in

5    good faith.  Moreover, Defendants highlight the fact that WHGC is the sole signatory on the operative

6    Fourth Amended Complaint which WHGC filed to comply with the amendment deadline after Munck

7    left the case and prior to Hughes Hubbard taking over as lead counsel.  (*See* Doc. No. 53.)  Most

8    significantly, Defendants argue that WHGC should have reevaluated its role in the case after it

9    discovered the deficiencies in Plaintiffs' case as set forth by Judge Anello in his bond order some

10   months before.

11         In this instance, although WHGC may have justifiably relied upon Plaintiffs' and Munck's

12   representations as support for its filings prior to Judge Anello's bond order, WHGC has offered no

13   justification for its decision to continue filing documents on Plaintiffs' behalf after Judge Anello warned

14   of the substantial deficiencies in Plaintiffs' case.  As noted above, the order clearly indicated that

15   Plaintiffs' claims were likely unmeritorious, lacked any significant evidentiary support, and appeared to

16   be brought in bad faith.  (*See* Doc. No. 110 at 22.)  Once again, Judge Anello's bond order weighs

17   significantly in favor of the Court's decision to impose sanctions.  WHGC was represented at the

18   hearing, and received electronic notice of the subsequent order.  While WHGC may not have partici-

19   pated in discovery prior to that point, the evidence relevant to the bond order and the Court's interpreta-

20   tion of that evidence should have raised concern.  At that point in time, WHGC's obligation under Rule

21   11 increased as it thereafter became unreasonable to rely on the representations of Plaintiffs and lead

22   counsel when filing documents with the Court.  Even when serving in the more limited role of local

23   counsel, WHGC had an obligation to review Judge Anello's order and undertake a reasonable investiga-

24   tion into the merits of the case.  WHGC did not do so, and instead continued to file documents with the

25   Court without performing the requisite reasonable inquiry under the circumstances.  As such, every

26

27

28

1   WHGC filing after September 20, 2010, was in violation of Rule 11.  Accordingly, the Court finds

2   sanctions to be warranted under Rule 11.[9]

3          With regard to the appropriate amount of Rule 11 sanctions, the sanction must be "appropriate"

4   and "limited to what suffices to deter repetition of the conduct or comparable conduct by others

5   similarly situated."  Fed. R. Civ. P. 11(c)(1), (2).  Defendants ask that the Court hold WHGC jointly and

6   severally liable for the entire amount of Defendants' requested attorneys' fees.  The Court finds this

7   suggestion excessive based on the nature of WHGC's actions and their limited role as local counsel.  It

8   appears that WHGC initially performed a reasonable inquiry under the circumstances, and the basis for

9   finding a Rule 11 violation arises only after the issuance of Judge Anello's bond order.  For this reason,

10  the Court finds that joint and several liability for the entirety of Defendants' attorneys fees is dispropor-

11  tionate to WHGC's violation.  Alternatively, the Court considered limiting WHGC's joint and several

12  liability to those fees billed by Defendants' following the bond order, but concludes that this award

13  would also be excessive under the circumstances.  At the hearing on the instant motion for fees,

14  Defendants' counsel posed a more reasonable alternative.  In their opposition to Defendants' motion for

15  attorneys' fees, WHGC compared the requested $13,465,331.01 in Defendants' attorneys' fees to the

16  $64,316.50 in fees billed by WHGC from the time it was retained in February 2009 through September

17  28, 2012.  (Doc. No. 354 at 9.)  Referencing WHGC's billing total, Defendants suggest that the Court

18  impose sanctions in the amount of $64,316.50, which would, in essence, prevent WHGC from realizing

19  a profit for its services as local counsel in this case.  The Court finds this to be a reasonable method of

20  determining the proper amount of sanctions to be imposed.  This amount should deter local counsel from

21  filing documents without performing a reasonable inquiry under the circumstances, but it is also more

22  appropriate in this instance than basing the award upon Defendants' attorneys' fees incurred following

23  Judge Anello's order.  The lower award is appropriate considering the nature of the violation along with

24  WHGC's limited role in the case.  Accordingly, the Court imposes Rule 11 sanctions against WHGC in

25  the amount of $64,316.50.  This amount shall be awarded to Defendants as attorneys' fees.

26

27          [9] Insomuch as the Court finds sanctions appropriate under Rule 11, the Court need not consider
    the imposition of sanctions pursuant to its inherent authority.  However, he Court notes that there
28  appears to be little evidence to support finding bad faith on the part of WHGC sufficient to warrant
    sanctions under the Court's inherent authority.

### *Conclusion*

In sum, the Court awards Defendants' $12,401,014.51 in attorneys' fees as against Plaintiffs. Accordingly, the $800,000 bond posted by Plaintiffs and any accrued interest will be distributed to Defendants when this order becomes final.  (Doc. No. 121).   Plaintiffs will  pay the remaining amount of $11,601,014.51 to Defendants.  Additionally, the Court awards $64,316.50 in attorneys' fees as against WHGC to be paid to Defendants.

For the reasons set forth above, it is ORDERED that Defendants' Motion for Attorneys' Fees as to Plaintiffs and WHGC be, and it hereby is, GRANTED IN PART and DENIED IN PART.  The Court further ORDERS as follows:

1. The Court directs the Clerk of Court to pay the $800,000 in funds and any accrued interest held in the Court's registry to Defendants when this order becomes final;

2. Plaintiffs will pay $11,601,014.51 to Defendants within 60 days of this order; and

3. WHGC will pay $64,316.50 to Defendants within 60 days of this order.

IT IS SO ORDERED.


DATED:  February 1, 2013

Hon. Anthony J. Battaglia
U.S. District Judge